Goetz Fitzpatrick LLP
One Pennsylvania Plaza, 44th Floor
New York, New York 10119
(212) 695-8100
By: Gary M. Kushner, Esq.

*Proposed Attorneys for the Debtor
and Debtor in Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:                                                            Chapter 11

OTR MEDIA GROUP INC.,                             Case No. 1-11-47385 (ESS)



                                    Debtor.
-------------------------------------------------------------X

## DEBTOR'S APPLICATION FOR RETENTION OF GOETZ FITZPATRICK AS DEBTOR'S CHAPTER 11 COUNSEL

OTR Media Group Inc. (the "Debtor"), files this application (the "Application"), pursuant to sections 327(a) and 1107(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order authorizing the Debtor to retain the law firm of Goetz Fitzpatrick LLP ("GFLLP"), as its chapter 11 counsel effective as of August 25, 2011. In support of this Application and upon the annexed Affirmation of Gary M. Kushner, Esq., the Debtor respectfully states as follows:

### I. BACKGROUND

1. On August 25, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is operating its

businesses and managing its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. The Debtor is a full service outdoor advertising company as defined by the New York City Administrative Code. The Debtor provides bulletins, wallscapes and spectaculars in prime real estate locations covering the New York City market. The Debtor also provides media sales and billboard maintenance services to its advertising clientele.

3. In the early 2000's, the City of New York ("City" or "NYC") enacted a land use scheme that bans advertising signs across huge swaths of territory in all five metropolitan boroughs, but at the same time, carved out an invidious, arbitrary and irrational set of exemptions from the City's regulation of outdoor advertising that benefits only select outdoor advertisers.

4. Specifically, NYC amended its rules to single out certain outdoor advertising companies ("OAC's") for punitive treatment, including discriminatory classifications of violations, permitting the assessment of multiple violations against various entities for a single act or non-conforming aspect of the same sign, imposing minimum penalties of $10,000 for minor violations and large penalties in the staggering amount of $25,000, as well as other penalties and fines (the "Penalty Scheme").

5. In furtherance of the City's rules, the Environmental Control Board ("ECB") and its team of Administrative Law Judges, issue what the ECB calls "master decisions and orders". In one master decision and order alone, the Debtor was assessed over $160,000 with respect to a single outdoor sign – over six (6) times the $25,000 limit set by the City's Charter. The Debtor also was a victim of violations asserted by the City on legally permitted sites. The City also unlawfully revoked permits issued to the Debtor from legal sites as part of its

aggressive anti-billboard stance.

6. The Penalty Scheme and multitude of ECB violations which have followed the City's change in regulations have destroyed the Debtor's business. But even worse yet, the Penalty Scheme permits the City to issue other orders against other OAC's (such as landlords of a building hosting a sign *via* a lease) with respect to the same sign and for violations found on the same date. Because the custom and practice in the outdoor advertising business is that the media company – the Debtor here – is contractually bound to indemnify the lessor/landlord (or other vendors) that make a given outdoor sign possible, the end result is that Debtor has become actually responsible to both the City and to its vendor multiple times for the same violation.

7. Following the declaration of ECB violations, the City was able to obtain money judgments against the Debtor, many on default and several without notice. At present, there is approximately $550,000 in actual money judgments existing in favor of the City against the Debtor. There is another approximately $1,500,000 in alleged violations against the Debtor and another $3,000,000 in potential indemnity claims arising from the City's attack on the Debtor's landlords and vendors – which are presently in dispute and being contested in a variety of judicial proceedings.

8. Over the past several months, the Debtor has met with the City to discuss an amicable resolution of the total claims asserted by the City. The City provided little interest in settling these claims or otherwise providing meaningful alternatives to aggressive enforcement efforts by allowing the Debtor to satisfy the judgments and other claims over a period of time governed by the terms of a forbearance agreement.

9. The City has now recently taken active measures to enforce its judgments

against the Debtor, including the issuance of restraining notices on the Debtor's customers and landlords. The recently enacted enforcement efforts by the City have prevented the Debtor from conducting its business.

10. The chapter 11 filing was elected to obtain the benefits of the automatic stay and a breathing spell from the City's selective effort to put the Debtor out of business and to preserve the Debtor's relationships and assets for the benefit of its landlords, vendors, clients and other creditors.

## II. JURISDICTION AND VENUE

11. This Court has jurisdiction over this Application pursuant to sections 157 and 1334 of title 28 of the United States Code (the "Judicial Code").

12. Venue of this case and this Application in this district is proper pursuant to sections 1408 and 1409 of the Judicial Code. This is a core proceeding pursuant to section 157(b) of the Judicial Code.

13. The statutory predicate for the relief sought herein is Bankruptcy Code section 327 and Bankruptcy Rule 2014.

## III. RELIEF REQUESTED

14. By this Application, the Debtor seeks authority, pursuant to section 327(a) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, to employ GFLLP as its chapter 11 counsel under a general retainer to perform the legal services set forth herein.

15. GFLLP has considerable experience in matters of this nature. The Debtor believes that the firm is well qualified to represent it in this proceeding.

16. The professional services that the GFLLP is to render to the Debtor is as follows:

      a. to give the Debtor legal advice with respect to the powers and duties as a debtor-in-possession;

      b. to take all necessary action on behalf of the Debtor to protect and preserve the Debtor's estate, including prosecuting actions on behalf of the Debtor, negotiating any and all litigation in which the Debtor is involved, and objecting to claims filed against the Debtor's estate;

      c. to prepare all necessary applications, answers, orders, reports and other legal documents on behalf of the Debtor in connection with the chapter 11 proceeding;

      d. to attend meetings and negotiate with representatives of creditors and other parties in interest, attend court hearings; and advise the Debtor on the conduct of its chapter 11 case;

      e. to advise and assist the Debtor regarding all aspects of the plan confirmation process, including but not limited to negotiating and drafting a plan of reorganization and accompanying disclosure statement, securing the approval of a disclosure statement, soliciting votes in support of plan confirmation, and securing confirmation of the plan; and

      f. to perform all other legal services for the Debtor which may be necessary in this chapter 11 case.

17. The Debtor believes that it is necessary to employ an attorney for the professional services which are needed in order to successfully emerge from chapter 11.

18. To the best of the Debtor's knowledge, GFLLP has no present connection with the creditors of the estate, any other parties in interest or their respective attorneys, except as otherwise disclosed in the affirmation of Gary M. Kushner submitted herewith.

19. The members, associates and paraprofessionals of GFLLP represent no interest adverse to the Debtor or its estate and is disinterested as that term is defined in section 101(14) of the Bankruptcy Code.

20. The Debtor desires to retain GFLLP under a general retainer because of the extensive legal services required. The Debtor desires to pay GFLLP compensation as allowed by the Bankruptcy Court in the manner set forth in the annexed proposed order of retention.

21. The Debtor's employment of GFLLP would be in the best interests of the estate.

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form annexed hereto, authorizing the retention of GFLLP effective as of the Petition Date, and granting such other and further relief as is just and proper.

Dated: New York, New York
      August 25, 2011

                      OTR Media Group Inc.

                      By:    /s/Ari Noe
                              Ari Noe