Goetz Fitzpatrick LLP
One Penn Plaza
New York, New York 10119
Telephone: 212-695-8100
Facsimile: 212-629-4013
By: Gary M. Kushner, Esq.

*Proposed Attorneys for the Debtor*
*and Debtor in Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In re:                                                              Chapter 11

OTR MEDIA GROUP, INC.                        Case No. 1-11-47385 (ESS)

                                  Debtor.
------------------------------------------------------------X

## DECLARATION OF ARI NOE PURSUANT TO
## RULE 1007-4 OF THE LOCAL BANKRUPTCY RULES

       Ari Noe, pursuant to 28 U.S.C. §1746 and under the penalty of perjury, declares as follows:

       1.      I am the president and 100% equity owner of OTR Media Group Inc. (the "Debtor"), debtor and debtor in possession. I have personal knowledge of, and am familiar with, the business affairs of the Debtor. With respect to the financial information set forth herein, I have relied on information from the Debtor's books and records, and with respect to pending legal matters, I have relied upon the advice and counsel of the Debtor's attorneys.

       2.      I submit this Declaration pursuant to Rule 1007-4 of the E.D.N.Y. Local Bankruptcy Rules.

       3.      Unless otherwise indicated, the financial information set forth in this declaration is unaudited and subject to revision.

4.    The Debtor is a full service outdoor advertising company as defined by the New York City Administrative Code.  The Debtor provides bulletins, wallscapes and spectaculars in prime real estate locations covering the New York City market.  The Debtor also provides media sales and billboard maintenance services to its advertising clientele.

5.    In the early 2000's, the City of New York ("City" or "NYC") enacted a land use scheme that bans advertising signs across huge swaths of territory in all five metropolitan boroughs, but at the same time, carved out an invidious, arbitrary and irrational set of exemptions from the City's regulation of outdoor advertising that benefits only select outdoor advertisers.

6.    Specifically, NYC amended its rules to single out certain outdoor advertising companies ("OAC's") for punitive treatment, including discriminatory classifications of violations, permitting the assessment of multiple violations against various entities for a single act or non-conforming aspect of the same sign, imposing minimum penalties of $10,000 for minor violations and large penalties in the staggering amount of $25,000, as well as other penalties and fines (the "Penalty Scheme").

7.    In furtherance of the City's rules, the Environmental Control Board ("ECB") and its team of Administrative Law Judges, issue what the ECB calls "master decisions and orders".  In one master decision and order alone, the Debtor was assessed over $160,000 with respect to a single outdoor sign – over six (6) times the $25,000 limit set by the City's Charter.  The Debtor also was a victim of violations asserted by the City on legally permitted sites. The City also unlawfully revoked permits issued to the Debtor from legal sites as part of its aggressive anti-billboard stance.

8.    The Penalty Scheme and multitude of ECB violations which have followed the City's change in regulations have destroyed the Debtor's business.  But even worse

yet, the Penalty Scheme permits the City to issue other orders against other OAC's (such as landlords of a building hosting a sign *via* a lease) with respect to the same sign and for violations found on the same date. Because the custom and practice in the outdoor advertising business is that the media company – the Debtor here – is contractually bound to indemnify the lessor/landlord (or other vendors) that make a given outdoor sign possible, the end result is that Debtor has become actually responsible to both the City and to its vendor multiple times for the same violation.

9. Following the declaration of ECB violations, the City was able to obtain money judgments against the Debtor, many on default and several without notice. At present, there is approximately $550,000 in actual money judgments existing in favor of the City against the Debtor. There is another approximately $1,500,000 in alleged violations against the Debtor and another $3,000,000 in potential indemnity claims arising from the City's attack on the Debtor's landlords and vendors – which are presently in dispute and being contested in a variety of judicial proceedings.

10. Over the past several months, the Debtor has met with the City to discuss an amicable resolution of the total claims asserted by the City. The City provided little interest in settling these claims or otherwise providing meaningful alternatives to aggressive enforcement efforts by allowing the Debtor to satisfy the judgments and other claims over a period of time governed by the terms of a forbearance agreement.

11. The City has now recently taken active measures to enforce its judgments against the Debtor, including the issuance of restraining notices on the Debtor's customers and landlords. The recently enacted enforcement efforts by the City have prevented the Debtor from conducting its business.

