Goetz Fitzpatrick LLP
One Pennsylvania Plaza
44th Floor
New York, New York 10119
Tel. No. (212) 695-8100
Fax No. (212) 629-4013

By: Gary M. Kushner, Esq.

*Attorneys for OTR Media Group Inc.*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:                                                                    Chapter 11

OTR MEDIA GROUP INC.,                                    Case No. 1-11-47385 (ESS)

                                       Debtor.
------------------------------------------------------------X

**FIRST INTERIM APPLICATION OF GOETZ FITZPATRICK LLP AS DEBTOR'S COUNSEL FOR ALLOWANCE OF COMPENSATON FOR PROFESSIONAL SERVICES RENDERED AND FOR REIMBURSEMENT OF ACTUAL AND <u>NECESSARY EXPENSES INCURRED</u>**

TO  THE HONORABLE ELIZABETH S. STONG,
 UNITED STATES BANKRUPTCY JUDGE:

     Goetz Fitzpatrick LLP (sometimes referred to herein as "GF"), counsel for OTR Media Group Inc., debtor and debtor-in-possession (the "Debtor"), files its first application (the "Application") pursuant to §§330(a) of title 11, United States Code (the "Bankruptcy Code") and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for allowance of interim compensation for professional services performed and for reimbursement of expenses for the period between August 25, 2011 and November 30, 2011 (the "First Interim Period"). In support of the Application, Goetz Fitzpatrick LLP respectfully represents as follows:

## I. RELIEF REQUESTED

1. By this Application, Goetz Fitzpatrick LLP, Chapter 11 counsel for the Debtor, seeks entry of an order awarding (i) interim compensation in the sum of $114,994.00 for fees for professional services rendered as counsel for the Debtor in this proceeding during the First Interim Period, and (ii) for reimbursement of disbursements made on behalf of the Debtor for the same period in the sum of $3,769.56 for a total award of $118,763.56.

2. Prior to the Debtor's chapter 11 filing, GF received an initial retainer from the Debtor in the amount of $65,000. Against the initial retainer, GF provided pre-petition professional services to the Debtor in the amount of $17,867.00 - primarily in preparation for the chapter 11 filing on August 25, 2011 (the "Filing Date"). As of the Filing Date the balance of the initial retainer totaled $47,133.00 (the "Retainer Balance").

3. For purposes of this Application, GF seeks authorization for payment of the Retainer Balance plus, after giving credit for the Retainer Balance, an additional payment of $67,861.00 for fees and $3,769.56 for reimbursement of expenses for a total payment of $71,630.56.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a "core" proceeding pursuant to 28 U.S.C. §159(b). Venue of these proceedings and over this Application are proper in this district pursuant to 28 U.S.C. §§1408 and 1409.

5. The professional services for which allowances are sought by Goetz Fitzpatrick LLP in this application were rendered on behalf of the Debtor.

6. A summary of the categories of services are required by the Office of the United States Trustee and the time devoted by Goetz Fitzpatrick LLP for each such service is annexed hereto as Exhibit "A".

7. Goetz Fitzpatrick LLP also maintains records of the time it has expended for professional services on behalf of a client, as well as records for expenses that were paid on behalf of a client. Goetz Fitzpatrick LLP's time records were made concurrently with the rendition of the professional service rendered for the benefit of the Debtor. Each time entry made by Goetz Fitzpatrick is reflected on Exhibit "B" annexed hereto.

8. The undersigned counsel, Gary M. Kushner, is duly admitted to practice before this Court. The undersigned has been authorized to submit this Application for allowances on behalf of Goetz Fitzpatrick LLP.

### III. DEBTOR'S COUNSEL

9. Goetz Fitzpatrick initially applied for retention as the Debtors' chapter 11 counsel on August 26, 2011 [See ECF No. 2] and renewed its application on October 5, 2011, on notice to all creditors and parties in interest at the request of the Office of the United States Trustee ("UST") [See ECF No. 36].

