TRACY HOPE DAVIS
United States Trustee for Region 2
Office of the United States Trustee
271 Cadman Plaza East, Suite 4529
Brooklyn, New York 11201
Telephone: (718) 422-4960
William E. Curtin (WC-1974)

UNITED STATES BANKRUPTCY COURT      Hearing Date: January 23, 2012
EASTERN DISTRICT OF NEW YORK      Hearing Time: 2:00 p.m.
---------------------------------------------------------x
In re:

OTR MEDIA GROUP INC.,                                Chapter 11

                                                                        Case No. 11-47385 (ESS)
                               Debtor.
---------------------------------------------------------x

**OBJECTION OF THE UNITED STATES TRUSTEE TO APPLICATION OF GOETZ FITZPATRICK LLP, AS COUNSEL TO THE DEBTOR, FOR INTERIM ALLOWANCE OF FEES FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES**

TO:     THE HONORABLE ELIZABETH S. STONG,
         UNITED STATES BANKRUPTCY JUDGE:

Tracy Hope Davis, United States Trustee for Region 2 (the "United States Trustee"), pursuant to her duties under 28 U.S.C. § 586 (a)(3)(A)(i) and (ii), respectfully submits this Objection to the First Interim Application of Goetz Fitzpatrick LLP ("Goetz"), as counsel for OTR Media Group (the "Debtor"), for Allowance of Fees for Services Rendered and Reimbursement of Expenses (the "Application") and respectfully represents as follows:

**PRELIMINARY STATEMENT**

The Application seeks an interim award of nearly $120,000.00 in fees and expenses in a case that has made no cognizable progress in chapter 11, and is currently losing money and teetering on the edge of administrative insolvency. In addition, Goetz's fee request is, at this

1

time, disproportionate to the benefit its services provided to the estate, and the Application is not in compliance with the United States Trustee's Fee Application Guidelines as it contains numerous lumped time entries and many of the time entries are so vague as to render it impossible to determine what work was performed and what benefit was provided to the estate. The Application also seeks excessive fees for intra-office conferences. Accordingly, the Court should deny the Application without prejudice or, in the alternative, disallow certain portions of the fees and expenses sought as outlined herein.

## **STATEMENT OF FACTS**

### A. General Background

1. On August 25, 2011, the Debtor commenced its case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. ECF Doc. No. 1.

2. The United States Trustee has not, to date, formed an unsecured creditors' committee in the Debtor's case.

3. The Debtor is operating its business and managing its affairs as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

4. The United States Trustee has not appointed a trustee or an examiner in the case.

5. The Debtor is a full service outdoor advertising company as defined by the New York City Administrative Code. See Declaration of Ari Noe ("Noe") Pursuant to Local Bankruptcy Rule 1007-4, executed on August 25, 2011, (the "Noe Declaration") at 2, ¶ 4, ECF Doc. No. 3. The Debtor provides bulletins, wallscapes and spectaculars in prime real estate locations covering the New York City market and provides media sales and billboard maintenance services to its advertising clientele. Id.

6. By Order dated December 16, 2011, the Court approved the Debtor's application to retain and employ Goetz as counsel to the Debtor. ECF No. 69.

B. **Assets, Liabilities and Operations**

7. The Debtor scheduled no real property and personal property with an aggregate value of $7,665,672.90, the vast majority of which consists of leases and contract rights ($6,000,000.00) and receivables ($1,558,562.90). ECF Doc. No. 31, Schedules A and B.

8. The Debtor scheduled secured claims in the aggregate amount of $2,003,223.14. ECF Doc. No. 31, Schedule D. The Debtor's largest secured creditor is Metropolitan National Bank, with a scheduled claim of $1,240,000.00. Id. The balance of the secured claims are tax liens of the United States Internal Revenue Service and the New York City Department of Finance. Id.

9. The Debtor's only scheduled priority unsecured claim is a $71,000.00 claim of the United States Internal Revenue Service. ECF Doc. No. 31, Schedule E.

10. The Debtor scheduled an aggregate of $5,068,473.17 in general unsecured claims. ECF Doc. No. 31, Schedule F.

11. The Court has not established a last day to file proofs of claim.

12. To date, the Claims Register contains fifteen claims filed against the Debtor totaling $1,888,933.66. See Claims Register, Claims 1-15. This sum total comprises (1) unsecured claims totaling $1,359,331.70, (2) priority unsecured claims totaling $328,014.21 and 3) secured claims totaling $201,587.76. Id.

13. The Debtor's operating reports reveal net cash flow of $969.65 in September 2011, $74,945.00 in October 2011 and -$20,091.20 in November 2011, all months in which no professional fees were paid. ECF Nos. 58, 59 and 71.

