UNITED STATES BANKRUPTCY COURT   **Hearing Date: June 29, 2012**
EASTERN DISTRICT OF NEW YORK   **Hearing Time: 10:30 a.m.**
---------------------------------------------------------x
In re:

OTR MEDIA GROUP INC.,   Chapter 11

   Case No. 11-47385 (ESS)

                   Debtor.
---------------------------------------------------------x


# MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE UNITED STATES TRUSTEE TO CONVERT THIS CHAPTER 11 CASE TO CHAPTER 7 OR, IN THE ALTERNATIVE, DISMISS THE CASE


**TRACY HOPE DAVIS**
**UNITED STATES TRUSTEE**
271 Cadman Plaza East, Room 4529
Brooklyn, New York 11201
Tel. No. (718) 422-4960
Fax No. (718) 422-4990

William E. Curtin, Esq.
Of Counsel

Tracy Hope Davis, United States Trustee for Region 2 (the "United States Trustee"), respectfully submits this memorandum in support of her motion for an order, pursuant to 11 U.S.C. § 1112(b), converting the chapter 11 case of OTR Media Group Inc. (the "Debtor") to chapter 7 or, in the alternative, dismissing the Debtor's case (the "Motion"). In support of the Motion, the United States Trustee represents and alleges as follows:

## I. **INTRODUCTION**

The Court should convert the Debtor's chapter 11 case to chapter 7 because the Debtor has proven that it is unable or unwilling to properly conduct itself as a debtor-in-possession, and it is apparently unable to confirm, or even propose, a plan of reorganization. It is critical that the Debtor's case be converted to ensure that, if any distribution to unsecured creditors is possible, the opportunity is not lost with any additional delay in chapter 11. The Debtor has grossly mismanaged its estate by failing to disclose the conviction and incarceration of its principal for criminal tax fraud, making an unauthorized payment to a professional and paying excessive compensation to its principal. It has also failed to pay quarterly fees to the United States Trustee and demonstrated continuing losses and an inability to reorganize. Cause, therefore, exists to convert this case to chapter 7 or dismiss this case under Sections 1112(b)(4)(A), (B) and (K).

The Court should convert the Debtor's case to chapter 7 because conversion is in the best interest of creditors and the estate. Conversion provides an avenue for an independent trustee to examine the Debtor's books and records, recover transfers, commence litigation and liquidate assets for the benefit of creditors.

## II. STATEMENT OF FACTS

### A. General Background

1. On August 25, 2011, the Debtor commenced its case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. ECF Doc. No. 1.

2. The United States Trustee has not, to date, formed an unsecured creditors' committee in the Debtor's case. See Declaration of William E. Curtin in Support of the United States Trustee's Motion, dated May 18, 2012 (the "Curtin Decl."), ¶ 3.

3. The Debtor is operating its business and managing its affairs as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. See Curtin Decl., ¶ 4.

4. The United States Trustee has not appointed a trustee or an examiner in the case. See Curtin Decl., ¶ 5.

5. The Debtor is a full service outdoor advertising company as defined by the New York City Administrative Code. See Declaration of Ari Noe ("Noe") Pursuant to Local Bankruptcy Rule 1007-4, executed on August 25, 2011, (the "Noe Declaration") at 2, ¶ 4, ECF Doc. No. 3. The Debtor provides bulletins, wallscapes and spectaculars in prime real estate locations covering the New York City market and provides media sales and billboard maintenance services to its advertising clientele. Id.

### B. Assets and Liabilities

6. The Debtor scheduled no real property and personal property with an aggregate value of $7,665,672.90, the vast majority of which consists of leases and contract rights ($6,000,000.00) and receivables ($1,558,562.90). ECF Doc. No. 31, Schedules A and B.

7. The Debtor scheduled secured claims in the aggregate amount of $2,003,223.14. ECF Doc. No. 31, Schedule D. The Debtor's largest secured creditor is Metropolitan National

Bank ("MNB"), with a scheduled claim of $1,240,000.00.[1]  Id.  The balance of the secured claims are tax liens of the United States Internal Revenue Service and the New York City Department of Finance.  Id.

8.	The Debtor's only scheduled priority unsecured claim is a $71,000.00 claim of the United States Internal Revenue Service.[2]  ECF Doc. No. 31, Schedule E.

