MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
*Attorney for Creditor the City of New York*
Attn: Brian T. Horan, Esq.
100 Church Street
New York, NY 10007
212.788.1267
bhoran@law.nyc.gov

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x
In re:                                            :     Chapter 11
                                                  :
OTR MEDIA GROUP INC.,                             :     Case No. 1-11-47385 (ESS)
                                                  :
                    Debtor.                     :
                                                  :
------------------------------------------------------------------- x

**STATEMENT OF THE CITY OF NEW YORK IN SUPPORT OF
THE U.S. TRUSTEE'S MOTION TO CONVERT OR DISMISS
<u>AND IN REPLY TO THE DEBTOR'S RESPONSE</u>**

TO THE HONORABLE ELIZABETH S. STONG,
UNITED STATES BANKRUPTCY JUDGE:

        The City of New York (the "<u>City</u>"), by its counsel, MICHAEL A. CARDOZO, Corporation Counsel of the City of New York, hereby submits this statement in support of the motion (the "<u>Conversion Motion</u>") by the United States Trustee, dated May 18, 2012, for conversion of the Chapter 11 case of the debtor, OTR Media Group, Inc. ("<u>OTR</u>" or the "<u>Debtor</u>"), to a case under Chapter 7, or for dismissal of the case.

## INTRODUCTION

        1.    In opposing the Conversion Motion, the Debtor on June 22, 2012 filed its proposed Plan and accompanying Disclosure Statement, which reveal that the Debtor's entire business is premised on the same sign locations that the Debtor claimed control of when it filed

its Petition. The Debtor knows that 14 of its sign locations – three-quarters of its portfolio – are illegal because of final court or ECB orders, because DOB advised OTR of registration deficiencies and OTR took no further action, or because OTR was otherwise notified of DOB's final position that the sign location was not lawful. Notwithstanding its knowledge of the illegality of these sign locations, OTR continues to operate signs there.

2. OTR is using the protections of the Bankruptcy Code to run a blatantly illegal business. Recent inspections by DOB reveal that *not one* of the signs OTR is currently operating is legal. For this reason alone, the U.S. Trustee's motion should be granted. Conversion to Chapter 7 with the appointment of a trustee is further warranted for the reasons set forth in the U.S. Trustee's motion, to end meritless litigation and bring the business to a close in a lawful matter, and to recover pre- and post-petition transfers that were improper.

## STATEMENT IN SUPPORT

### A. The Debtor Is Operating Illegal Signs and There Is No Reasonable Likelihood of Rehabilitation

3. After multiple requests, the Debtor advised the Court of the 18 signs that it operated. Affirmation of Ariel S. Holzer, Sept. 27, 2011, Ex. A. With bluster and bravado, it trumpeted the lawfulness of these locations. These representations were not true then, and now they are indisputably false. After adjudications and administrative rejections due to OTR's patently inadequate documentation, the Debtor controls only three lawful sign locations.[1]

4. The reality of the Debtor's business is even starker than that: *the Debtor is not currently operating even a single legal sign*. This fact was revealed by the recent inspections conducted by DOB, described – along with other details of the Debtor's portfolio of 19 sign

---

[1] As described below, ¶ 15, at none of these three locations is the Debtor actually operating a lawful sign.

2

locations[2] – in the attached Declaration of Edward Fortier, Jr. dated June 27, 2012 ("Fortier Decl."). At four of the locations – three of which are not permitted and therefore not amenable to lawful operation – there was no sign up as of the inspection. At the other locations, DOB inspectors found violations for which DOB intends shortly to issue NOVs to OTR and, in nearly all cases, its landlords. Fortier Decl. ¶ 4.

5. To date, DOB's determinations of non-compliance by OTR have been upheld at ECB. Following the Court's rejection of the Debtor's flat-out wrong position that the automatic stay prevented adjudication of the lawfulness of the Debtor's signs, every adjudication that has occurred during the pendency of this bankruptcy has determined that the sign in question was not lawful. These ECB adjudications have resulted in an additional $150,000 in penalties imposed directly against OTR and an additional $180,000 in penalties imposed against its landlords. Fortier Decl. ¶ 5.

