Gary M. Kushner
Ronald D. Coleman
Scott D. Simon
GOETZ FITZPATRICK LLP
One Penn Plaza, 44th Floor
New York, New York 10119
Tel: (212) 695-8100
gkushner@goetzfitz.com
rcoleman@goetzfitz.com
ssimon@goetzfitz.com
*Attorneys for Debtor*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:                                                                    Chapter 11

OTR MEDIA GROUP INC.,                                 Case No. 1-11-47385 (ESS)

                                  Debtor.
-----------------------------------------------------------X

**FIRST INTERIM APPLICATION OF NOVACK BURNBAUM CRYSTAL LLP AS DEBTOR'S SPECIAL COUNSEL FOR ALLOWANCE OF COMPENSATON FOR PROFESSIONAL SERVICES RENDERED AND FOR REIMBURSEMENT OF <u>ACTUAL AND NECESSARY EXPENSES INCURRED</u>**

TO THE HONORABLE ELIZABETH S. STONG,
UNITED STATES BANKRUPTCY JUDGE:

      OTR Media Group Inc., debtor and debtor-in-possession (the "Debtor"), by and through its counsel Goetz Fitzpatrick LLP, hereby submits the first application on behalf of Novack Burnbaum Crystal LLP (sometimes referred to herein as "NBC"), as the Debtor's special counsel (the "Application"), pursuant to §§330(a) of title 11, United States Code (the "Bankruptcy Code") and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for allowance of interim compensation for professional services performed and for reimbursement of expenses made on behalf of the Debtor for the period between August 25,

2011 (the "Filing Date") and June 30, 2012 (the "First Interim Period"). In support of the Application, the Debtor respectfully represents as follows:

## I.    RELIEF REQUESTED

1. By this Application, the Debtor seeks entry of an order awarding (i) interim compensation to NBC, as special counsel for the Debtor, in the sum of $68,220.92 for fees for professional services rendered during the First Interim Period, and (ii) for reimbursement of disbursements made on behalf of the Debtor for the same period in the sum of $138.36 for a total award of $68,359.28.

### a)    No Prior Application

2. No prior application for compensation has been filed with this Court on behalf of NBC.

3. NBC did not receive any pre-petition or post-petition retainer or payments from or on behalf of the Debtor.

## II.    JURISDICTION AND VENUE

4. This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334.  This is a "core" proceeding pursuant to 28 U.S.C. §159(b).  Venue of these proceedings and over this Application are proper in this district pursuant to 28 U.S.C. §§1408 and 1409.

5. The professional services for which allowances are sought by NBC in this application were rendered on behalf of the Debtor.

6. NBC maintains records of the time it has expended for professional services on behalf of a client, as well as records for expenses that were paid on behalf of a client.

7. NBC's time records were made concurrently with the rendition of the professional service rendered for the benefit of the Debtor. Each time entry made by NBC is reflected on Exhibit "A" annexed hereto.

### III. PROCEDURAL HISTORY

8. NBC initially applied for retention as part of the Debtor's application to retain ordinary course professionals on November 15, 2011 [See ECF No. 51, the "OCP Application"].

9. The OCP Application was opposed, then adjourned to permit the parties-in-interest to reach agreement on the terms and scope of OCP retention.

10. NBC, which was at the time representing the Debtor in an appeal before the Appellate Division, needed assurance that it would be authorized to continue such representation at the appeal hearing scheduled for December 2011.

11. Accordingly, Debtor's counsel consulted with the Office of the United States Trustee. The decision was made to withdraw NBC from the OCP Application and submit a separate retention application on behalf of NBC alone.

12. The application to employ NBC was filed on December 2, 2011 [ECF No. 62] and granted on December 6, 2011 [ECF No. 65], though NBC has not requested compensation during these proceedings.

13. NBC now seeks the Court's approval of its compensation for the post-petition period, as well as authorization to submit future compensation requests pursuant to the Court's April 24, 2012 Order Authorizing the Debtor to Employ Professionals used in the ordinary course of business [ECF No. 128].

## IV. DEBTOR'S SPECIAL COUNSEL

14. NBC is a full-service law firm that is focused on transactional matters and complicated court cases for businesses and individuals in diverse areas of the law, including regulatory law, complex corporate transactions, commercial law, and real property law. The attorneys of the firm have significant litigation and transactional expertise and have handled many regulatory proceedings and asset sales.

15. The professional services that NBC was intended to perform on behalf of the Debtor include negotiating the sale of Debtor's assets with numerous suitors, and the litigation of matters of regulatory law including (i) a certain appeal relating to the Debtor's sign at 838 Sixth Avenue, New York City, which matter was on appeal before the Appellate Division, First Department; (ii) litigation involving the Debtor's sign at 59 4th Avenue, New York City; (iii) litigation involving the Debtor's former landlord known as Ladder 3 Corp; (iii) litigation involving Signs; (iv) and involvement with general regulatory matters involving the Debtor's sign locations including signs with Covenant House and at Walter Avenue, Bronx, New York.

