Gary M. Kushner
Scott D. Simon
GOETZ FITZPATRICK LLP
One Penn Plaza, Suite 4401
New York, New York 10119
Tel: (212) 695-8100
gkushner@goetzfitz.com
ssimon@goetzfitz.com
*Attorneys for Debtor*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:                                                                                Chapter 11

OTR MEDIA GROUP INC.,                                          Case No. 1-11-47385 (ESS)

                      Debtor.
------------------------------------------------------------X

**THIRD INTERIM APPLICATION OF GOETZ FITZPATRICK LLP AS DEBTOR'S COUNSEL FOR ALLOWANCE OF COMPENSATON FOR PROFESSIONAL SERVICES RENDERED AND FOR REIMBURSEMENT OF ACTUAL AND <u>NECESSARY EXPENSES INCURRED</u>**

TO THE HONORABLE ELIZABETH S. STONG,
 UNITED STATES BANKRUPTCY JUDGE:

      Goetz Fitzpatrick LLP (sometimes referred to herein as "GF"), counsel for OTR Media Group Inc., the debtor and debtor-in-possession (the "Debtor"), files its third application (this "Application") pursuant to §§ 330(a) of title 11, United States Code (the "Bankruptcy Code") and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for allowance of interim compensation for professional services performed and for reimbursement of expenses for the period between July 1, 2012 and January 31, 2013 (the "Third Interim Period"). In support of the Application, Goetz Fitzpatrick LLP respectfully represents as follows:

# I. RELIEF REQUESTED

1. By this Application, Goetz Fitzpatrick LLP seeks entry of an order awarding (i) interim compensation in the sum of $164,950.00 for fees for professional services rendered during the Third Interim Period as bankruptcy counsel for the Debtor in this proceeding, and (ii) for reimbursement of disbursements made on behalf of the Debtor for the same period in the sum of $1,008.25, for a total award of $165,958.25.

### a) First Interim Application

2. Prior to the Debtor's chapter 11 filing, GF received an initial retainer from the Debtor in the amount of $65,000. Against the initial retainer, GF provided pre-petition professional services to the Debtor in the amount of $17,867.00 – primarily in preparation for the chapter 11 filing on August 25, 2011 (the "Filing Date"). As of the Filing Date, the balance of the initial retainer totaled $47,133.00 (the "Retainer Balance").

3. By application filed with this Court on December 30, 2011 [ECF No. 78], GF requested interim compensation in the amount of $114,994.00 for fees and $3,769.56 for reimbursement of expenses covering the period between the Filing Date and November 30, 2011 (the "First Interim Application").

4. By order dated February 17, 2012 [ECF No. 98], the First Interim Application was granted to the extent of awarding GF fees in the amount of $91,955.20 and expenses of $3,769.56 without prejudice to make a further application for payment of sums requested but not awarded. The Court directed a holdback of payment of fees requested in the First Interim Application such that $23,038.80, representing 20% of the total request for fees, was not paid to GF (the "First Holdback").

5. GF has been paid the sums awarded in the First Interim Application. For purposes of the First Interim Application, GF applied the balance of its pre-petition retainer in the amount of $47,133.00 and was paid by the Debtor an additional $44,822.20 for fees and $3,769.56 for expenses.

      **b)**    <u>**Second Interim Application**</u>

6. By second application filed on July 25, 2012 [ECF No. 217], GF requested interim compensation in the amount of $203,142.50 for fees and $8,605.23 for reimbursement of expenses for the period between December 1, 2011 and June 30, 2012 (the "Second Interim Application").

7. By order dated August 31, 2012, the Second Interim Application was granted to the extent of awarding interim fees in the amount of $162,514.00, representing 80% of the fees sought in the Second Interim Application, and $7,605.23 in expenses, representing 100% of the expenses requested in the Second Interim Application. GF was paid by the Debtor for the amounts awarded for fees and expenses in connection with the Second Interim Application.

8. A holdback of $40,628.50, representing 20% of the total fees requested in the Second Interim Application, was not paid to GF (the "Second Holdback").