12. The chapter 11 filing was elected to obtain the benefits of the automatic

stay and a breathing spell from the City's selective effort to put the Debtor out of business and to preserve the Debtor's relationships and assets for the benefit of its landlords, vendors, clients and other creditors.

### E.D.N.Y. LBR 1007-3(a)(i)

13. The Debtor is not a small business debtor within the meaning of Bankruptcy Code section 101(51D).

### E.D.N.Y. LBR 1007-3(a)(ii)

14. On August 25, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

15. The Debtor is operating its business and managing its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

16. No trustee, examiner or committee of creditors has been appointed in this case.

### E.D.N.Y. LBR 1007-3(a)(iii)

17. This case was not originally commenced as a chapter 7, chapter 12 or chapter 13 case.

### E.D.N.Y. LBR 1007-3(a)(iv)

18. To the best of my knowledge, no unofficial creditor or other committees were formed prior to the filing of the Debtor's chapter 11 cases.

### E.D.N.Y. LBR 1007-3(a)(v)

19. A list containing the names, addresses and the amounts of the claims of the Debtors' twenty (20) largest known non-insider unsecured creditors will be separately filed with the petition.

### E.D.N.Y. LBR 1007-3(a)(vi)

20.     The Debtor believes that the following entities may assert secured claims: Metropolitan National Bank, Internal Revenue Service and the New York State Department of Taxation and Finance.  The names and addresses of the Debtor's secured creditors, with amounts of each claim and a brief description and estimate of the value of the collateral securing each claim, indicating whether such claim is disputed, will be separately filed with the petition.

21.     The Debtor reserves its right to dispute the amount and/or secured status of these claims.

## E.D.N.Y. LBR 1007-3(a)(vii)

22.     The Debtor's assets consist primarily of leases to signs and accounts receivable which has an unknown value.

## E.D.N.Y. LBR 1007-3(a)(viii)

23.     There are no classes of shares of stock, debentures, or other securities of the Debtor that are publicly held.

## E.D.N.Y. LBR 1007-3(a)(ix)

24.     None of the Debtor's property is in the possession or custody of any custodian.

## E.D.N.Y. LBR 1007-3(a)(x)

25.     The Debtor operates its business from 288 Hamilton Avenue, Brooklyn, New York 11231.  The Debtor is also a party to a sublease for office space in New York City which is in the process of being relocated.

## E.D.N.Y. LBR 1007-3(a)(xi)

26.     The Debtor's books and records are partly located at 288 Hamilton Avenue, Brooklyn, New York 11204.

27.     The Debtor's substantial assets are located at the same address.

28.     The Debtor has no assets located outside the territorial limits of the United States.

### E.D.N.Y. LBR 1007-3(a)(xii)

29.     There are multiple pending litigations against the Debtor  primarily by the City of New York for ECB violations.  A full list of litigations will be provided on the Statement of Financial Affairs.

### E.D.N.Y. LBR 1007-3(a)(xiii)

30.     The Debtor's existing senior management includes myself and Michael Eisenberg. Michael Eisenberg is the Debtor's in house comptroller.

### E.D.N.Y. LBR 1007-3(a)(xiv)

31.     The Debtor has approximately ten (10) employees of which eight (8) are W-2 employees and two (2) are independent contractors.

### E.D.N.Y. LBR 1007-3(a)(xv)

32.     The Debtor will not make any payments to any officers or directors during the thirty (30) day period following the commencement of these chapter 11 cases without the consent of the Debtor's secured creditors.

### E.D.N.Y. LBR 1007-3(a)(xvi)

33.     The Debtor's anticipated monthly receipts are  $400,000.00.

### E.D.N.Y. LBR 1007-3(a)(xvii)

34.     The Debtor's primary goal in chapter 11 is to prevent the City from continuing its discriminatory practices against the Debtor, formulate a plan of reorganization based upon profitability, which except for the City's most recent activities, has been profitable. The Debtor's plan may also include the sale of its existing locations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: New York, New York
      August 25, 2011

By:    <u>/s/Ari Noe</u>
       Ari Noe, President

k:\kushner\otr media group\local rule 1007-4.doc