10. The United States Trustee and other parties-in-interest objected to the proposed retention on the grounds that Goetz Fitzpatrick LLP's representation of certain of the Debtor's landlords in a section 1983 proceeding captioned in <u>203 17th Realty LLC v. City of New York</u>, 11 CV 1392 (the "1983 action") could give rise to a conflict of interest [See ECF Nos. 40, 42 and 43].

11. The Court held a hearing on the Application on October 25, 2011, at which time Goetz Fitzpatrick LLP's retention application was granted.

12. The Court held a further hearing on the Application on November 29, 2011, at which time, the Court clarified the retention of GF as Debtor's counsel as reflected in the record and directed the Debtor to submit order on consent confirming that Debtor's proposed counsel do no more work for the landlords in this case, or the 1983 action..

13. The Office of the United States Trustee approved the form of Order submitted by the Debtor and an order granting GF's retention was entered by the Court on December 15, 2011, effective as of the Filing Date. A copy of GF"s retention order is annexed hereto as Exhibit "C".

14. Goetz Fitzpatrick is a law firm comprised of approximately thirty lawyers and paraprofessionals. Goetz Fitzpatrick is recognized as a leader in representing the construction industry. The firm is a leading force in sophisticated construction-related litigation, arbitrations and mediation. The firm's presence also extends to representing other industries in complex commercial litigation, transactional matters, trust and estates and general counseling.

15. Goetz Fitzpatrick recently recruited Gary M. Kushner, Esq., who formerly led the Bankruptcy Group at Forchelli, Curto, Deegan, Schwartz, Mineo, Cohn & Terrana, LLP. Mr. Kushner now heads the Bankruptcy Group at Goetz Fitzpatrick and has brought Rebecca Greene with him to the firm.

16. Ms. Greene is a highly experienced paralegal who has concentrated her practice in the area of bankruptcy law for over the (10) years.

17. Goetz Fitzpatrick also employs Scott D. Simon, Esq. in its Bankruptcy Group. Mr. Simon is a former associate with the New York City law firms Cahill Gordon & Reindel LLP and Littleton Joyce Ughetta Park & Kelly LLP. Mr. Simon has prior experience drafting motions common to a chapter 11 case, research on complex and ordinary bankruptcy issues and has hands -on practice in bankruptcy litigation matters.

18. In connection with complex litigation matters that may arise in a chapter 11 case, GF utilizes the services of several highly experienced and extremely capable litigation lawyers including Ronald Coleman.

## IV. FACTUAL BACKGROUND

19. On August 25, 2011, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is operating its business and managing its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

20. No trustee, examiner or committee of creditors has been appointed in this case.

21. The Debtor is a full service outdoor advertising company as defined by the New York City Administrative Code, now in its second decade of operation. The Debtor provides bulletins, wallscapes and spectaculars in prime real estate locations covering the New York City market. The Debtor also provides media sales and billboard maintenance services to its advertising clientele.

22. The Debtor's chapter 11 filing was precipitated by, among other things, fines and legal expenses in connection with New York City's promulgation and enforcement of zoning regulations that effectively banned the Debtor from maintaining certain signs (the "Sign Laws"). The fines, legal expenses, and loss of revenue has severely interfered with the Debtor's relationship with landlords of various buildings which are used to place outdoor signs. The City's enforcement scheme has restricted the Debtor's available advertising sources and created substantial cash flow issues.

23. The chapter 11 filing was elected to obtain the benefits of the automatic stay and a breathing spell from the City's selective effort to put the Debtor out of business and to preserve

the Debtor's relationships and assets for the benefit of its landlords, vendors, clients and other creditors.