**OBJECTION**

A.      **Professional Fees**

In calculating legal fees, "'[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable rate.'" In re Henry A. Szymczak, 246 B.R. 774, 779 (Bankr. D.N.J. 2000) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). This approach is commonly referred to as the lodestar method. There are a number of factors that may warrant a departure from the lodestar method. For example, the court may consider the time and labor required, the skill requisite to perform the legal service properly, the customary fee, the amount involved and the results obtained, the experience, reputation and ability of the attorneys, and awards in similar cases. Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).

Section 330(a)(3) is the legislative explanation of the lodestar analysis. See In re Holder, 207 B.R. 574, 583 (Bankr. M.D. Tenn. 1997) (amendments to the Bankruptcy Code in 1994 codify lodestar standard). Section 330 of the Bankruptcy Code states in pertinent part that, a court may award to professionals retained pursuant to 11 U.S.C. § 327:

> (1) (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person or attorney and by any paraprofessional persons employed by any such person; and
>
>   (B) reimbursement for actual, necessary expenses. 11 U.S.C. § 330 . . .
>
> (3) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including -
>
>   (A) The time spent on such services;
>
>   (B) The rates charged for such services;

(C) Whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered . . .

(D) Whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) Whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330.

The applicant bears the burden of proof in all fee matters. In re Recycling Indus., Inc., 243 B.R. 396, 401 (Bankr. D. Colo. 2000); In re Keene Corp., 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997); accord In Re Sounds Distributing Corp., 122 B.R. 952, 956 (Bankr. W.D. Pa. 1991) (explaining, "[t]he burden of proof as to the reasonableness of the requested compensation rests with the applicant"). The burden of proof to show entitlement to fees should "not be taken lightly, especially given that every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors." In re Spanjer Bros., Inc., 191 B.R. 738, 747 (Bankr. N.D. Ill. 1996) (citing In re Pettibone Corp., 74 B.R. 293, 294 (Bankr. N.D. Ill. 1987)).

The Bankruptcy Court has the duty to examine the reasonableness of the fees requested by retained professionals independently, notwithstanding the absence of objections by the trustee, debtor or creditor. In re AutoParts Club, Inc., 211 B.R. 29, 33 (B.A.P. 9th Cir. 1997) (citing In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 841 (3d Cir. 1994)).

**B.     The Application Should be Denied, Without Prejudice.**

Interim fee awards are discretionary and are subject to reexamination and adjustment during the course of the case. In re Spanjer Brothers, Inc., 191 B.R. at 747, citing In re Jensen-Farley Pictures, Inc., 47 B.R. 557 (Bankr. D. Utah 1985). Any interim fees awarded or paid are

payable on account and are subject to the Court's review at the time of the Court's consideration of final fee applications.

Pursuant to section 331 of the Bankruptcy Code, trustees and other professionals in chapter 11 cases are permitted to file applications for interim fee awards. U.S. Trustee v. Fishback (In re Glados, Inc.), 83 F.3d 1360, 1367 (11th Cir. 1996). Some factors to be considered by the court in determining the appropriateness of an interim fee award include the current availability of funds, the existence of other accrued administrative obligations of the same or higher priority that may deplete the funds, the continuing need for funds to pay necessary expenses in the future, and the inability to file a final fee application in the near future. Id., citing In re Commercial Consortium of California, 135 B.R. 120, 124-25 (Bankr. C.D. Cal. 1991).

From a purely economic perspective, the award of interim fees is inappropriate in this case, at this time. The Debtor proposes that it be granted authority to pay nearly $120,000.00 in professional fees and expenses. Application at 2, ¶ 2. This request is made against the backdrop of a Debtor who had net cash flow of $969.65 in September 2011, $74,945.00 in October 2011 and -$20,091.20 in November 2011, all months in which no professional fees were paid. ECF Nos. 58, 59 and 71. The Debtor, as of the latest information available, is down to approximately $60,000.00 in the bank and administrative insolvency is a real concern, if not a reality. ECF No. 71. Accordingly, it would not be appropriate to award interim fees at this time and the Application should be denied without prejudice.

**C.     If the Court Awards Fees, the Amount Should Far Less Than the Fees Requested.**

Goetz is seeking an interim fee award of $114,994.00, plus reimbursement of expenses of $3,769.56. See Application at 2, ¶ 1. Goetz indicates that it spent a total of 288.7 hours on this

case, the majority of which was expended by Gary M. Kushner, Esq. Id. If the Court overrules the United States Trustee's primary objection and awards some fees to Goetz, such fees should be substantially reduced as set forth herein.

> **1. Inability to Determine Whether Fees Requested Commensurate With Benefit to the Estate**.