9.	The Debtor scheduled an aggregate of $5,068,473.17 in general unsecured claims.  ECF Doc. No. 31, Schedule F.

10.	By Order dated January 24, 2012, the Court established March 2, 2012 as the last day for creditors to file claims against the Debtor.  ECF Doc. No. 87.

11.	To date, the Claims Register contains thirty-five claims filed against the Debtor totaling $8,446,195.66.  See Claims Register, Claim Nos. 1-35.  This sum total comprises (1) general unsecured claims totaling $6,473,560.33, (2) priority unsecured claims totaling $533,910.64 and 3) secured claims totaling $1,438,724.69.  Id.  The City of New York (the "City") is the Debtors largest unsecured creditor, with a claim of $2,066,070.15 for Environmental Control Board violations and unpaid taxes.  See Claims Register, Claim No. 9.

**C.	Use of Cash Collateral**

12.	On August 26, 2012, the Debtor filed an emergency motion seeking authority to use the cash collateral of MNB.  ECF Doc. No. 4.

---

[1]	MNB subsequently filed a claim in the amount of $1,237,136.93.  See Claims Register, Claim No. 27.

[2]	Notwithstanding this representation in the schedules, priority claims in the aggregate amount of $533,910.64 have been filed against the Debtor.   See Claims Register, Claim Nos. 3, 5, 9, 18, 19, 23, 34 and 35.

13. Since that time, the Debtor and MNB have consented to the entry of a series of interim orders authorizing the Debtor's use of MNB's cash collateral, the last of which expired on April 20, 2012. ECF Doc. Nos. 34, 102, and 131.

**D. Adversary Proceeding Against the City of New York**

14. On September 1, 2011, the Debtor, alleging various violations of the automatic stay based upon the City's enforcement of laws and regulations regarding outdoor advertising, initiated an adversary proceeding (the "Adversary Proceeding") against the City seeking, inter alia, declaratory judgment as to the application of the automatic stay, damages for automatic stay violations, equitable subordination and a permanent injunction. ECF Doc No. 15, Adv. Pro. No. 11-1448. The summons was served on September 1, 2012 and the City answered on October 13, 2011. Adv. Pro. No. 11-1448, ECF Doc. Nos. 13 and 17.

15. Also on September 1, 2011, in the context of the Adversary Proceeding, the Debtor sought a preliminary injunction against the City. Adv. Pro. No. 11-1448, ECF Doc. No. 2.

16. Between September 2, 2011 and December 16, 2011, the Debtor and the City filed an extended series of pleadings regarding the injunctions and the applicability of the automatic stay to various actions taken, or proposed to be taken, by the City. Adv. Pro. No. 11-1448, ECF Doc. Nos. 6, 7, 8, 9, 15, 16, 19, 20, 23, 24, 25, 26, 28, 29, 30, 31, 34, and 37.

17. On December 16, 2012, the Court entered an Order (the "December 16th Order") finding that

> pursuant to Bankruptcy Code Section 362(d)(4), the automatic stay does not apply to the commencement or continuation of an action or proceeding by the [City] to enforce its police and regulatory power, including enforcement of a judgment other than a money judgment obtained in an action or proceeding to enforce the Administrative Code, Zoning Resolution, or another law or rule regulating

> outdoor advertising (the "Sign Laws") against the Debtor with respect to any sign location presently operated by the Debtor,

and that

> pursuant to Bankruptcy Code Section 362(d)(4), the automatic stay does not apply to the [City's] Department of Building's issuance of Notice of Violations citing violations by the Debtor with respect to any sign location presently operated by the Debtor, and that the [City] may take any appropriate and lawful steps, other than enforcement of a money judgment, to enforce the Sign Laws.

Adv. Pro. No. 11-1448, ECF Doc. No. 39.

18. On May 8, 2012, the Court entered a second Order (the "May 8th Order") further finding that

> to the extent that Section 362(b)(4) does not apply to the [City] Department of Buildings' issuance of Notices of Violation citing violations by the Debtor, there is cause to lift the automatic stay pursuant to Bankruptcy Code Section 362(d)(1) to allow the [City] to pursue its rights under applicable law against the Debtor, other than enforcement of a money judgment

Adv. Pro. No. 11-1448, ECF Doc. No. 49.