6. OTR has fared no better in State court. A unanimous panel of the First Department upheld the determination of the Department of Buildings and an administrative law judge that the sign at 838 Sixth Avenue in Manhattan was illegal. *Matter of Matter of Yung Bros. Real Estate Co., Inc. v. Limandri*, 92 A.D.3d 508 (1st Dep't 2012). OTR's motion for leave to appeal this unanimous decision to the New York Court of Appeals was, unsurprisingly, denied. 2012 NY Slip Op 72424, 2012 N.Y. LEXIS 979 (May 8, 2012).

7. Notwithstanding this final decision from New York's highest court, the Debtor is operating a sign at this location. Fortier Decl. ¶ 4.

8. As one of OTR's many lawyers said, two other OTR locations, 59 Fourth Avenue and 13 Carmine Street in Manhattan, "share similar facts and circumstances as 838 Sixth

---

[2] Since the beginning of the bankruptcy, OTR has represented that it operates 18 sign locations. According to OTR's latest filing, it also has a sign at 209 Dyckman Street in Manhattan. *See* Disclosure Statement at 20 n.6. Indeed, OTR has set up a separate LLC for this location. *Id.* at 7 n.1.

3

Avenue." Affirmation of Ariel S. Holzer, Nov. 21, 2011, ¶ 36. They are no more lawful than 838 Sixth Avenue.

9. Notwithstanding the rejection of the argument advanced by OTR for the legality of these sign locations, the Debtor is operating a sign at 13 Carmine Street. Fortier Decl. ¶ 4.

10. OTR has not only failed at administrative hearings and in State court, it has also failed on multiple grounds to establish the lawfulness of its signs in the basic administrative activity of registering the signs with the Department of Buildings ("DOB") as required by Rule 49, 1 Rules of the City of New York Chapter 49. In February 2012, OTR applied to register "arterial" signs at five locations: 330 Bruckner Boulevard (Bronx), 84 Withers Street (Brooklyn), 261 Walton Street (Bronx), 25 Skillman Avenue (Brooklyn), and 945 Zerega Avenue (Bronx). DOB issued a Notice of Sign Registration Deficiency for each location on March 13, 2012. Each notice advised OTR that the application was deficient because the lawfulness of the sign had not been established and the Letter of Credit required by Rule 49-14 had not been submitted. An Amended Notice of Sign Registration Deficiency was issued for each sign on March 30, 2012, providing OTR with an additional 45 days to cure the deficiencies. Fortier Decl. ¶ 7 & Ex. 2.

11. Notwithstanding the two notices of deficiency and the extra time – nor OTR's representations to this Court that it was, "with expediency," taking the steps necessary to bring these locations into compliance, *see, e.g.*, Debtor's Reply in Connection with Rule 2004 Application, Feb. 21, 2012 – OTR never complied with Rule 49's requirements. Therefore, on June 13, 2012, DOB issued letters to OTR stating that each sign was rejected from registration. Fortier Decl. ¶ 8 & Ex. 3.

4

12. Furthermore, notwithstanding OTR's abandoning its efforts to register signs at these locations, the Debtor is operating signs at all five of these locations. Fortier Decl. ¶ 8.

13. For two additional locations, 2437 Grand Concourse and 101-111 East 161st Street in the Bronx, OTR's purported filing was even more incomplete. In these cases, the required filing fee was not paid, with OTR improperly submitting documents in connection with these locations along with documents relating to the five arterial signs discussed above. DOB notified OTR of this and other deficiencies by letter dated May 14, 2012. As with the five other arterial signs, DOB received no follow up filing from OTR in connection with these two locations. Fortier Decl. ¶ 9 & Ex. 4.

14. Moreover, notwithstanding OTR's failure even to properly apply for registration at these locations, the Debtor is operating a sign at both of these locations. Fortier Decl. ¶ 9.

15. The upshot is that of OTR's 19 sign locations, OTR is permitted to use only three. OTR is not operating a sign at one of these locations, 174 Canal Street in Manhattan. At the other two – 424 West 33rd Street in Manhattan and 860 Atlantic Avenue in Brooklyn – OTR is in violation of its permits through the operation of oversized signs. The full measure of the brazenness with which OTR conducts its illegal business is demonstrated at 424 West 33rd Street in Manhattan, where OTR is once again operating an oversize sign after DOB had issued a previous violation that was upheld at ECB. Fortier Decl. ¶ 12.