## IV. FACTUAL BACKGROUND

16. On August 25, 2011, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is operating its business and managing its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

17. No trustee, examiner or committee of creditors has been appointed in this case.

18. The Debtor is a full service outdoor advertising company as defined by the New York City Administrative Code, now in its second decade of operation. The Debtor provides bulletins, wallscapes and spectaculars in prime real estate locations covering the New York City

market. The Debtor also provides media sales and billboard maintenance services to its advertising clientele.

19. The Debtor's chapter 11 filing was precipitated by, among other things, fines and legal expenses in connection with New York City's promulgation and enforcement of zoning regulations that effectively banned the Debtor from maintaining certain signs (the "Sign Laws"). The fines, legal expenses, and loss of revenue has severely interfered with the Debtor's relationship with landlords of various buildings which are used to place outdoor signs. The City's enforcement scheme has restricted the Debtor's available advertising sources and created substantial cash flow issues since the City served restraining notices on the Debtor's clients.

20. The chapter 11 filing was elected to obtain the benefits of the automatic stay and a breathing spell from the City's selective effort to put the Debtor out of business and to preserve the Debtor's relationships and assets for the benefit of its landlords, vendors, clients and other creditors.

## V. SIGNIFICANT SERVICES PERFORMED BY NBC DURING THE FIRST INTERIM PERIOD

21. The following is a summary description of the significant services performed by NBC during the First Interim Period. All of the professional services provided by NBC on behalf of the Debtor during the First Interim Period are set forth in its time records (Exhibit "A" hereto) (the "Time Records"). The Court is respectfully referred to the Time Records for specific details of the work performed by NBC during the First Interim Period.

**A.** **Asset Disposition**

22. During the First Interim Period, NBC spent significant time attempting to evaluate proposals for the purchase of one or more of the Debtor's signs. The Debtor has received proposals from competing outdoor advertising companies.

23. NBC also met on several occasions with the Ari Noe, the Debtor's principal, to discuss alternatives to the sale(s) of the Debtor's signs and to incorporate the disposition of assets/signs into the context of a plan of reorganization which was filed with the Court on June 22, 2012 [ECF No. 179].

24. In connection with this service category, NBC negotiated and prepared several nondisclosure agreements with interested parties. NBC negotiated with several interested parties and assisted the Debtor with certain due diligence matters which were conducted throughout the First Interim Period.

25. NBC routinely provided updates to the Debtors and the Debtor's chapter 11 counsel with regard to the Debtor's attempt to locate a potential purchaser.

**B.     Litigation and Regulatory Matters**

26. As previously noted, NBC served as special counsel on certain litigation matters involving the Debtor's sign locations which proceedings were previously at an appellate state. The most significant effort by NBC was in connection with the Debtor's sign at 838 6th Avenue, New York, New York which was a matter that was critical to the issue of whether that sign, and other signs of the Debtor, could be "grandfathered", as set forth below.

    **(i) Sign Location – 836 6th Avenue, New York, New York**

27. By way of brief background, the proceeding for the 836 6th Avenue location involved a Report and Recommendation of an Office of Administrative Trials and Hearings ("OATH") Administrative Law Judge ("ALJ"), after a hearing, determining that OTR and its landlord had failed to establish a prior legal non-conforming use with respect to an advertising sign located at 838 6th Avenue, New York, New York (the "Premises").

28. This matter had been referred, by order of the Hon. B. Tolub, dated December 29, 2009, and entered on December 31, 2009 ("Decision Below"), to the Appellate Division, First Department, pursuant to CPLR 7804(g), for a determination, in accordance with CPLR 7803 (3) and (4), whether the decision of the ALJ was affected by an error of law and/or not supported by substantial evidence. By order entered June 9, 2011, the Appellate Division ordered that "petitioners perfect the proceeding on or before August 8, 2011 for the October 2011 Term." Consequently, NBC was required to fast track the appeal.

29. On September 19, 1995, the zoning was changed to C6-4X, a district in which advertising signs are not permitted at all. In March 2007, DOB issued two Notices of Violation, one for failing to obtain a permit for a new sign and one for violating the post-1995 zoning restriction by installing the new sign. On June 5, 2007, the landlord submitted a Certificate of Correction to DOB saying that they had removed the sign. OTR and the landlord then applied to DOB for a permit to install an advertising sign on the site of the Bratman Brothers sign. On August 17, 2007, a permit was issued for an <u>advertising</u> sign based on its status as a prior non-conforming use.