9. GF will seek approval and payment of the First Holdback and the Second Holdback in its final application for allowance of compensation. GF does not seek approval or the payment of the First Holdback or the Second Holdback by way of this Third Interim Application.

## II. JURISDICTION AND VENUE

10. This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a "core" proceeding pursuant to 28 U.S.C. §159(b). Venue of these proceedings and over this Application are proper in this district pursuant to 28 U.S.C. §§1408 and 1409.

11. The professional services for which allowances are sought by Goetz Fitzpatrick LLP in this application were rendered on behalf of the Debtor.

12. A summary of the categories of services and the time devoted by Goetz Fitzpatrick LLP for each such service, as required by the Office of the United States Trustee, is annexed hereto as Exhibit "A".

13. Goetz Fitzpatrick LLP also maintains records of the time it has expended for professional services on behalf of a client, as well as records for expenses that were paid on behalf of a client. Goetz Fitzpatrick LLP's time records were made concurrently with the rendition of the professional service rendered for the benefit of the Debtor. Each time entry made by Goetz Fitzpatrick LLP is reflected on Exhibit "B" annexed hereto.

## III. DEBTOR'S COUNSEL

14. Goetz Fitzpatrick LLP initially applied for retention as the Debtors' chapter 11 counsel on August 26, 2011 [See ECF No. 2] and renewed its application on October 5, 2011, on notice to all creditors and parties-in-interest, at the request of the Office of the United States Trustee ("UST") [See ECF No. 36].

15. The UST and other parties-in-interest objected to the proposed retention on the grounds that Goetz Fitzpatrick LLP's representation of certain of the Debtor's landlords in a

separate proceeding captioned 203 17th Realty LLC v. City of New York, 11 CV 1392 (the "1983 action") could give rise to a conflict of interest [See ECF Nos. 40, 42 and 43].

16. The Court held a hearing on the Application on October 25, 2011, at which time Goetz Fitzpatrick LLP's retention application was granted.

17. The Court held a further hearing on the Application on November 29, 2011, at which time the Court clarified the retention of GF as Debtor's counsel as reflected in the record and directed the Debtor to submit an order on consent confirming that Goetz Fitzpatrick LLP would do no more work for the landlords in the Debtor's case and the 1983 action.

18. The Office of the United States Trustee approved the form of Order submitted by the Debtor and an order granting GF's retention was entered by the Court on December 15, 2011, effective as of the Filing Date. A copy of GF's retention order was annexed to the First Interim Application as Exhibit "C".

19. Goetz Fitzpatrick LLP is a law firm comprised of approximately thirty lawyers and paraprofessionals. Goetz Fitzpatrick LLP is recognized as a leader in representing the construction industry. The firm is a leading force in sophisticated construction-related litigation, arbitrations and mediation. The firm's presence also extends to other industries in complex commercial litigation, transactional matters, trust and estates and general counseling.

20. In 2011, Goetz Fitzpatrick LLP recruited Gary M. Kushner, Esq., who formerly led the Bankruptcy Group at Forchelli, Curto, Deegan, Schwartz, Mineo, Cohn & Terrana, LLP. Mr. Kushner now heads the Bankruptcy Group at Goetz Fitzpatrick LLP.

21. Goetz Fitzpatrick also employs Scott D. Simon, Esq. in its Bankruptcy Group. Mr. Simon is a former associate with the New York City law firms Cahill Gordon & Reindel LLP and Littleton Joyce Ughetta Park & Kelly LLP. Mr. Simon has prior experience drafting motions

common to a chapter 11 case, research on complex and unique bankruptcy issues and has hands-on experience in bankruptcy litigation matters.

22. In connection with complex litigation matters that may arise in a chapter 11 case, GF utilizes the services of several highly experienced and extremely capable litigators including Ronald D. Coleman, Esq.

## IV. FACTUAL BACKGROUND

23. On August 25, 2011, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is operating its business and managing its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

24. No trustee, examiner or committee of creditors has been appointed in this case.

25. The Debtor is a full service outdoor advertising company as defined by the New York City Administrative Code, now in its second decade of operation. The Debtor provides bulletins, wallscapes and spectaculars in prime real estate locations covering the New York City market. The Debtor also provides media sales and billboard maintenance services to its advertising clientele.