## V. SIGNIFICANT SERVICES PERFORMED BY GOETZ FITZPATRICK LLP DURING THE FIRST INTERIM PERIOD

24. The following is a summary description of the significant services performed by Goetz Fitzpatrick LLP during the First Interim Period. All of the professional services provided by Goetz Fitzpatrick LLP on behalf of the Debtor are set forth in its time records (Exhibit "B" hereto) (the "Time Records"). The Court is respectfully referred to the Time Records for specific details of the work performed by Goetz Fitzpatrick LLP during the First Interim Period.

25. In summary fashion, the work performed by Goetz Fitzpatrick during the First Interim Period has been classified in several general categories as follows:

　　a.　"Asset Disposition", which is generally described as the work necessary to counsel the Debtor and assist the Debtor with the potential sale of the Debtor's signs. The majority of sale negotiation efforts overlaps with case administration and business operations and were billed under both of these categories.

　　b.　"Business Operations", which is generally described as the work necessary to counsel the Debtor in its business decisions. Services rendered in this category primarily included negotiations with the Debtor's landlords concerning operations, discussions with service providers regarding the automatic stay and continuation of services and negotiations with creditors concerning litigation with the City of New York.

　　c.　"Case Administration", which is generally described as the work necessary to counsel the Debtor about its responsibilities as a debtor in a chapter 11 case; attending to scheduling issues; updating creditors with respect to miscellaneous inquiries; reviewing operating reports and review of other financial information during the First Interim Period.

　　d.　"Court Hearings", which is generally described as the work necessary for scheduled hearings, coordinating hearings with creditors, preparing hearing agendas, and attending court hearings.

　　e.　"Claims Administration and Objections", which is generally described as the work necessary to evaluate the merits of claims filed against the Debtor's estate and developing the basis of any objections thereto.

f.  "Professional Retention", which includes the work necessary to secure approval of the retention of professionals.

g.  "Cash Collateral" includes time spent securing debtor-in-possession financing sources and approval for use of cash collateral.

h.  "Legal Motions" which is generally described as the work necessary to prepare motions before the Court.

i.  "Plan and Disclosure Statement" which is generally described as the work necessary to prepare the Debtors' plan and disclosure statement.

j.  "Legal Research" which is generally described as the legal work associated with the preparation of legal points and authorities to support or oppose motion practice, as well as legal research on a myriad of other legal issues that affect the administration of the chapter 11 case.

**A.    Asset Disposition**

26. During the First Interim Period, Goetz Fitzpatrick LLP spent significant time attempting to evaluate proposals for the purchase of one or more of the Debtor's signs. The Debtor has received proposals from competing outdoor advertising companies. Goetz Fitzpatrick LLP has had numerous telephone conversations with special counsel which has had contact with entities that have made offers. Goetz Fitzpatrick LLP has also entertained telephone calls and attended meetings with representatives of other entities who have expressed interest in acquiring one or more of the Debtor's signs.

27. In connection with this service category, GFLLP has also met on several occasions with the Ari Noe, the Debtor's principal, to discuss alternatives to the sale(s) of the Debtor's signs.

**B.    Business Operations**

28. The Debtor filed its petition in part to stay the City's selective enforcement of the Sign Laws, which enforcement threatens to put the Debtor out of business.

29. The Debtor requested that Goetz Fitzpatrick LLP to assist it in making various business decisions which affect the Debtor's relationship with a number of landlords.

30. GF also provided general business counseling to the Debtor which became necessary as a result of the numerous administrative burdens that typically arise during a chapter 11 case.

**C.** **Case Administration**

31. Since its retention, Goetz Fitzpatrick LLP has endeavored to ensure that the Debtor has timely complied with its duties and with Court deadlines during the First Interim Period.

32. Goetz Fitzpatrick LLP has responded to many creditor inquiries about the status of the chapter 11 case. Goetz Fitzpatrick LLP has responded to the inquires of many entities who have conducted due diligence in connection with the potential purchase of the Debtor's signs.

33. Goetz Fitzpatrick LLP has insured that proper notices have been generated during the First Interim Period, including noticing of Court calendars and adjournments.