Under Section 330, the court may award a professional reasonable fees for services that benefitted the estate. In re Lederman Enter., Inc., 997 F.2d 1321, 1323 (10th Cir. 1993). Accordingly, an application for compensation and reimbursement of expenses must demonstrate that the professional's services were necessary and conferred a benefit to the estate or its creditors. In re Engel, 124 F.3d 567, 573 (3d Cir. 1997), citing In re Arkansas Co., Inc., 798 F.2d 645, 650 (3d Cir. 1986). The court has an independent burden to review fee applications "lest overreaching . . . professionals drain it of wealth which by right should inure to the benefit of unsecured creditors." In re Keene Corp., 205 B.R. at 695, quoting In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d at 844. Under Section 330, the bankruptcy court has the authority to reduce fees or expenses when they are disproportionate to the benefit to the estate, even if it has already approved the professional's retention under Sections 327 of the Bankruptcy Code. In re Taxman Clothing Co., 49 F.3d 310, 316 (7th Cir. 1995); see also Zolfo, Cooper & Co. V. Sunbeam-Oster Co., Inc., 50 F.3d at 262, 263 (3d Cir. 1995) (affirming lower courts' denial of improperly documented and inadequately detailed expenses). Here, due to the unknown distribution to general unsecured creditors, the lack of meaningful progress in the case and the lack of a viable strategy for reorganization, it cannot be determined whether Goetz's fee request is proportionate to the benefit its services provided to the estate. Any fees awarded should be reduced, for this reason, by an amount determined by the Court.

**2.      Services Outside the Scope of the Retention.**

The Court should reduce Goetz's fees because certain time entries reveal billing for services outside the scope of Goetz's retention. Specifically, Goetz billed the estate for time spent responding to various objections to its retention as counsel to the Debtor. The fees incurred to respond to the objections to Goetz's retention are not reasonable nor did they benefit the estates. Annexed hereto as Exhibit A, are copies of Goetz's time records containing the notation "R" adjacent to the time entries for services outside the scope of the retention. The United States Trustee has identified time records representing approximately $4,000.00 in fees that are for services outside the scope of Goetz's retention. See Ex. A. Accordingly, the Court should disallow, for this reason, $4,000.00 in fees.

**3.      Insufficient Detail on Certain Time Entries**.

The time records submitted by Goetz in support of its application contain a significant number of time entries that are vague and render it impossible to determine precisely what work was performed and what benefit the particular service provided to the estate. Annexed hereto as Exhibit A, are copies of Goetz's time records containing the notation "V" adjacent to the non-compliant, vague time entries.

The applicant for an award of compensation under 11 U.S.C. § 330 bears the burden of providing "records [that] specify, for each attorney, the date, the hours expended, and the nature of the work done." New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir.1983). See also E.D.N.Y. LBR 2016-1, adopting the fee guidelines promulgated by the Office of the United States Trustee (Guidelines for Reviewing Applications for Compensation & Reimbursement of Expenses filed under 11 U.S.C. § 330 , reprinted in 28 C.F.R. Part 58, Appendix).

Similarly, Rule 2016(a) requires that the application contain

a detailed statement of (1) the services rendered, the time expended and expenses incurred, and (2) the amounts requested.

Fed.R.Bankr.P. 2016(a). To satisfy this burden, a claimant must justify its charges with detailed, specific, itemized documentation. In re Dimas, LLC, 357 B.R. 563, 576 (Bankr. N.D.Cal. 2006); In re Bennett Funding Group Inc., 213 B.R. 234, 244 (Bankr.N.D.N.Y. 1997); In re Poseiden Pools of America, Inc., 180 B.R.718, 729 (Bankr. E.D.N.Y.1995), affirmed 216 BR. 98, 100 (E.D.N.Y. 1997). Billing records must clearly identify each discrete task billed, indicate the date the task was performed, the precise amount of time spent (not to be billed in increments greater than one-tenth of an hour), who performed the task, their level of experience and that person's hourly rate. In re Fibermark, Inc., 349 B.R. 385, 395 (Bankr. D.Vt. 2006). The records must be detailed enough to enable a Court to determine whether the attorneys are claiming compensation for hours that are "redundant, excessive, or otherwise unnecessary." Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); see also In re Recycling Industries, Inc., 243 B.R. 396, 401 (Bankr. D.Colo. 2000); In re Baker, 374 B.R. 489, 494 (Bankr.E.D.N.Y. 2007); In re Poseidon Pools of America, 180 BR. at 729.