### E. Motion Seeking Examination of the City of New York

19. On December 21, 2012, five days after entry of the December 16th Order in the Adversary Proceeding, the Debtor filed a motion (the "2004 Motion") seeking, pursuant to Federal Rule of Bankruptcy Procedure 2004, an order directing the production of documents by the City and examination of various representatives of the City. ECF Doc. No. 72.

20. In the 2004 Motion, the Debtor alleged that the

> City's enforcement actions have been unlawfully selective, are part of a scheme that, contrary to law and conducted under color of governmental authority, wrongfully deprives the Debtor of its rights and property as well as that of those with whom the Debtor does business, and that the City's actions and policies are calculated solely to eliminate Debtor's lawful business.

Id., ¶ 5.

21. The City objected to the 2004 Motion on January 6, 2012 and the Debtor replied to the objection on January 19, 2012. ECF Doc. Nos. 79 and 83. The City supplemented its objection on February 13, 2012, and the Debtor again replied on February 21, 2012. ECF Doc. Nos. 96 and 99. The Debtor supplemented the 2004 Motion on March 27, 2012 and the City again supplemented its objection on April 2, 2012. ECF Doc. Nos. 108 and 110.

22. By Order dated April 9, 2012, the Court denied the 2004 Motion. ECF Doc. No. 112.

**F.  The United States Trustee's Guidelines for Debtors in Possession**

23. On August 30, 2011, the United States Trustee sent the Debtor a letter (the "August 30th Letter") enclosing a copy of the United States Trustee Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees (the "Guidelines"). See Curtin Decl., ¶ 24, Ex. A.

24. Paragraph 18 of the Guidelines provides that

> The United States Trustee must be advised immediately of any significant change in the debtor's business. Significant changes include, but are not limited to, casualty or theft losses, changes in insurance coverage, or allegations of violations of laws, ordinances, or regulations, including but not limited to the failure to pay taxes, which could affect the continued operation of the debtor's business.

See Curtin Decl., Ex. A, ¶ 18.

25. On September 28, 2011, the United States Trustee held an Initial Debtor Interview (the "Initial Debtor Interview"). See Curtin Decl., ¶ 26. The Debtor's principal, Ari Noe ("Noe"), appeared at the Initial Debtor Interview and acknowledged his receipt and understanding of the Guidelines. See Curtin Decl., ¶ 26.

**G.     The Guilty Plea**

26.     On November 7, 2011, just seventy-four days after the Petition Date and forty days after acknowledging receipt of the Guidelines, Noe plead guilty (the "Plea Agreement") to one count of City Criminal Tax Fraud in the Fifth Degree, a class A misdemeanor for violating Section 11-4003 of the New York City Administrative Code.  See Curtin Decl., Ex. B, ¶ 1.

27.     The Plea Agreement

> Pertain[ed] to an investigation into Noe and his business, [OTR], for conduct related to: (1) Noe's failure to file 2004 through 2009 New York State/New York City personal income tax returns and to pay personal income tax for those years; and (2) failure to pay New York City general corporation tax owed by OTR for the tax years 2004 through 2009.

Id.

28.     As part of the Plea Agreement, Noe admitted, under oath or by affirmation, to the facts contained in a written allocution (the "Allocution").  See Curtin Decl., Ex. C.

29.     In the Allocution, Noe admitted that

> I am the principal and sole owner of [OTR], a Manhattan-based company that rents and installs outdoor advertising.  The business operates on a calendar year and thus is required to file a New York City general corporation tax return on or before March 15 of the following year, but for the 2008 tax year I caused OTR to apply for an automatic six-month extension until September 15, 2009.  At the time OTR filed for the extension, it did not make any payments despite stating on the request for extension that the business's tax liability was $90,000 and that $112,000 was due with the extension request.  Notwithstanding the extension, I caused OTR to fail either to file a general corporation tax return for tax year 2008 or to make any payment of the tax liability, even though I was aware that the business had made a substantial profit during 2008.

Id.