16. Nor can OTR claim to be unaware of the extent to which its business is illegal. By final determinations or orders in administrative and judicial proceedings to which OTR was a party, fully 11 of the 15 signs OTR is currently operating have been found to be illegal *during the bankruptcy*. *See* Fortier Decl. ¶¶ 6-10 & Ex. 1.

17. OTR's current illegal conduct is no different than its pre-petition "business." At least 189 separate penalties were imposed against OTR, and additional notices of violation are still pending. Penalties imposed equal $1.84 million dollars, plus interest accrued prior to the filing of the petition in the amount of $126,000. Fortier Decl. ¶ 13 & Ex. 6.

18. In addition to the penalties imposed against OTR, there have been 168 separate penalties imposed against landlords who leased sign locations to OTR – other than those with whom the City has reached settlements – with dozens of additional violations still pending. Outstanding penalties imposed against landlords equal over $1.85 million, plus interest in the amount of over $128,000, for a total of $1.98 million. Fortier Decl. ¶ 14 & Ex. 7.

19. This conduct points overwhelmingly to the conclusion that there is no reasonable likelihood of rehabilitation. OTR has been and continues to be in the business of operating unlawful sign locations. The Disclosure Statement lists, at 7-8, exactly the same sign locations OTR had at the start of the bankruptcy.[3] This means that it has acquired no new, lawful signs, nor written off any signs that are unlawful by virtue of final decisions. Only three lawful signs remain in its business portfolio and even there it is operating only illegal signs. OTR's plan for a successful, lawful business is belied by everything it has done pre- and post-petition.

**B.   The Debtor's Financial Condition Is Far Worse Than Described by the Debtor**

20. OTR leaves out of its consideration the ECB adjudications that have resulted, during the bankruptcy, in the imposition of an additional $150,000 in penalties directly

---

[3] The list in the Disclosure Statement omits 209 Dyckman Street in Manhattan.

against OTR and $180,000 in penalties against its landlords, which OTR claims it has an absolute obligation to indemnify.[4]

21. Penalties that are now virtually certain to be imposed for its current operations put OTR's business deeply in the red. If the violations that DOB issues based on its latest inspections are sustained at the ECB, OTR will face penalties of $680,000, and its landlords $795,000. Fortier Decl. ¶ 5. Such penalties will continue to mount as long as OTR operates these illegal signs. Because OTR's claimed business model is to indemnify its landlords, OTR's liability for this set of violations will total almost $1.5 million – for one round of inspections alone.

22. On top of this, OTR continues to fail to disclose to the Court its full tax obligation to the City. Mr. Noe did not "immediately pay the Debtor's tax bill," Kushner Aff. ¶ 41, nor did the plea agreement "guarantee[] the Debtor's operations would not be affected," Noe Dec. ¶ 14. Rather, the plea agreement expressly carved out accrued interest and accessible penalties in connection with the taxes OTR fraudulently avoided. Curtin Dec. Ex. B, at 2 n.2. The Debtor owes $460,280 in penalties and interest on its City tax obligations calculated through December 31, 2011.[5]

---

[4] Although the proposed Plan is not before the Court, it is, by the Debtor's own description of the outdoor sign industry, completely unworkable. Nothing in the Plan changes – or can change – the City's claims against the landlord indemnitees. The City is and will continue pursuing those claims in their full amount. Because the Plan provides only cents on the dollar to unsecured creditors including the landlord indemnitees, they will end up out of pocket by virtue of the Debtor's unlawful signs. As the Debtor has repeatedly emphasized, no landlord will do business with a sign company that does not fully indemnify its landlords. Even worse, with Notices of Violation issued post-petition, this landlords have even more to lose.

[5] The City's proof of claim includes ECB penalties and unpaid taxes. The Law Department did not become aware of Mr. Noe's conviction, or the issue of outstanding penalties and interest, until after the Bar Date. The same is true of certain of the ECB penalties listed in Exhibit 6 to the accompanying Fortier Declaration. If this bankruptcy is not dismissed on the instant motion, the City intends to pursue its claim, which will include these additional amounts.