30. Three months later, DOB reversed its position, and, asserting that the permit had been issued in error, issued the Debtor's landlord a Notice of Intent to Revoke and Notice of Objection.

31. On November 13, 2008, DOB revoked the permit. Additional violations were issued by DOB after the permit was revoked, all on the alleged ground that the sign in place at the Premises was illegal because it was an unpermitted "advertising" sign.

32. By Petition and Notice of Hearing dated February 5, 2009, DOB commenced an OATH nuisance abatement proceeding charging that OTR and the landlord had violated §28-

105.1 of the New York City Administrative Code. On April 29, 2009, an OATH hearing was held before ALJ Faye Lewis. Pertinent to ALJ Lewis's decision were whether the Sign was a prior non-conforming use and the effect of the Permit.

33. In sum, ALJ Lewis found that the Premises was located in a C6-4X district, that the OTR and its landlord had "erected and maintained advertising signs over two hundred square feet at the Premises without obtaining a permit in violation of the construction code and zoning code," and that they had "failed to established a prior legal non-conforming use."

34. The Commissioner issued an Order of Removal on August 11, 2009 ("Order"). The Order stated that, if Petitioners did not voluntarily remove the Sign within ten days of the date of the Order, the DOB would remove the Sign.

35. OTR and the landlord brought a proceeding, seeking, inter alia, an order, (a) pursuant to CPLR 7803, and section 28-503.6 of the Administrative Code, rescinding the Order of Removal on the ground that ALJ Decision was "affected by an error of law" and not "supported by substantial evidence"; and (b) pursuant to CPLR 7805, staying the City Respondents from attempting to remove, removing, causing others to attempt to remove, causing other to remove or, if same has been removed, preventing Petitioners from installing an advertising sign at the Premises during the pendency of the Article 78 proceeding.

36. NBC performed extensive research, review of several court rulings, case documents and other evidence in order to timely generate an appellate brief and reply brief. NBC also reviewed the City's opposition brief and performed extensive research to address those points raised by the City.

37. NBC argued before the Appellate Division and worked with the Debtor after this appeal was denied to transition the file to special appellate counsel located in Albany in furtherance of an appeal to the New York Court of Appeals.

**C.**     **Expenses**

38. The Time Records also delineate the nature of reimbursements sought during the First Interim Period.

39. NBC has been required during the course of its retention to outlay funds for actual and necessary purposes.

40. Charges for express or overnight mail were used only when first class mail was impractical, such as when a response was required within an immediate deadline. The firm did not charge the Debtor for the cost of overhead expenses. These expenses are fully documented on Exhibit "A" hereto.

## VI.     STATUTORY BASIS FOR RELIEF REQUESTED

41. The statutory basis for relief sought herein are sections 330 and 331 of Title 11 of the Bankruptcy Code and Bankruptcy Rule 2016, as supplemented by the Local bankruptcy Rules. Under sections 330(a)(3)(A) of the Bankruptcy Code, a Court shall consider the following factors in determining whether the amount of compensation requested is reasonable:

- (A)     the time spent on such services;
- (B)     the rates charged for such services;
- (C)     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered towards the completion of, a case under this title;
- (D)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue, or task addressed; and
- (E)     whether the compensation is reasonable based on the customary

> compensation charged by comparably skilled practitioners in cases other than cases under this title.

*See* Section 330(a)(3)(A) of the Bankruptcy Code.

42. The philosophy underlying the adoption of section 330 of the Bankruptcy Code is equally applicable to interim compensation. The Bankruptcy Code provides that the same consideration apply to making interim awards of compensation under section 331 as to final allowances under section 330. See In re Public Service Co. of New Hampshire, 93 B.R. at 826; In re International Horizons, Inc., 10 B.R. 895 (Bankr.N.D.Ga. 1981). Section 331 of the Bankruptcy Code provides:

> A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date as is provided under section 330 of this title. After notice and a hearing, the Court may allow and disburse to such applicant such compensation or reimbursement.

11 U.S.C. §331.

43. It is respectfully submitted that the compensation and expenses sought herein should be allowed based on the above standard. The rates charged are typical of other comparably skilled practitioners, and the amount of time spent was reasonable in light of the nature of the issues presented and the complexity of the administration of the Debtor's case. The services provided were both necessary and beneficial to the administration of the case, the estate and the Debtor's creditors.

WHEREFORE, the Debtor respectfully requests that the Court enter an order granting this Application in its entirety and for such further and different relief as is just, proper and equitable.

Dated: New York, New York
July 27, 2012

                    Goetz Fitzpatrick LLP
                    *Attorneys for the Debtor*

By: /s/Scott D. Simon
     Gary M. Kushner
     Ronald D. Coleman
     Scott D. Simon
     One Pennsylvania Plaza
     44th Floor
     New York, New York 10119
     (212) 695-8100