26. The Debtor's chapter 11 filing was precipitated by, among other things, the issuance of substantial fines and legal expenses in connection with New York City's promulgation and enforcement of zoning regulations that effectively banned the Debtor from maintaining certain signs (the "Sign Laws"). The fines, legal expenses, and loss of revenue severely interfered with the Debtor's relationship with landlords of various buildings on which the Debtor placed outdoor signs. The City's enforcement scheme has restricted the Debtor's available advertising sources and created substantial cash flow issues since the City served restraining notices on the Debtor's clients.

27. The chapter 11 filing was elected to obtain the benefits of the automatic stay and a breathing spell from the City's selective effort to put the Debtor out of business, and to preserve the Debtor's relationships and assets for the benefit of its landlords, vendors, clients and other creditors.

### V. SIGNIFICANT SERVICES PERFORMED BY GOETZ FITZPATRICK LLP DURING THE THIRD INTERIM PERIOD

28. The following is a summary description of the significant services performed by Goetz Fitzpatrick LLP during the Third Interim Period. All of the professional services provided by Goetz Fitzpatrick LLP on behalf of the Debtor during the Third Interim Period are set forth in its time records (the "Time Records", annexed hereto as Exhibit "B"). The Court is respectfully referred to the Time Records for specific details of the work performed by Goetz Fitzpatrick LLP during the Third Interim Period.

29. In summary, the work performed by Goetz Fitzpatrick LLP during the Third Interim Period has been classified in several general categories, as follows:

   a. "Asset Disposition", which is generally described as the work necessary to counsel the Debtor and assist the Debtor with the potential sale of the Debtor's signs. The majority of sale negotiation efforts overlaps with case administration and business operations and were billed under both of these categories.

   b. "Business Operations", which is generally described as the work necessary to counsel the Debtor in its business decisions. Services rendered in this category primarily included negotiations with the Debtor's landlords concerning operations, discussions with service providers regarding the automatic stay and continuation of services and negotiations with creditors concerning litigation with the City of New York.

   c. "Court Hearings", which is generally described as the work necessary for scheduled hearings, coordinating hearings with creditors, preparing hearing agendas, and attending court hearings.

   d. "Claims Administration and Objections", which is generally described as the work necessary to evaluate the merits of claims filed against the Debtor's estate and developing the basis of any objections thereto.

e. "Professional Retention", which includes the work necessary to secure approval of the retention and compensation of professionals.

f. "Cash Collateral", which includes time spent securing debtor-in-possession financing sources and approvals for use of cash collateral.

g. "Legal Motions and Contested Matters", which is generally described as the work necessary to prepare motions filed with the Court, and to prepare responses in other contested matters.

h. "Plan and Disclosure Statement", which is generally described as the work necessary to prepare the Debtor's plan and disclosure statement.

i. "Legal Research", which is generally described as the legal work associated with the preparation of legal points and authorities to support or oppose motion practice, as well as legal research on a myriad of other legal issues that affect the administration of the chapter 11 case.

j. "Case Administration", which is generally described as the work necessary to counsel the Debtor about its responsibilities as a debtor in a chapter 11 case; attending to scheduling issues; updating creditors with respect to miscellaneous inquiries; reviewing operating reports and review of other financial information.

**A.    Asset Disposition**

30. During the Third Interim Period, the Debtor's efforts were concentrated on the sign legalization process, recognizing that the Debtor's ability to sell its sign inventory hinged on the outcome of the sign legalization process. Consequently, the Time Records reflect that no services applicable to this service category was billed by GF during the Third Interim Period.

**B.    Business Operations**

31. During the Third Interim Period, the Debtor called upon GF to assist in a litany of business issues including landlord disputes, fee request disputes, counseling on business issues arising from the issuance of various state court rulings concerning aspects of the sign laws promulgated by the City of New York, compliance with the Consent Order, sign registration issues and other sundry day-to-day business problems and issues.