34. During the First Interim Period, GF routinely responded to various inquiries from the Debtor about case developments, general case administration and other aspects of the events which have occurred in the chapter 11 case.

**D.** **Court Hearings**

35. During the First Interim Period, Goetz Fitzpatrick LLP was required to attend several Court conferences and hearings including:

(a) status conference, hearing on application to pay pre-petition wages and hearing on Debtors' motion for use of cash collateral which were heard by the Court on August 31, 2011;

(b) status conference, hearing on Debtors' motion to use cash collateral, which were heard by the Court on September 28, 2011;

(c) status conference, hearing on Debtors' motion to use cash collateral, motion to pay prepetition wages, application to employ Goetz Fitzpatrick LLP as counsel, which were heard by the Court on October 25, 2011; and

(d) status conference, hearing on Debtor's application to employ various professionals in the ordinary course of business, to use cash collateral, and on the City's motion for relief from the automatic stay, which were heard by the Court on November 28, 2011.

(e) status conference, hearing on Debtor's application to employ various professionals, and on settling an order resolving the City's motion for relief from the automatic stay, which were heard by the Court on December 15, 2011.

36. Before each and every Court hearing, Goetz Fitzpatrick LLP diligently prepared the client (when necessary) and extensively reviewed pleadings, other documents and research memoranda in order to prepare for oral argument.

E. **Claims Administration/Objections**

37. In connection with this category, Goetz Fitzpatrick LLP was required to deal with various landlord claims asserted against the Debtor; identity claims against which the Debtor intends to file claims objections; and evaluate the nature of claims asserted by the City and various taxing authorities.

38. In connection with this category, Goetz Fitzpatrick LLP worked with the Debtor, and the City to discuss possible resolution of the City's myriad proceedings against the Debtor.

**F.     Fee Application/Attorney Retentions**

39. Goetz Fitzpatrick LLP prepared and filed its own retention application and order.

40. Goetz Fitzpatrick LLP also prepared and filed the application to employ Novack Burnbaum Crystal LLP as Special Counsel to the Debtor.

41. Goetz Fitzpatrick LLP also prepared and filed the application to retain ordinary course professionals.

42. The filing of the foregoing applications resulted in the filing of objections by the UST and other parties in interest. GF researched the legal issues applicable to each objection, prepared replies and ultimately resolved the issues raised by each objecting party.

**G.     Cash Collateral**

43. During the First Interim Period, Goetz Fitzpatrick has worked closely with its secured lender, Metropolitan National Bank, and arranged for use of the bank's cash collateral so that the Debtor could continue to operate in chapter 11.

**H.     Legal Motions**

44. Goetz Fitzpatrick LLP prepared several motions during the First Interim Period, which became necessary for the proper administration of the Debtor's case, including:

    (a) Debtor's Application to Retain Goetz Fitzpatrick LLP as its chapter 11 counsel [ECF No. 2];

    (b) Emergency Motion to Use Cash Collateral [ECF No. 4];

    (c) Motion to Pay Prepetition Wages, Employee Benefits, Etc. [ECF No. 6];

    (d) Reply Declaration to Omnibus Objections to Retention of Goetz Fitzpatrick LLP as Debtor's Counsel [ECF No. 46];

(e) Opposition to City's Motion to Declare that the Automatic Stay does not apply or in the alternative for Relief from Stay [ECF No. 64];

(f) Motion to Extend Time to Assume or Reject Real Property Leases [ECF No. 56];

(g) Motion to Extend Exclusivity Period for Filing a Chapter 11 Plan and Disclosure Statement [ECF No. 57]; and

(h) Application to Employ Howard Crystal, Esq., Novack Burnbaum Crystal LLP [ECF No. 62].

45. In many respects, since the Filing Date, the ongoing efforts of the City to destroy the Debtor's business has only escalated thereby forcing GF to engage the City in several highly contested motions and the commencement of an adversary proceeding which sought injunctive relief.