In addition, time entries may not be vague. See Baker, 374 B.R. at 495 ("The records must be detailed enough to enable a Court to determine whether the attorneys are claiming compensation for hours that are 'redundant, excessive, or otherwise unnecessary.'"); see also In re Bennett Funding Group, 213 B.R. at 244 ("In cases where the time entry is too vague or insufficient to allow for a fair evaluation of the work done and the reasonableness and necessity for such work, the court should disallow compensation for such services."). These vague entries "make a fair evaluation of the work done and the reasonableness and necessity for the work

9

extremely difficult, if not impossible." In re Hudson, 364 B.R. 875, 880 (Bankr. N.D.N.Y. 2007). "Entries that contain such vague characterization of the services performed as 'meeting with,' 'conversations with,' 'review materials or docket,' and 'draft correspondence to' fail to adequately describe the services provided and are routinely disallowed." In re Hirsch, No. 02-17966, 2008 WL 5234057, at *7 (Bankr. E.D.N.Y. Dec. 11, 2009).

In order to enable the Court to determine whether the time expended is reasonable, time entries such as meetings, conferences, correspondence and telephone calls must identify the participants, describe the substance of the communications, explain its outcome and justify its necessity. See In re Brous, 2007 WL 1705630,*9 (Bankr. S.D.N.Y. June 12, 2007); In re Fibermark, Inc., 349 B.R. at 396; In re Southern Diesel, Inc., 309 B.R. 810, 813 (Bankr. M.D.Ala. 2004); In re Hasset, Ltd., 283 B.R. 376, 379 (Bankr. E.D.N.Y. 2002).

The United States Trustee has identified time entries, representing approximately $4,500.00 in fees, that are so vague that they render it impossible to determine precisely what work was performed and whether that work benefitted the estate. See Ex. A. Accordingly, the Court should disallow, for this reason, $4,500.00 in fees.

**4. Lumping of Time Entries.**

The Court should disallow a portion of Goetz's fees as numerous time records contained "lumped time." Annexed hereto as Exhibit A, are copies of Goetz's time records containing the notation "L" adjacent to the non-compliant, lumped time entries. In determining the amount of hours reasonably expended under section 330, the Court must exclude hours that are "excessive, redundant, or otherwise unnecessary . . .". Hensley v. Eckerhart, 461 U.S. at 434. Therefore, an applicant's time records must be sufficiently detailed to enable the Court to make this determination. In re Baker, 374 B.R. at 494, citing Hensley, 461 U.S. at 434.

Where time records contain repeated and excessive lumping of time, the Court is unable to evaluate the reasonableness and the necessity of the services rendered. In re Navis Realty, Inc., 126 B.R. 137, 145 (Bankr. E.D.N.Y. 1991). Where time records have been lumped, the uncertainties due to poor record-keeping should be resolved against the applicant. In re Poseidon Pools, 216 B.R. 98, 100 (Bankr. E.D.N.Y. 1997). As a general rule, when services have been lumped together they are not compensable. In re Blackwood Assocs, L.P., 165 B.R. 108, 113 (Bankr. E.D.N.Y. 1994); In re Fibermark, Inc., 349 B.R.at 395 (disallowing time for discrete legal services merged together in the application for fees).

Goetz has failed to properly subdivide numerous time entries by discrete activity performed, representing legal fees of approximately $4,400.00. See Ex. A. Accordingly, the Court should disallow, for this reason $4,400.00 in fees.

## 5. Excessive Intra-Office Conferences.

The Application reveals a significant number of entries for intra-office conferences between various Goetz professionals working on this case. Annexed hereto as Exhibit A, are copies of Goetz's time records containing the notation "I" adjacent to the time entries for intra-office conferences. In nearly every instance, each professional involved in the conference billed the estate, often in different amounts of time. While there may be benefits to a client from intra-office communication between professionals, excessive communication, although perhaps helpful to the professionals, cannot be considered to be quality billable hours reasonably chargeable to the client. In re Colorado-Ute Elec. Ass'n., 132 B.R. 174, 177 (Bankr. D. Colo. 1991).

The United States Trustee estimates that Goetz billed approximately $7,500.00 for these intra-office conferences. The United States Trustee objects to half of those fees, or $3,750.00.

## CONCLUSION

For the reasons stated above, the United States Trustee respectfully requests that the Court sustain her Objection and deny the Application without prejudice or, in the alternative, disallow certain portions of the fees sought as outlined above, and grant such other and further relief as the Court may deem just and proper. The United States Trustee reserves all rights to raise these and any other objections in connection with the hearing on approval of final fee applications.

Dated: Brooklyn, New York
January 17, 2012

Respectfully submitted,

TRACY HOPE DAVIS
UNITED STATES TRUSTEE
FOR REGION 2

By: /s/ *William E. Curtin*
William E. Curtin (WC-1974)
271 Cadman Plaza East
Rm. 4529
Brooklyn, New York 11201
Tel. No. (718) 422-4960