30.     As part of the Plea Agreement, Noe agreed to the following sentence:

   a.     a conditional discharge based upon the conditions set forth in [the Plea Agreement] and any conditions imposed by the sentencing court;

   b.     15 days in jail to begin on January 17, 2012 as a condition of and to run

    concurrently with the conditional discharge;

 c. a criminal fine of $10,000 pursuant to New York City Administrative Code §11-4001(c)(2) to be paid on or before December 30, 2011;

 d. community service of 50 hours to be performed within one year of the date of sentence;

 e. the entry of a reparation/restitution order in favor of the New York City Department of Finance in an amount representing the unpaid New York City general corporation tax owed at the time of the sentence;

 f. the entry of a reparation/restitution order in favor of the New York City Department of Taxation and Finance in an amount representing the unpaid New York State and City personal income tax and New York State and New York City withholding tax owed at the time of the sentence; and

 g. any mandatory surcharges imposed pursuant to Penal Law §60.35(1).

See Curtin Decl., Ex. B, ¶ 3.

31. Notwithstanding the Guidelines, the Debtor did not inform the United States Trustee of the Plea Agreement. See Curtin Decl., ¶ 32. The United States Trustee first became aware of the Plea Agreement when it was provided to the United States Trustee's counsel by the City of New York on May 11, 2012. Id.

### H. Unauthorized Professional Compensation

32. The Debtor's December 2011 operating report disclosed that the Debtor paid $5,627.14 in professional fees to Ariel S. Holzer, Esq. ("Holzer") during the month. ECF No. 88.

33. The Court has not authorized any compensation to Holzer. See Curtin Decl., ¶ 34.

### I. Excessive Compensation Paid to Noe

34. The Debtor's operating reports reveal that it has paid approximately $185,000.00 to Noe since the Petition Date. ECF Doc. Nos. 58, 59, 71, 88, 101, 106 and 130.

35.     The monthly payments to Noe, as compared to the cash receipts and cash profit reported by the Debtor[3], are summarized in the chart below:

| Month | Payments to Noe | Cash Receipts | Net Cash Flow |
|---|---|---|---|
| September 2011 | $39,456.32 | $263,700.00 | $969.65 |
| October 2011 | $21,603.77 | $425,771.38 | $74,945.00 |
| November 2011 | $23,198.97 | $326,525.02 | ($20,091.21) |
| December 2011 | $27,505.10 | $322,568.58 | ($53,397.96) |
| January 2012 | $23,036.75 | $411,427.52 | $43,474.32 |
| February 2012 | $25,141.19 | $326,899.32 | $16,690.27 |
| March 2012 | $25,929.74 | $436,297.52 | ($16,105.69) |

Id.

36.     As of March 31, 2012, the Debtor had only $50,692.96 in cash. ECF Doc. No. 112.

### J.     Failure to Timely Pay Quarterly Fees

37.     The Debtor is currently delinquent in the payment of quarterly fees to the United States Trustee in the amount of $6,500.00. See 11 U.S.C. § 1930; Curtin Decl., ¶ 38.

### III.  ARGUMENT

### A.     There is Cause to Convert or Dismiss this Case under 11 U.S.C. § 1112(b).

Section 1112(b) provides, in part, that:

> (1) Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1) (2010).

Section 1112(b)(4) lists provides fifteen examples of cause, including

---

[3]     The numbers for September 2011 include the stub period from the Petition Date to September 1, 2011.

> (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
>
> (B) gross mismanagement of the estate; [and]
>
> ***
>
> (K) failure to pay any fees or charges required under chapter 123 of title 28.

11 U.S.C. § 1112(b)(4).

The list of factors is non exclusive. In re The 1031 Tax Group, LLC, 374 B.R. 78, 93 (Bankr. S.D.N.Y. 2007). See also In re State Street Assoc., L.P., 348 B.R. 627, 639 (Bankr. N.D.N.Y. 2006) (noting in pre-BAPCPA case that amended 1112(b) contains non-exclusive factors to be considered in determining whether cause exists to convert or dismiss a case). A party need not demonstrate that all the elements of "cause" can be met. See In re TCR of Denver, LLC, 338 B.R. 494, 500 (Bankr. D. Colo. 2006). The bankruptcy court has wide discretion to determine if cause exists and how to ultimately adjudicate the case. 1031 Tax Group, 374 B.R. at 93; cf. In re C-TC 9th Ave. P'ship, 113 F.3d 1304, 1311 (2d Cir. 1997) (bankruptcy Court may dismiss Chapter 11 filing on motion or sua sponte upon a finding that the filing was in "bad faith" even without consideration of factors set out in section 1112(b).