## C.    OTR's Plan Is Barred by 11 U.S.C. § 1129(a)(3)

23. Even if the Debtor's financial condition were stable, as the Debtor claims, its Plan could not be confirmed. Chapter 11 bars confirmation of a plan unless it has been "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). The plan "must comply with all applicable law, not merely bankruptcy law," and this includes state law. *In re Jandous Electric Construction Corp.*, 115 B.R. 46, 51 (Bankr. S.D.N.Y. 1990) (citing *In re Koelbl*, 751 F.2d 137, 139 (2d Cir. 1984)). Moreover, a plan that would undermine "the public policy considerations in § 1129(a)(3)" cannot be confirmed. *See Argo Fund Ltd. v. Board of Directors of Telecom Argentina, S.A.*, 528 F.3d 162, 174 (2d Cir. 2008).

24. OTR's Plan calls for the continued operation of the very signs found to be illegal by DOB, ECB, and State courts. Indeed, there is not one lawful sign in the entire portfolio that the Debtor is currently operating. *See* Fortier Decl. ¶ 4. Because these activities violate the City's Building Code and Zoning Resolution, the Plan cannot be confirmed under § 1129(a)(3), which does not permit confirmation where the Debtor – having availed itself of the protections afforded by the Bankruptcy Court so as to avoid enforcement by the City temporarily – would emerge from bankruptcy only to continue its unlawful operations.

25. Moreover, where it is proposing to pay its creditors with revenues derived solely from the operation or sale of unlawful sign locations, OTR has no "basis for expecting that a reorganization can be effected." *See In re Koelbl*, 751 F.2d at 139. Thus, its illegal conduct precludes confirmation of its Chapter 11 Plan. Like the debtor in *In re Malkus, Inc.*, 2004 Bankr. LEXIS 2120, 9-10 (Bankr. M.D. Fla. Nov. 15, 2004), who "operated a lounge in violation of state law" and failed to comply with bankruptcy orders and rules, OTR's violations bar the proposed Plan's confirmation.

**D. Unless the Proceeding Is Converted and a Trustee Appointed, the Debtor Will Continue to Waste the Estate's Assets Through Litigation**

26. The Disclosure Statement, at 17, reveals that "OTR has expended over $1,500,000 since 2005 fighting the City's new zoning regime, exclusive of costs incurred during the administration of the chapter 11 case." The Disclosure Statement, at 33-34, states that as of the Petition date, OTR owed $188,334.75 to four firms, all of which handled regulatory matters. (It is not clear if this is a component of the $1.5 million.) Plus, the Debtor has made almost $200,000 in payments to lawyers during the bankruptcy. Declaration of Ari Noe, June 22, 2012, Ex. A, Profit & Loss Statement, at 2.

27. An additional $116,704.69 is sought on the current, contested application for attorney's fees. *See* United States Trustee's Objection to the Applications for Compensation of Various Professionals Pursuant to Order Authorizing Employment of Professionals Utilized in the Ordinary Course of Business, June 5, 2012.

28. Finally, more of the estate's assets are being spent on attorney's fees to its bankruptcy counsel.

29. The City doubly objects to the enormity of the attorney's fees spent and to be spent. First, each dollar spent on attorney's fees diminishes the Debtor's estate. Second, the overwhelming portion of those attorney's fees is directed at opposing the City's regulatory enforcement efforts.

30. Of course, normally, the City could not object to parties' securing their rights. But no such thing is happening here. The Debtor has lost, on the merits, all of the litigation brought against the City, and almost all of the challenges before the ECB and the Board of Standards and Appeals. But the opposition has slowed down the administrative process, given rise to stays, and allowed the Debtor to profit from illegal signs. This is the Debtor's business

9

model, and it should not be allowed to continue. Last but not least, all of the litigation and administrative proceedings diverts the City's scarce resources from other code enforcement activities.

31. The bankruptcy, unfortunately, has repeated the pattern of the Debtor's conduct pre-petition. The Debtor took the position that the automatic stay applied to the regulatory proceedings. Although this position was baseless, it delayed the City's enforcement. The Debtor also maintained the position – over the course of four rounds of briefing and multiple oral arguments – that it was entitled to a Rule 2004 examination of the City in support of its legally insufficient and factually absurd assertions that the City's enforcement of the sign laws is unconstitutional.