32. As set forth in the Time Logs, GF counseled the Debtor on the following specific business issues:

    (a) Covenant House unpaid violation dispute;

    (b) implications of the <u>Fuel</u> decision on the Debtor's future and past operations;

    (c) general assistance with various questions from and discussions with regulatory counsel questions and issues;

    (d) the Arnold Report and the Consent Order;

    (e) assistance with collection of the Debtor's outstanding accounts receivable;

    (f) assistance with the abandonment of certain property;

    (g) assistance with salary negotiations/reductions to key personnel;

    (h) counsel on tax liabilities; and

    (i) general long-term strategy development regarding the Debtor's business goals.

33. GF performed 47.7 hours in professional services categorized as Business Operations during the Third Interim Period, for a total charge to the Debtor of $19,272.50.

**C.    Court Hearings**

34. During the Third Interim Period, Goetz Fitzpatrick LLP was required to prepare for and attend several Court conferences and hearings, including:

(a) status conference, hearing on Debtor's motion for use of cash collateral, hearing on UST's motion to convert or dismiss chapter 11 case (the "UST Motion"), hearing on omnibus compensation requests for ordinary course professionals, and Debtor's motion to extend time to assume or reject leases, all of which were heard by the Court on July 17, 2012;

(b) hearings on motions for interim compensation for Goetz Fitzpatrick LLP and Novack, Burnbaum & Crystal, which were heard by the Court on August 30, 2012;

(c) status conference, hearing on Debtor's motion to use cash collateral, hearing on adequacy of Debtor's disclosure statement, hearing on UST Motion and hearing on

9

Debtor's Objections to Claims motion, all of which were heard by the Court on September 6, 2012;

(d) status conference, hearing on Debtor's application to use cash collateral, hearing on Debtor's motions for Rule 2004 examinations of various entities including Lamar, Fuel and Clear Channel, hearing on the UST Motion, hearing on adequacy of disclosure statement, hearing on Debtor's objections to claims motion, and hearing on Debtor's motion to extend time to assume or reject leases, all of which were heard by the Court on September 27, 2012; and

(e) status conference, hearing on Debtor's motion to use cash collateral, hearing on Debtor's motions for Rule 2004 examinations, hearing on UST Motion, hearing on Debtor's motion to reimpose automatic stay, hearing on Debtor's motion to extend time to assume or reject leases, and hearing on Debtor's motion objecting to allowance of claims, all of which were heard by the Court on December 20, 2012.

35. Before each and every Court hearing, Goetz Fitzpatrick LLP diligently prepared the client (when necessary), prepared and extensively reviewed pleadings and other documents and prepared for oral argument before the Bankruptcy Court.

36. GF rendered a total of 37.0 hours in this service category during the Third Interim Period, amounting to $15,732.50 in fees charged to the Debtor.

### D. Claims Administration and Objections

37. In connection with this category, Goetz Fitzpatrick LLP was required to deal with various landlord claims asserted against the Debtor; identify claims against which the Debtor intended to file claims objections; and evaluate the nature of claims asserted by the City and various taxing authorities.

38. In connection with this category, Goetz Fitzpatrick LLP worked with the Debtor and the City to discuss possible resolution of the City's proof of claim and the myriad of administrative proceedings against the Debtor.

39. In addition, during the Third Interim Period, the Debtor continued to prosecute its first omnibus motion objecting to claims to the extent it was unable to resolve claim disputes. In

connection with that motion, Goetz Fitzpatrick LLP replied to various responses from certain creditors, resolved several claims which were the subject of that motion and continued to negotiate claims which could not be settled.

40. During the Third Interim Period, GF engaged in substantial negotiations with MNB to attempt to resolve the Bank's claim and to discuss a payout of the allowed claim over the life of a proposed plan of reorganization.

41. GF's efforts on behalf of the Debtor in regard to MNB were successful in that an agreement was reached between the Debtor and MNB to fix the Bank's allowed claim and to structure repayment over the term of the plan.

42. GF and counsel for the Bank have negotiated and substantially completed an agreed form of stipulation and settlement during the Third Interim Period, which will be filed with the Court in the near future.

43. GF rendered a total of 25.7 hours in this service category during the Third Interim Period amounting to $10,547.50 in fees charged to the Debtor.