46. During the First Interim period, GF has successfully defended against the City's efforts to pursue the Debtor in various ECB hearings *en masse* on the pretext that the City was exempted from the automatic stay. As a result of GF's counsel, the City may rightfully continue sign enforcement through litigation against the Debtor as to only active sign locations, the end result of which will likely limit, to a manageable degree, the costs of defending these actions.

### I. Plan and Disclosure

47. As detailed above, during the first Interim Period, Goetz Fitzpatrick LLP has been intimately involved in discussions between the Debtor and entities seeking to purchase the Debtor's existing signs.

48. Due to the status of the Debtor's efforts to sell some or all of the outdoor advertising leases, it was premature for the Debtor to file a plan before it could finalize the sale of certain outdoor advertising leases, close that transaction and file a plan of reorganization.

49. In addition to participating in these negotiations, Goetz Fitzpatrick LLP has reviewed a litany of documents, pleadings, financial information – both historical and present, claims and other material, in preparation for drafting the Debtor's Plan and Disclosure Statement.

50. Goetz Fitzpatrick LLP has met with the Debtor and its accountants on numerous occasions to distill all of the relevant information required to be provided in a plan and disclosure statement.

**J.  Expenses**

51. The Time Records also delineate the nature of reimbursements sought during the Final Interim Period.

52. Goetz Fitzpatrick LLP has been required during the course of its retention to outlay funds for actual and necessary purposes. Charges for express or overnight mail were used only when first class mail was impractical, such as when a response was required within an immediate deadline. The firm did not charge the Debtor for the cost of overhead expenses. These expenses are fully documented on Exhibit "B" hereto.

### VI. STATUTORY BASIS FOR RELIEF REQUESTED

53. The statutory basis for relief sought herein are sections 330 and 331 of Title 11 of the Bankruptcy Code and Bankruptcy Rule 2016, as supplemented by the Local bankruptcy Rules. Under sections 330(a)(3)(A) of the Bankruptcy Code, a Court shall consider the following factors in determining whether the amount of compensation requested is reasonable:

(A)  the time spent on such services;

(B)  the rates charged for such services;

(C)  whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered towards the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

*See* Section 330(a)(3)(A) of the Bankruptcy Code.

54. The philosophy underlying the adoption of section 330 of the Bankruptcy Code is equally applicable to interim compensation. The Bankruptcy Code provides that the same consideration apply to making interim awards of compensation under section 331 as to final allowances under section 330. See In re Public Service Co. of New Hampshire, 93 B.R. at 826; In re International Horizons, Inc., 10 B.R. 895 (Bankr.N.D.Ga. 1981). Section 331 of the Bankruptcy Code provides:

> A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date as is provided under section 330 of this title. After notice and a hearing, the Court may allow and disburse to such applicant such compensation or reimbursement.

11 U.S.C. §331.

55. It is respectfully submitted that the compensation and expenses sought herein by Goetz Fitzpatrick LLP should be allowed based on the above standard. The rates charged are typical of other comparably skilled practitioners, and the amount of time spent was reasonable in light of the nature of the issues presented and the complexity of the administration of the Debtor's case. The services provided were both necessary and beneficial to the administration of the case, the estate and the Debtor's creditors.

WHEREFORE, Goetz Fitzpatrick LLP respectfully requests that the Court enter an order granting this Application in its entirety and for such further and different relief as is just, proper and equitable.

Dated: New York, New York
December 29, 2011

>Respectfully submitted,
>
>Goetz Fitzpatrick LLP
>
>By: /s/Gary M. Kushner
>Gary M. Kushner
>A Partner of the Firm
>One Pennsylvania Plaza, 44th Floor
>New York, New York 10119
>(212) 695-8100

t:\scottdsimon\otr media group inc\fee application\fee application.docx