**3. There are Continuing Losses to the Estate and No Likelihood of Rehabilitation.**

**a. Continuing Losses to the Estate.**

"To determine whether there is a continuing loss or a diminution of the estate, a court must make a full evaluation of the present condition of the estate, not merely look at a debtor's financial statements." In re AdBrite Corp., 290 B.R. 209, 215 (Bankr.S.D.N.Y. 2003). There need not be significant diminution to satisfy the first prong of section 1112(b)(4)(A). See In re East Coast Airways, Ltd., 146 B.R. 325, 336 (Bankr.E.D.N.Y. 1992); In re Kanterman, 88 B.R. 26, 29 (S.D.N.Y. 1988). An estate's liability for administrative expenses constitutes a diminution

in assets. In re Lyons Transportation Lines, Inc., 123 B.R. 526, 531 (Bankr.W.D.Pa. 1991). Further, a debtor's negative post-petition cash flow and inability to pay current expenses establishes that a debtor has continuing losses. AdBrite, 290 B.R. at 215. "[R]ehabilitation means to put back in good condition and reestablish on a sound basis." Id., at 216, see also In re Rundlett; 136 B.R. 376, 380 (Bankr.S.D.N.Y. 1992) ("[r]ehabilitation signifies that the debtor will be reestablished on a sound financial basis, which implies establishing a cash flow from which current obligations can be met").

There are continuing losses to the estate in this case. The Debtor has been in chapter 11 for nearly eight months and has only $50,692.96 in cash, a startlingly low total for a business that has average monthly revenue of nearly $400,000.00. See ECF Doc. No. 130, In re Loop Corp., 379 F.3d 511, 515-16 (8th Cir. 2004) ("negative cash flow situation alone is sufficient to establish 'continuing loss to or diminution of the estate'" under 11 U.S.C. §1112(b)). No visible post-petition steps have been taken to sell or refinance any of the Debtor's assets or bring in any exit financing. Moreover, as this case remains in Chapter 11, the administrative costs, particularly legal fees dedicated almost entirely to the Debtor's seemingly quixotic litigation against the City, continue to accrue at an alarming rate, with little or no potential benefit to creditors, which contributes to the continuing losses to the estate to the detriment of creditors. See In re Lyons Transportation Lines, Inc., 123 B.R. 526, 531 (Bankr.W.D.Pa. 1991) (an estate's liability for administrative expenses constitutes a diminution in assets).

### b. No Likelihood of Rehabilitation.

As a threshold matter, any plan of reorganization the Debtor proposes must be feasible. 11 U.S.C. § 1129(a)(11). The feasability requirements of Section 1129(a)(11) ensure that confirmation proceeds only if "[c]onfirmation of the plan is not likely to be followed by the

liquidation, or the need for further financial reorganization, of the debtor . . . unless such liquidation or reorganization is proposed in the plan." Id. In the Second Circuit, the standard for feasibility is "whether the plan offers a reasonable assurance of success. Success need not be guaranteed." Kane v. Johns-Manville (In re Johns-Manville Corporation), 843 F.2d 636, 649 (2d Cir. 1988). Bankruptcy courts consider factors including "the earning power of the business, its capital structure, the economic conditions of the business, the continuation of present management, and the efficiency of management in control of the business after confirmation" when assessing whether a plan is feasible. In re D&G Invs. of West Fla., Inc., 342 B.R. 882, 886 (Bankr. M.D. Fla. 2006). In determining if a plan is feasible, the "inquiry is peculiarly fact intensive and requires a case by case analysis, using as a backdrop the relatively low parameters articulated in the statute." In re Eddington Thread Mfg. Co., 181 B.R. 826, 833 (Bankr. E.D. Pa. 1995). "In most situations, the time immediately following bankruptcy will call for fairly specific proof of the company's ability to meet its obligations . . .". Dish Network Corp. v. DBSD N. Am. Inc. (In re DBSD N. Am. Inc.), 634 F.3d 79, 107 (2d Cir. 2011).