32. The City will not respond to the repeated, vituperative, and opprobrious statements hurled at it yet again in the Debtor's papers. The imagined conspiracy that the Debtor accuses the City of engaging in changes over time. What remains the same is that the Debtor's allegations lack evidence to support them, and as the Court has repeatedly found, do not add up to a viable claim against the City.

33. Despite their frivolity, the conspiracy allegations figure centrally in the Debtor's reorganization. *See* Disclosure Statement at 8-18. This shows as clearly as can be that the Debtor under its current management and counsel fully intends to continue its legal war against the City, with countless battles it will again lose but which will, to the Debtor's improper advantage, slow down enforcement and allow unlawful profits to be made in the interim. No more compelling reason exists for the appointment of a trustee as soon as possible who will comport with State law.

### E. The Conversion to Chapter 7 and the Appointment of a Trustee Can Promote the Recovery of Misspent Estate Funds

34. A trustee will have another important role: recovering improper transfers made by the Debtor both pre- and post-petition. These include distributions to the principal, Mr. Noe. The operating reports show that the vast majority of the funds that Mr. Noe has received are distributions, not salary. For example, according to the most recent Operating Report, for May 2012, Mr. Noe received paychecks from the Debtor totaling $9,083.10, and other distributions of $22,468.77, more than twice that amount. If the payments were remuneration for Mr. Noe's services to OTR, they should have been paid as part of payroll and subject to withholding. *See Darrell Harris, Inc. v. United States*, 770 F. Supp. 1492, 1497 (W.D. Okla. 1991) (officers are exempted from employee tax status only if they "perform no services or perform only minor services and … are not entitled to receive any direct or indirect remuneration").

35. Adding $31,551.87 in payments in May to the $185,000 in payments tallied by the U.S. Trustee, *see* Br. in Support of Motion to Convert or Dismiss, at 15 [ECF #154], Mr. Noe has received more than $216,000 in the ten months of this bankruptcy. The City agrees with the U.S. Trustee that this is excessive and furthermore, that the more than two-thirds of this total that was not wages constituted improper payments.

36. The Profit & Loss Statement also shows that the Debtor paid out $54,999.96 in "Charity Contributions." Such payments are "not authorized under [the Bankruptcy Code] or by the court." 11 U.S.C. § 549(a)(2)(B).

37. Other amounts at least raise a question. For example, the Debtor spent over $9,000 on meals and entertainment, of which $1,215.84 is categorized as "Spa."

38. A trustee could best determine the appropriateness of these expenditures and take the appropriate corrective steps.

39. Likewise, a trustee would ensure that the Debtor is managed properly and in compliance with its fiduciary obligation to its creditors.

**CONCLUSION**

40. The Debtor's unlawful conduct – past, present, and under the Plan, future – fully warrants conversion of this Chapter 11 case to Chapter 7. That conversion, rather than dismissal, is in the best interests of creditors.

41. Indeed, the conversion should take place without undue delay, which will cause irreparable injury to parties herein and non-parties alike. The estate will be reduced by the amount of ECB penalties imposed against OTR post-petition – expected to be $680,000 based on the latest round of inspections alone, *see* Fortier Decl. ¶ 5 – thereby harming all creditors. Worse, OTR's landlords will continue to be subject to penalties that the Debtor's estate will never be able to fully indemnify. And of course, illegal signs will continue to be displayed.

42. Accordingly, the City respectfully requests that the Court grant the motion of the U.S. Trustee and enter an order converting the case to Chapter 7, and granting to the City such other and further relief as the Court determines to be just.

Dated: New York, New York
     June 27, 2012

        MICHAEL A. CARDOZO
        Corporation Counsel of the City of New York
        *Attorney for Creditor the City of New York*

        By:   /s/ Brian T. Horan
              Brian T. Horan, Esq.
              Assistant Corporation Counsel
              100 Church Street
              New York, New York 10007
              212.788.1267
              bhoran@law.nyc.gov

On the brief:
     Alan H. Kleinman