**E.     Professional Retentions**

44. As noted in prior interim fee applications, the Debtor's business model relies upon the use of a stable of attorneys, each with differing expertise. During the chapter 11 case, the Debtor has sought approval for the following retention of law firms and accounting firms:

(a) Law Office of Ariel S. Holzer, which specializes in regulatory matters and sign law enforcement issues;

(b) Novack Burnbaum Crystal LLP, which specializes in litigation of sign regulatory matters and transactional issues relating to the outdoor advertising business;

(c) Bartfield & Knopler PLLC, which specializes in litigation matters

particular to the outdoor advertising industry;

(d) GoldmanHarris LLC, which specializes in appellate practice before the Board of Standards & Appeals, focusing on sign regulatory issues;

(e) Cohen Hochman & Allen, which specializes in matters before the ECB concerning sign laws and regulatory issues;

(f) Whiteman Osterman & Hanna, a firm located in the Albany, New York, area, which specializes in general appellate work on sign laws and regulatory matters;

(g) Bryan Cave, LLP, which specializes, for purposes of this chapter 11 case, in the regulatory assessment of the Debtor's signs and the processes and administrative submissions required to legalize those signs;

(h) Pease & Associates, Inc., which was retained to prepare the Debtor's tax returns for 2009 and 2010;

(i) Roth & Company LLP, which was retained as the Debtor's general accountant, with the limited function of resolving certain tax claims and preparing tax returns; and

(j) Goetz Fitzpatrick LLP, which was retained to represent the Debtor in the chapter 11 case.

45. The Holzer, Novack, Bartfield, Goldman and Cohen firms were retained as ordinary course professionals that the Debtor requires to navigate day-to-day proceedings before the ECB, Department of Buildings, and various other administrative and court hearings particular to the outdoor sign business.

46. Goetz Fitzpatrick LLP has prepared and filed numerous monthly fee submissions applicable to each of the ordinary course professionals during the Third Interim Period.

47. The filing of certain applications resulted in the filing of objections by the UST and other parties-in-interest. GF researched the legal issues applicable to each objection, prepared replies and ultimately resolved the issues raised by each objecting party.

48. During the Third Interim Period, GF was required to engage in discussions with the UST and counsel for the Bank regarding numerous retention applications, the scope of retention and the anticipated costs for the following firms: Whiteman, Pease and Bryan Cave.

49. During the Third Interim Period, GF prepared and filed its second interim application for allowance of compensation and reimbursement of expenses (hereinafter defined as the "Second Interim Application").

50. On August 24, 2012, the UST filed an objection to the Second Interim Application, which required GF to prepare a reply. Ultimately, the UST objection was resolved.

51. GF rendered a total of 56.2 hours in this service category during the Third Interim Period, amounting to $22,285 in fees charged to the Debtor.

**F.    Cash Collateral**

52. During the Third Interim Period, Goetz Fitzpatrick LLP has continued to work closely with the Debtor's secured lender, Metropolitan National Bank ("MNB"), and arranged for use of the bank's cash collateral so that the Debtor could continue to operate in chapter 11.

53. During the Third Interim Period, Goetz Fitzpatrick LLP successfully negotiated budgets with MNB covering the months of July 2012 through February 2013. Cash Collateral agreements covering each of these months were also negotiated with MNB and approved by the Court.

54. GF rendered a total of 14.1 hours in this service category during the Third Interim Period, amounting to $5,507.50 in fees charged to the Debtor.