Here, nearly eight months after the Petition Date, the Debtor has no funds or income available to fund a plan of reorganization and is barely breaking even from month to month. ECF Doc. Nos. 58, 59, 71, 88, 101, 106 and 130. In addition, the Debtor has not taken any visible steps towards the proposal of a plan, and has instead dedicated its energy to its litigation with the City. The Debtor has had eight months in chapter 11 and if it could propose a feasible plan, it would or should have already. Accordingly, the Debtor does not appear to be able to confirm, or even propose, a feasible plan and there is no likelihood of rehabilitation. 11 U.S.C. § 1112(b)(4)(A).

### 2. The Debtor Has Grossly Mismanaged its Estate.

The Debtor's gross mismanagement of its estate constitutes further grounds for conversion or dismissal. 11 U.S.C. § 1112(b)(4)(B); see In re Gateway Access Solutions, Inc., 374 B.R. at 564 (failure to maintain effective corporate management team constituted gross mismanagement and is cause to dismiss chapter 11 case); In re Products International Company, 395 B.R. 101, 111 (Bankr. D. Arizona 2008) (gross mismanagement is cause for conversion or dismissal under 11 U.S.C. § 1112(b)(4)(B)); In re Tucker, 411 B.R. 530, 533 (Bankr. S.D. Georgia 2009) (standing alone, gross mismanagement is sufficient cause for conversion or dismissal under 11 U.S.C. § 1112(b)(4)(B)). As a debtor-in-possession of its estate, the Debtor owes a fiduciary duty to its creditors and is obligated to follow the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. In re Wallace, 2010 WL 378351 at *4 (Bankr. D. Idaho, January 26, 2010); see e.g. 11 U.S.C. §§ 1106 and 1107 and Fed R. Bankr. P. 2015 (delineating the duties of chapter 11 debtors in possession).

The Debtor has egregiously violated the Guidelines by failing to disclose the post-petition Guilty Plea, thereby grossly mismanaging its estate. See Curtin Decl., ¶¶ 27-32, Ex. C and D; see, e.g. In re Snydor, 431 B.R. 584, 597 (Bankr. D. Md. 2010) (finding gross mismanagement based upon debtor in possession's failure to disclose the true state of affairs of the debtor). It is difficult to imagine a plausible justification for the Debtor's failure to report the post-petition conviction and incarceration it's principal for offenses relating to the pre-petition finances of the Debtor. This is, without question, a "significant change in the debtor's business," and is even cited as an example of such in the Guidelines. See Curtin Decl., Ex. A, ¶ 18. The Guilty Plea, and the subsequent concealment thereof, call into question Noe's ability to act a fiduciary. See In re V. Savino Oil & Heating Co., 99 B.R. 518, 526 (Bankr. E.D.N.Y. 1989)

("The willingness of Congress to leave a debtor in possession of its assets is premised on the expectation that current management can be depended upon to carry out the fiduciary responsibilities of a trustee.")

In addition, the Debtor grossly mismanaged its estate by paying professionals without Court authority. The Debtor's December 2011 operating report disclosed that the Debtor paid $5,627.14 in professional fees to Holzer during the month. ECF No. 88. The Court has not authorized any compensation to Holzer. See Curtin Decl., ¶ 34; In re Wallace, 2010 WL 378351 at *5 (payment of professionals without Court approval constitutes gross mismanagement).

Finally, Noe has excessively compensated himself throughout this case at the expense of creditors and the estate. The Debtor's operating reports reveal that it has paid approximately $185,000.00 to Noe since the Petition Date. ECF Doc. Nos. 58, 59, 71, 88, 101, 106 and 130. This compensation must be viewed against the backdrop of a Debtor that averages revenues of over $400,000.00 per month, has posted losses or modest profits in every month since the Petition Date and, creitically, has only $50,692.96 in cash. Id. Accordingly, under the facts of this case the Debtor's compensation of Noe at such a high level constitutes gross mismanagement. Cause, therefore, exists under Section 1112(b)(4)(B).