### G. Legal Motions and Contested Matters

55. Goetz Fitzpatrick LLP prepared and responded to several critical motions during the Third Interim Period, including:

(a) fee submissions for the Debtor's ordinary course professionals, which were submitted periodically during the Third Interim Period [ECF Nos. 195, 196, 239, 240, 260, 262, 263, 276, 277, 288, 290, 300 and 301];

(b) hearing in connection with the adequacy of the Debtor's disclosure statement [ECF No. 98];

(c) application for interim compensation filed by Goetz Fitzpatrick LLP [ECF No. 210];

(d) application for interim compensation filed by Novack Burnbaum Crystal [ECF No. 211];

(e) UST's motion to convert or dismiss chapter 11 case and related consent order resolving the motion [ECF No. 214];

(f) multiple hearings and consent orders authorizing the Debtor's continuing use of cash collateral [ECF Nos. 216, 238, 266, 274 and 303];

(g) application to employ Bryan Cave LLP as Debtor's special regulatory counsel [ECF No. 223];

(h) objection of the UST to adequacy of the Debtor's disclosure statement [ECF No. 228];

(i) objection of the City of New York to the adequacy of the Debtor's disclosure statement [ECF No. 229];

(j)     objection of Metropolitan National Bank to the adequacy of the Debtor's disclosure statement [ECF No. 230];

(k)     objection of the UST to allowance of fees to the Debtor's ordinary course professionals [ECF No. 243];

(l)     Debtor's application to abandon property [ECF No. 244];

(m)    Debtor's motion to take rule 2004 discovery of Lamar Outdoor [ECF No. 246];

(n)     Debtor's motion to take Rule 2004 discovery of Clear Channel Outdoor [ECF No. 247];

(o)     Debtor's motion to take Rule 2004 discovery of Fuel Outdoor [ECF No. 250];

(p)     miscellaneous pleadings in connection with the Consent Order resolving the UST's motion to convert;

(q)     Debtor's motion to reinstate automatic stay with respect to the City of New York [ECF No. 296];

(r)     City of New York's objection to the Debtor's motion for reinstatement of the automatic stay [ECF No. 304];

(s)     amended application and order granting retention of Whiteman, Osterman & Hanna, LLP as Debtor's appellate counsel [ECF No. 306]; and

(t)     Debtor's reply to the City of New York's opposition to the motion to reinstate automatic stay [ECF No. 307].

### Detailed Work on Particular Motions

#### i. UST Motion to Convert or Dismiss

56. During the Third Interim Period, the UST filed an application to convert or dismiss the Debtor's chapter 11 case [ECF No. 154]. The City joined in the application.

57. In connection with that motion, Goetz Fitzpatrick LLP prepared opposition papers, including a comprehensive memorandum of law. The Bankruptcy Court held an extensive hearing on June 29, 2012, after which the parties (UST, Debtor, MNB and the City) discussed a global resolution, much of which occurred during the Third Interim Period.

58. The UST's motion to convert or dismiss was ultimately resolved during the Third Interim Period and a consent order was extensively negotiated and entered by the Court. The Debtor may now proceed towards the confirmation of its plan as a result of the settlement and the work performed by Goetz Fitzpatrick LLP.

59. GF rendered a total of 105.3 hours in this service category during the Third Interim Period, amounting to $40,725.00 in fees charged to the Debtor.

### H. Plan and Disclosure Statement

60. During the Third Interim Period, Goetz Fitzpatrick LLP has reviewed a litany of documents, pleadings, financial information – both historical and present – claims and other material, in preparation for drafting the Debtor's Plan and Disclosure Statement.

61. Goetz Fitzpatrick LLP has met with the Debtor and its professionals on numerous occasions to distill all of the relevant information required to be provided in a plan and disclosure statement.

62. As described above, Goetz Fitzpatrick LLP drafted, edited and finalized a comprehensive plan and disclosure statement, which were docketed on June 22, 2012.

63. During the Third Interim Period, GF was required to revise, update and supplement the original plan and disclosure statement on a number of occasions. Toward the end of the Third Interim Period in late January, 2013, GF prepared a draft disclosure statement which was circulated to the UST, MNB and the City. GF incorporated comments from parties-in-interest, revised the disclosure statement, and filed it with the Court on February 14, 2013.

64. In preparing the disclosure statement, GF was required to conduct research on a number of legal issues, including research on the extent to which the plan could provide for third party release and injunctions, clarification issues and voting issues.

65. GF rendered a total of 77.9 hours in this service category during the Third Interim Period, amounting to $34,458.50 in fees charged to the Debtor.