### 3. The Debtor Has Failed to Pay Quarterly Fees.

By statute, the Debtor is required to pay a quarterly fee to the United States Trustee for each quarter until entry of a final decree, conversion or dismissal. 28 U.S.C. § 1930(a)(6). United States Trustee quarterly fees must be paid when due. Id. The Debtor is currently delinquent in the payment of quarterly fees to the United States Trustee in the amount of $6,500.00. See 11 U.S.C. § 1930; Curtin Decl., ¶ 38. Section 1112(b)(4)(K) provides that nonpayment of any fees charged under chapter 123 of title 28 is cause to convert or dismiss a

chapter 11 case. The fees assessed pursuant to 28 U.S.C. § 1930(a)(6) fall within the category of fees levied under chapter 123 of title 28. In re Tornheim, 181 B.R. 161 (Bankr. S.D.N.Y. 1995). The Debtor's failure to meet its financial obligations by the payment of quarterly fees is a basis for the dismissal of this case, pursuant to 11 U.S.C. § 1112(b). See Tornheim, 181 B.R. at 161 (failure to pay quarterly fees, without more, provides cause to dismiss or convert case); see also In re Hi-Toc Development Corp., 159 B.R. 691 (S.D.N.Y. 1993). Cause, therefore, exists to convert this case under Section 1112(b)(4)(K).

**B.      There are No Unusual Circumstances Establishing that Conversion or Dismissal is not in the Best Interests of Creditors and the Estate.**

Under Section 1112(b)(2), after the movant shows cause, the burden shifts to the debtor and other parties in interest to show that there are "unusual circumstances establishing that conversion or dismissal is not in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(2). See also In re Gateway Access Solutions, Inc., 374 B.R. 556, 561 (Bankr. M. D. Pa. 2007) (after the movant shows cause, the burden shifts to the debtor to prove that there are unusual circumstances under Section 1112(b)(2)).

> Section 1112(b)(2) provides that:
>
> (2) The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that --
>
> (A) there is a reasonable likelihood that a plan will be confirmed within the time frames established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
>
> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)--
>
>> (I) for which there exists a reasonable justification for the act or omission; and

- 16 -

(ii) that will be cured within a reasonable period of time fixed by the court. 11 U.S.C. § 1112(b)(2).

There are no unusual circumstances in this case that would establish that conversion or dismissal is not in the best interests of the creditors and the estate. There is no likelihood of plan confirmation within a reasonable time and no reasonable justification for the Debtor's breach of its fiduciary duties as a debtor in possession.

**C.  Conversion is in the Best Interests of Creditors and the Estate**.

Under 11 U.S.C. § 1112(b), the Court, in its discretion, must determine whether dismissal or conversion is in "the best interest of creditors." 11 U.S.C. § 1112(b). See also In re Gonic Realty Trust, 909 F.2d 624, 626-676 (1st Cir.1990) (the Bankruptcy Court has broad discretion to convert or dismiss a chapter 11 case). In a case where there are, or may be, assets sufficient to pay creditors some percentage of their claims but the debtor-in-possession has failed to perform as required in the case, conversion to chapter 7 is in the best interests of creditors. In re Cloisters of Brevard, Inc., 117 B.R. 722, 723 (Bankr. M.D. Fla. 1990). Conversion provides an avenue by which an independent trustee can examine the Debtor's books and records, liquidate any assets that exist, and make distributions to creditors. This chapter 11 case should be converted, rather than dismissed, as it cannot be fully determined whether assets exist that can be liquidated for the benefit of unsecured creditors. A trustee will be able to investigate suspect transfers and initiate any required litigation and to the extent necessary, seek Court approval to operate the Debtor's business under 11 U.S.C. § 721 pending liquidation of assets. The Court should, therefore, convert the Debtor's case chapter 7.

## IV. NOTICE

The United States Trustee will serve the Notice of Motion and this Memorandum of Law upon the Debtor, Debtor's counsel and any parties who have filed Notices of Appearance in the case. Notice of the Motion will be sent to all creditors through the Bankruptcy Noticing Center. The United States Trustee respectfully requests that this be deemed good and sufficient notice of the motion and the hearing scheduled herein, and that no other further notice is necessary or required.

## V. CONCLUSION

Based on the foregoing, the United States Trustee respectfully requests that the Court enter an order granting the Motion and converting this chapter 11 case to chapter 7 or, in the alternative, dismissing the case, and granting such other and further relief as is just and proper.

Dated: Brooklyn, New York
      May 18, 2012

Respectfully submitted,

TRACY HOPE DAVIS
UNITED STATES TRUSTEE
FOR REGION 2

By: */s/ William E. Curtin*
William E. Curtin (WC-1974)
Trial Attorney
271 Cadman Plaza East
Room 4529
Brooklyn, New York 11201
Tel. No. (718) 422-4960
Fax. No. (718) 422-4990