**I.    Legal Research**

66. During the Third Interim Period, Goetz Fitzpatrick LLP conducted specific additional research projects not otherwise associated with a pending motion or contested matter. This research was primarily preventive in nature, designed to avoid the need to formally file a motion with the Court by presenting controlling authority to the Debtor's potential adversaries.

67. In other instances, Goetz Fitzpatrick LLP researched the interaction of the Bankruptcy Code with relevant New York State Law in order to advise the Debtor on its most efficient course of action with respect to its business goals.

68. GF rendered a total of 19.7 hours in this service category during the Third Interim Period, amounting to $7,260 in fees charged to the Debtor.

**J.    Case Administration**

69. Since its retention, Goetz Fitzpatrick LLP has endeavored to ensure that the Debtor has timely complied with its duties and with Court deadlines during the Third Interim Period.

70. Goetz Fitzpatrick LLP has responded to many creditor inquiries about the status of the chapter 11 case. Goetz Fitzpatrick LLP also responded to the inquires of many entities who have conducted due diligence in connection with the potential purchase of the Debtor's signs.

71. Goetz Fitzpatrick LLP has insured that proper notices have been generated during the Third Interim Period, including noticing of Court calendars and adjournments.

72. During the Third Interim Period, GF routinely responded to various inquiries from the Debtor and other parties-in-interest about case developments, general case administration and other aspects or events which have occurred in the chapter 11 case.

73. GF rendered a total of 22.9 hours in this service category during the Third Interim Period, amounting to $9,165 in fees charged to the Debtor.

**K.    Expenses**

74. The Time Records also delineate the nature of reimbursements sought for the Third Interim Period.

75. Goetz Fitzpatrick LLP has been required during the course of its retention to outlay funds for actual and necessary purposes. Charges for express or overnight mail were used only when first class mail was impractical, such as when a response was required in advance of an immediate deadline. The firm did not charge the Debtor for the cost of overhead expenses. These expenses are fully documented on Exhibit "B" hereto.

## VI.    STATUTORY BASIS FOR RELIEF REQUESTED

76. The statutory basis for the relief sought herein are sections 330 and 331 of Title 11 of the Bankruptcy Code and Bankruptcy Rule 2016, as supplemented by the Local Bankruptcy Rules. Under sections 330(a)(3)(A) of the Bankruptcy Code, a Court shall consider the following factors in determining whether the amount of compensation requested is reasonable:

> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered towards the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue, or task addressed; and
>
> (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

See Section 330(a)(3)(A) of the Bankruptcy Code.

77. The philosophy underlying the adoption of section 330 of the Bankruptcy Code is equally applicable to interim compensation. The Bankruptcy Code provides that the same considerations apply to making interim awards of compensation under section 331 as to final allowances under section 330. See In re Public Service Co. of New Hampshire, 93 B.R. at 826; In re International Horizons, Inc., 10 B.R. 895 (Bankr.N.D.Ga. 1981). Section 331 of the Bankruptcy Code provides:

> A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date as is provided under section 330 of this title. After notice and a hearing, the Court may allow and disburse to such applicant such compensation or reimbursement.

11 U.S.C. §331.

78. It is respectfully submitted that the compensation and expenses sought herein by Goetz Fitzpatrick LLP should be allowed based on the above standard. The rates charged are typical of other comparably skilled practitioners, and the amount of time spent was reasonable in

19

light of the nature of the issues presented and the complexity of the administration of the Debtor's case. The services provided were both necessary and beneficial to the administration of the case, the estate and the Debtor's creditors.

WHEREFORE, Goetz Fitzpatrick LLP respectfully requests that the Court enter an order granting this Application in its entirety and for such further and different relief as is just, proper and equitable.

Dated: New York, New York
February 26, 2013

> Respectfully submitted,
>
> Goetz Fitzpatrick LLP
> *Attorneys for the Debtor*
>
> By: /s/Gary M. Kushner
> Gary M. Kushner
> A Partner of the Firm
> Scott D. Simon
> One Pennsylvania Plaza
> 44th Floor
> New York, New York 10119
> (212) 695-8100

t:\kushner\kdrive\kushner\otr - chapter 11\chapter 11\third interim application of gf for compensation.doc