UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF NEW YORK

Case No. 11-47385-ess

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


OTR MEDIA GROUP, INC.,


          Debtor.


- - - - - - - - - - - - - - - - - - - -x


          United States Bankruptcy Court

          271 Cadman Plaza East

          Brooklyn, New York


          March 12, 2013

          11:51 AM


B E F O R E:

HON. ELIZABETH S. STONG

U.S. BANKRUPTCY JUDGE

[355] Hearing on NBC Compensation request (RE: related
document(s) 323 Affidavit filed by Debtor OTR Media Group,
Inc.)

[327] Third Application for Compensation for Goetz Fitzpatrick
LLP as Debtors' Counsel

[328] First Application for Compensation for Bryan Cave, LP as
Debtors Special Counsel

Transcribed by:  Ellen S. Kolman

eScribers, LLC

700 West 192nd Street, Suite #607

New York, NY 10040

(973)406-2250

operations@escribers.net

1

2  A P P E A R A N C E S :

3  GOETZ FITZPATRICK LLP

4          Attorneys for Debtor

5          One Penn Plaza

6          New York, NY 10019

7

8  BY:  GARY M. KUSHNER, ESQ.

9

10

11  LAW OFFICE OF ARIEL S. HOLZER PLLC

12          Attorney for Debtor

13          220 E. 42nd Street

14          Suite 407

15          New York, NY 120017

16

17  BY:  ARIEL S. HOLZER, ESQ.

18

19

20  BRYAN CAVE LLP

21          Attorneys for Debtor, as Special Counsel

22          1290 Avenue of the Americas

23          New York, NY 10104

24

25  BY:  PHYLLIS ARNOLD, ESQ.

NOVACK BURNBAUM CRYSTAL LLP

      Attorneys for Debtor, as Special Counsel

      300 East 42nd Street

      New York, NY 10017

BY:  HOWARD C. CRYSTAL, ESQ.

TANNENBAUM HELPERN SYRACUSE & HIRSCHTRITT

      Attorneys for Metropolitan National Bank

      900 Third Avenue

      New York, NY 10022

BY:  WAYNE H. DAVIS, ESQ.

NEW YORK CITY LAW DEPARTMENT

      Attorneys for New York City

      100 Church Street

      New York, NY 10007

BY:  BRIAN T. HORAN, ESQ.

1

2  THE UNITED STATES DEPARTMENT OF JUSTICE

3       Attorneys for U.S. Trustee

4       271 Cadman Plaza East

5       Suite 4529

6       Brooklyn, NY 11201

7

8  BY:   WILLIAM E. CURTIN, ESQ.

9

10

11  Also Present:

12  Ari Noe, Owner, OTR Media Group

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2            THE CLERK:  Numbers 46, 47 and 48 on the calendar.

3    OTR Media Group here on NBC compensation request, third

4    application for compensation for Goetz Fitzpatrick, first

5    application by Bryan Cave.

6            THE COURT:  All right.  Good morning all.  Come on up.

7    All right.  Let's get your appearances on the record.  It's

8    good to see everyone.

9            MR. KUSHNER:  Good morning again, Your Honor, Gary

10   Kushner, Goetz Fitzpatrick for OTR Media, the debtor.

11           THE COURT:  All right.

12           MR. HORAN:  Good morning, Your Honor.  Brian Horan,

13   New York City Law Department for the city.

14           THE COURT:  Thank you, Mr. Horan.

15            MR. DAVIS:  Good morning, Your Honor.  Wayne Davis of

16   Tannenbaum Helpern Syracuse & Hirschtritt for Metropolitan

17   National Bank.

18           MR. CURTIN:  William Curtin for the United States

19   Trustee, Your Honor.

20           MR. CRYSTAL:  Good morning, Your Honor.  Howard

21   Crystal, Novack Burnbaum Crystal.

22           MR. HOLZER:  Ariel Holzer, Law Office of Ariel S.

23   Holzer, the debtor, OTR Media.

24           THE COURT:  And Ms. Arnold.

25           MS. ARNOLD:  Good to see you.  Phyllis Arnold, Bryan

1  Cave.

2         THE COURT:  All right.  Mr. Kushner, let me hear from

3  you.

4         MR. KUSHNER:  Regarding status, Your Honor, I believe

5  the debtor is current with its operating reports and payment of

6  the United States Trustee fees continues to make a profit post-

7  petition.  I know it's a separate part of today's calendar but

8  we have an agreement with Metropolitan National Bank regarding

9  use of cash collateral and agreed upon budget.  We continue to

10 battle it out with the city in state court and in various other

11 administrative proceedings outside of this court regarding the

12 lawfulness of various signs.  Ms. Arnold has been involved in

13 that on a day-to-day basis and perhaps if you want more

14 specificity as to status of those, I can have Ms. Arnold make

15 that presentation to Your Honor.  But generally speaking, we

16 are following the Court's rulings going through the various

17 administrative application permitting processes and then

18 dealing with the resulting adjudications as appropriate under

19 the sign laws.  And, of course, the city has a different view

20 but that is my report status.

21        I have spent a great deal of time since the last

22 hearing trying to be receptive to the various comments, most of

23 them productive comments, regarding the final disclosure

24 statement with Your Honor actually conditionally approved the

25 last time but because of scheduling and various requests

1    accommodating various delays as a result of schedules, I did

2    receive some more comments last night from the city which I now

3    have to evaluate.  And our intention, obviously, is to get you

4    a document, file it, and submit to you a final order regarding

5    the confirmation process, the formal approval of the disclosure

6    statement and then setting the hearing on disclos -- on

7    confirmation and various associated dates.

8           I can't -- other than that, we are proceeding towards

9    a date -- a confirmation date and that's where we're headed in

10   this case.

11          THE COURT:  All right.  And I know we have our

12   February 20 -- excuse me -- April 23rd date set for --

13          MR. KUSHNER:  Which is another thing, Your Honor, I

14   did bring to Mr. Curtin's attention.  Even in the most

15   optimistic light, if I were to drop everything today, get final

16   approved comments, get you a proposed order, Your Honor would

17   jump through hoops and sign it with copying and everything,

18   it's not going to go out till early next week.  So that as I

19   read the Code, you need at least twenty-eight days plus three

20   days' notice on the hearing on confirmation.  There are

21   probably every bit a good reason to give some more dates for

22   objections and what have you, filing certifications.  So taking

23   that thought on the calendar having discussed that with Mr.

24   Curtin, I think it's more appropriate to move that date into,

25   perhaps, the first or second week of May.

1          THE COURT:  That's fine.  I'd rather invest a little

2     bit more time now and have the right record in terms of timing,

3     service, substance, I think that that's a smart path.

4          MR. KUSHNER:  So the April 23rd date is now not going

5     to be used for confirmation.

6          THE COURT:  We'll have to look for a date, in the

7     window you're describing, sometime in May.

8          All right.  Who else would like to be heard on status?

9          MR. HORAN:  Just very briefly, Your Honor, on status.

10    Mr. Kushner's referred to his ongoing compliance efforts in

11    dealings with DOB and the other administrative agencies

12    pursuant to the consent order.  We learned -- the city learned

13    yesterday that the debtor's operating a sign at a location, 13

14    Carmine Street in Manhattan, that under the consent order was a

15    designated location meaning that Ms. Arnold found that the --

16    that location could not be brought into compliance and that the

17    copy had to be removed and any structure had to be removed

18    because that was no longer a viable sign.  DOB conducted an

19    inspection late last month, February.  Found that the debtor is

20    operating a sign there.  We asked that the copy be removed

21    pursuant to the consent order and if not we intend to move for

22    a default under the order.  I just wanted to advise the Court

23    of that.

24         THE COURT:  Mr. Curtin, how we doing -- Mr. Kushner,

25    how are we doing on Carmine Street?

1          MR. KUSHNER:  I learned of this at 7 o'clock last

2     night, quarter to 7, and I --

3          THE COURT:  So you're on it.

4          MR. KUSHNER:  -- so I haven't had a chance to speak

5     with Mr. Noe this morning regarding that and we will give the

6     city an appropriate response and certainly abide by the spirit

7     of the consent order.

8          THE COURT:  Glad to hear it.

9          Mr. Curtin, anything to add with respect to status?

10          MR. CURTIN:  No, I don't think so, Your Honor.

11     Nothing else.  No.

12          THE COURT:  Okay.  And from the bank?

13          MR. DAVIS:  Thank you, Your Honor.  Just got one brief

14     comment with respect to use of cash collateral.

15          The bank has reviewed during the first week of March

16     the proposed budget for March and has supplied the debtor with

17     an order to be submitted to the Court for signature.  The

18     Office of the U.S. Trustee reviewed the order and had no

19     objection to it.

20          My understanding, the belief was that it was submitted

21     to the Court last week.

22          MR. KUSHNER:  March 8th.

23          THE COURT:  We will track this down.  If it's not done

24     already, it'll be done soon.  Let's make sure we know where

25     this is.  We'll look.  All right.  We will follow up.  If

1  there's any questions at all, I'll be touch with debtor's

2  counsel.  It's important to get that taken care of and thank

3  you so much.

4          Anything further on status from any other party?  All

5  right.

6          There are a number of other matters on the calendar.

7  Mr. Kushner, where do you suggest that we proceed?

8          MR. KUSHNER:  Why don't we take the contested fee

9  application of Novack Burnbaum & Crystal if that's okay with

10  Your Honor?

11          THE COURT:  That's fine.  The Novack Burnbaum &

12  Crystal NBC compensation request.

13          MR. KUSHNER:  Yes.

14          THE COURT:  This is number 46 on the calendar.  Please

15  proceed.

16          MR. KUSHNER:  It is -- I don't have the ECF filing

17  here, Your Honor.  I think it's -- it's got to be more than

18  that.

19          THE COURT:  I'm sorry; it's number 46 on my calen --

20  on our calendar of today.

21          MR. KUSHNER:  Okay.  I don't -- yes, I don't know.

22          THE COURT:  With respect to the ECF calendar, this

23  would be -- the order scheduling hearing is number 335 --

24          MR. KUSHNER:  Okay.

25          THE COURT:  -- on the docket.  That's --

1          MR. KUSHNER:  Yes.  Novack -- may I proceed?

2          THE COURT:  Please.

3          MR. KUSHNER:  Novack Burnbaum & Crystal was retained

4   to do essentially litigation work regarding various issues over

5   the debtor's -- over the lawfulness of the debtor's signs and

6   pursuant to the protocol that was set up by the Court on a

7   monthly basis payment to ordinary course professionals such as

8   Novack Burnbaum Crystal required NBC and others to submit on a

9   monthly basis a monthly fee statement and then there's a

10  procedure that's in place pursuant to that order.  I'm

11  scrolling this up.

12         THE COURT:  I'm sorry.

13         MR. KUSHNER:  I think the court calendar is being --

14         THE COURT:  Oh, we have our changeover at the court

15  reporting.  Please continue.

16         MR. KUSHNER:  Thank you, Judge.

17         THE COURT:  Thank you, Mr. Kushner.

18         MR. KUSHNER:  And on February 11th which is within the

19  time period described by the Court, NBC put in its fee request

20  for the time it incurred in January of 2013 seeking fees of

21  $5,749.73 and reimbursement of expenses of $70.86.  And along

22  with its application or notice, it submitted its time log and

23  it's undisputed that NBC's time for the month of January

24  revolved around the preparation briefing and filing of an

25  Article 78 proceeding involving the sign at 174 Canal Street.

1      There has been one objection filed by the city.

2  Essentially, the city's objection states that no compensation

3  should be awarded to NBC with respect to this fee notice

4  because it's work in January on the Article 78 contravenes the

5  stay order and that's the order -- the order I'm referring to

6  is the order of the Court dated January 9th, 2013 which denied

7  the debtor's application to reinstate the stay.  And NBC's work

8  also violated, what I'll call, the consent order which was the

9  consensual order entered on July 19th, 2012 which resolved the

10  UST's motion to convert or dismiss the case.

11      The city also objects to the payment of fees to NBC

12  for January on the basis that no attorney should be compensated

13  for work that it voluntarily discontinued.  And in that vein,

14  what NBC did was after it filed the appropriate application in

15  state court, it learned that the issue that it was seeking

16  provisional relief on became moot so the application was

17  withdrawn.

18      And then the third basis of the objection was that the

19  consent order restricts altogether the use of NBC in any state

20  court litigation.  The debtor has filed a response to the

21  city's objection on behalf of NBC essentially addressing each

22  one of the points that were raised by the consent order -- I'm

23  sorry; by the city's objection.  Specifically, with respect to

24  the city's contention that the NBC work in January contravened

25  the stay order and the consent order.  The debtor disputes that

1  altogether.

2          Number one, the stay order in its most simplistic form

3  was the order that was entered by this Court denying the

4  reinstatement of the automatic stay.  It did not in any way

5  prohibit the debtor from defending itself or exercising its

6  remedies in connection with the enforcement, the city's

7  enforcement of the sign laws in state court essentially that if

8  the city felt that it had a basis to issue a notice of

9  violation or permit nothing in that stay order prevented the

10  debtor from defending the claims of the city and defending

11  against the "allegations" that existed vis-a-vis the awfulness

12  of the signs.

13          The stay order simply allowed the city without the

14  existence of the automatic stay to enforce its police powers

15  and that order makes implicit as never before the Court that

16  the debtor was supposed to lie down and do nothing to protect

17  itself in the event it felt it was an appropriate -- the city's

18  actions were inappropriate under state law.  So we think that

19  that's an argument that does not have any merit.

20          Similarly, the consent order is even more explicit and

21  expressly reserved all of the debtor's rights to defend itself

22  against enforcement and to exercise whatever appropriate

23  remedies it had under state law to basically react to what the

24  city felt was their right to implement the sign laws.  And this

25  is a process that is adversarial.  In state law the -- under

1    state law, the city issues a violation, the debtor has a right

2    to defend it as the city -- if the city's issuance of a

3    violation under the debtor's belief is contrary to the sign

4    laws, the debtor has remedies under the CPLR and otherwise.

5    And that's really all that this is about.

6         THE COURT:  Well, the -- the ability of the debtor to

7    defend itself is a slightly different question than I think the

8    question posed by the application which is -- or at a minimum

9    includes the question whether the services were reasonably

10   likely to yield a benefit to the estate.

11        MR. KUSHNER:  Well, the city is arguing that the

12   consent order and the stay order either collectively or by

13   themselves eliminated the debtor's right to exercise the right

14   to seek a temporary injunction under, for example, CPLR 7805.

15   That's not, in the debtor's opinion, I think if Your Honor

16   looks at it, it couldn't poss -- it would be stretching the --

17   the meaning of those documents that the debtor was basically

18   walked into state court without arms and legs and couldn't

19   defend itself.  And essentially, what NBC services were in this

20   case was that the debtor felt that the city's issuance of a

21   work -- a stop work order did not comply with its own sign

22   laws.  The administrative requirements, I understand, is a

23   two -- two instances in which a stop work order can be issued.

24   One is that the debtor is operating an unlawful sign or that

25   the work that's involved poses a threat to the health, welfare,

1  safety of the public. And in neither of those cases, at least

2  in the debtor's view, did it exist in that circumstance where a

3  stop work order was appropriate.

4       NBC was called upon to the debtor to bring the

5  appropriate proceeding, an Article 78 proceeding, in state

6  court to adjudicate that issue whether or not it was an

7  appropriate action on behalf of the city to issue the stop work

8  order in that instance and also sought provisional relief as it

9  is allowed to do in an Article 78 proceeding under 7805 of the

10  CPLR.  So under the circumstances, I submit to Your Honor that

11  nothing before this Court was ever issued or contemplated that

12  would prevent the debtor from going in and defending itself

13  against what it perceived to be an excessive improper violation

14  of the city's enforcement rights.  That's why NBC was called

15  upon.

16       Second issue, Your Honor, was the withdrawal of the

17  Article 78 and I had a discussion with Mr. Horan, or my office

18  did last night, and even as a result of that discussion and my

19  conversations with Mr. Crystal, who's in the courtroom, what

20  happened here was that after the Article 78 was filed and they

21  were about to argue it, it was discovered that the issue -- the

22  factual basis became moot that the sign had already been

23  painted over and that the only thing that was prudent and

24  reasonable under the circumstances was for NBC to withdraw the

25  application because the application was moot as to the TRO

1    request and was not ripe as to the other issue.

2          So I think that NBC shouldn't be penalized for doing

3    what it -- what a reasonable attorney would have done.  It

4    should be commended for not belaboring the point and argue

5    what's unarguable.  So I don't think that that's a meritorious

6    objection.

7          And then the consent order, according to the city,

8    says that NBC couldn't be used at all by the debtor.  And I

9    submit to Your Honor that's not what the express language of

10   the consent order says.

11         What was contemplated in the consent order was that

12   there would not be an overlapping of professionals dealing with

13   various aspects of the sign laws or the process in which the

14   debtor's signs needed to go through in order to become lawful

15   or -- and you understand my point.

16         THE COURT:  Right.

17         MR. KUSHNER:  Bryan Cave undertook under that consent

18   order a large part of the administrative aspect of that

19   process.  NBC was still contemplated to do various litigation

20   work that would not be undertaken by Bryan Cave.  And the

21   express language of the consent order says that the debtor

22   would limit its use of NBC.

23         As an abundance of caution even before NBC was

24   actually utilized by the debtor, my office contacted Mr. Curtin

25   of the United States Trustee's office and Mr. Davis at the bank

1    to let him know that NBC was going to come in to do this and

2    they certainly did not express an objection to doing that.  We

3    didn't ask the city out of practical reasons, Your Honor,

4    because in this case we're not going to ask the city who we can

5    retain to engage in a legitimate litigation against the city.

6    So I mean it's not something that common sense would have

7    dictated their response.

8          So for all of those reasons, we think that the time

9    spent by NBC, and Mr. Noe is here, he's agreed that the

10   services were reasonable and necessary under the circumstances.

11   It's fair to let the Court know that the debtor does want to

12   pay these expenses.  There's been no objection by -- I mean

13   these fees and expenses and there's been no objection by other

14   parties-in-interest so we submit, Your Honor, that the fee

15   application should be granted and the city's objection be

16   overruled.

17         THE COURT:  All right.  Before we hear from the city,

18   I'd like to hear briefly from Mr. Curtin as to whether your

19   office as a position on this compensation request.

20         MR. CURTIN:  Your Honor -- excuse me -- William Curtin

21   for the United States Trustee.  We don't -- we don't have an

22   objection and I can confirm that I did have that conversation

23   with the debtor that the substance -- and just so everyone's

24   clear I did the -- when -- after the fact when the bill came

25   in, I did have a conversation with Mr. Climan(ph.) and also and

1  told him all this so this is all -- obviously, nothing was

2  hidden, at least from my end.

3        The issue was whether -- did the debtor acknowledge

4  that the consent order said -- it says what it says.  It says

5  "limit the use."  It doesn't say they can't use them it says

6  "limit the use."  And I think largely to this point they have

7  limited the use but the argument was that it would cost one

8  amount for Bryan Cave to do it and a much smaller amount of NBC

9  to do this particular -- this particular action.  So I said it

10  makes sense to me.  Reserving all rights, obviously, to object

11  to the fees but not objecting to the actual use of the NBC for

12  this action.  So bottom line is, we did have the conversation.

13  It was certainly not done surreptitiously or anything like that

14  and we don't have an objection with the application.

15        THE COURT:  I'd like your consent.  And I'll just say

16  at the outset that the dynamics of taking a position with

17  respect to an entity retaining counsel to be adverse to your

18  unusual dynamics but they inhere in the structure of this case.

19        MR. HORAN:  Your Honor, Mr. Kushner said that the

20  issue raised in the Article 78 petition was -- became moot and

21  once NBC realized that it decided to withdraw the petition.

22  That's not really the case or perhaps it's just a very generous

23  way of describing what happened.  In fact, the Article 78

24  petition was false, contained flat out misstatements.

25        Paragraph 3, and this is attached as Exhibit 1 to our

1  objection, paragraph 3 states that "The stop work order had the

2  effect of prohibiting OTR from performing work necessary to

3  replace the existing painted sign with a new painted sign."

4          The next paragraph it states, "The stop work order is

5  causing OTR irreparable harm by preventing it from discharging

6  its obligations to its clients to post advertising signage at

7  the premises."  In fact, the same day that the -- that the RJI

8  was filed along with this petition, OTR installed the sign that

9  it claimed it couldn't install.  So the entire predicate for

10 the Article 78 turns out not to be correct.

11         The Article 78 was nothing more than an effort by OTR

12 to shield its violation of the stop work order.  It wanted to

13 put the sign up, the stop work order said it couldn't put the

14 sign up and it did so anyway and then sought protection in

15 state court.  And the timeframe for this is important.

16         DOB issued the stop work order in September 2012.  OTR

17 didn't enter the agreement to install the sign until October,

18 the following -- over a month later.  And it wasn't until

19 February, four months after the issuance of the stop work

20 order, that OTR, in fact, installed the sign and then ran to

21 state court and sought protection so that it could leave the

22 sign up without fear of being in violation of a stop work order

23 or receiving notices of violation.

24         Indeed, the reply that the debtor submitted on this

25 fee application continues to make misstatements to the courts.

1  The reply states that the debtor entered the agreement in

2  September.  That's not the case.  It entered into the agreement

3  to install the sign in October, over a month after the stop

4  work order was issued.  So what we have here is another

5  instance of OTR, this is a year's long campaign that it's been

6  engaged in, to shield itself from enforcement by the city.  It

7  sought this relief in state court only after this bankruptcy

8  court said that the city could continue enforcing the sign

9  laws.

10        OTR had entered into this agreement in October.  In

11  December, it came to this Court and asked for relief -- asked

12  the Court to reinstitute the automatic stay.  This Court denied

13  that motion in January and then OTR installed the sign anyway

14  and asked the state court to protect it.

15        And again, this is -- this was the third order of this

16  Court finding that the city did enforce the sign laws.

17        On top of those orders, finding that there was no stay

18  on the city's enforcement, there's the consent order.  And this

19  Article 78 petition flies in the face of the consent order

20  which set up a process whereby the debtor agreed to make

21  submissions to the Department of Buildings, have DOB render

22  determinations, and if necessary and appropriate, take appeals

23  from those determinations.

24        The second part of the consent order, importantly,

25  specifically reserved the city's right to issue NOVs for

1    ongoing violations.  And what this Article 78 sought to do was

2    not only short-circuit the regulatory process of normalizing

3    the signs through DOB, but also to stay the issuance of NOVs

4    for the violation that OTR decided to create when it installed

5    the sign.

6          THE COURT:  In the absence of all the other agreements

7    and proceedings and orders, would this Article 78 proceeding be

8    the kind of thing that a sign enterprise like OTR might bring

9    in the ordinary course of its business?

10          MR. HORAN:  Your Honor, I can't speak to the ordinary

11    course of this typical sign business; I'm not familiar enough.

12    But it seems to me that when a stop work order is issued with

13    an intent to revoke a permit, the appropriate thing to do is to

14    abide by the stop work order and then challenge the permit

15    revocation.  I mean this permit has been revoked.  It was

16    revoked in February.  It was revoked right around the time when

17    this Article 78 was filed.  And I understand from counsel, told

18    me today, that that decision by DOB to revoke the permit is now

19    on appeal at BSA.  That's the appropriate process.  That's the

20    process that was envisioned in the consent order.  What the

21    consent order did not envision is OTR is disregarding entirely

22    the determinations of the Department of Buildings, installing

23    an illegal sign and then going to state court after this Court

24    didn't give it the relief it wanted, going to state court to

25    protect that after-the-fact violation.

1       The city's position is not that NBC cannot be used in

2   litigation.  We certainly read the consent order.  The plain

3   language says that NBC's use should be limited.  What that

4   means to us is that OTR is not entitled to continue its

5   campaign of endless litigation using an army of law firms to

6   try to shield itself from enforcement by the city.  And this

7   Article 78 is an example of just that and that's why fees

8   should not be awarded because this Article 78 given that it was

9   predicated on flat out falsehoods had no reasonable likelihood

10  of benefitting the debtor -- the estate.

11      THE COURT:  And what is the status of the Article 78?

12      MR. HORAN:  It's been withdrawn.  It was -- as soon as

13  the -- as it turned out that the contract was entered into only

14  after the stop work order was issued, number one.  And number

15  two that the sign had already been installed in violation of

16  the stop work order, the debtor's counsel voluntarily withdrew

17  the petition.

18      THE COURT:  Would others like to be heard on this?

19      MR. HORAN:  Thank you, Your Honor.

20      THE COURT:  Thank you very much.

21      No one's noted it in the record so I will just for a

22  sense of proportionality, it does seem that the amount of money

23  that we're looking at here is $5,749.73 and $70.86 in expenses

24  an amount that is probably already overcome by the costs the

25  parties have incurred in filing these papers and arguing.  Just

1  a bit of a reality check, my friends.

2       Mr. Kushner, let me hear your reply.

3       MR. KUSHNER:  Well, in response to that last

4  observation, Judge --

5       THE COURT:  Please correct me if I'm wrong but this --

6       MR. HORAN:  -- there's certainly been time and expense

7  spent in responding to it.  Certainly, if Mr. Crystal would

8  have done it himself I don't think he would have sought

9  compensation but that's not the protocol.  I'm debtor's

10 counsel.  I make the application.  He would be a witness.  But

11 honor be thy name, Judge, what's really at the root of this is

12 NBC is a well-respected highly capable law firm dealing

13 significantly in its practice in the sign law issues.

14      THE COURT:  Um-hum.

15      MR. KUSHNER:  So it would be a disincentive for NBC

16 counsel, debtor's counsel of choice in these matters, not to

17 work any further.  The easiest way to do that is to knock them

18 out on their face.  So I'm faced in the position as a

19 reasonable lawyer, what they would do under the circumstances

20 to say fight for those fees, the debtor wants to pay them, the

21 debtor wants to use these lawyers.  NBC will not work if it

22 can't get paid in a bankruptcy case and the city -- the debtor

23 would have lost its counsel of choice and the city would have

24 won a small part of this ongoing battle and that is it's

25 knocked out a competent adversary.  That's what's really behind

1  the response, Judge.

2          THE COURT:  And we do have the statement in the Arnold

3  declaration that NBC's experience and expertise in

4  litigation -- well, reflected in her view that NBC is in the

5  best position -- that language is quoted in your submission in

6  paragraph 3 to page 7 -- the best position to proceed -- I take

7  the point and in all events from this seat in the courtroom,

8  the dollars are not the issue and the same point of good case

9  management, I would be remiss if not to note them.

10         The question framed by this application is whether

11 this -- whether the applicable criteria for allowing an

12 expense, I have a net here, and those are not necessarily a

13 hindsight -- those do not invite necessarily a hindsight

14 measure although hindsight -- a tiny bit of hindsight may be

15 inevitable.  The question really should be whether at the time

16 the expenses incurred was it reasonably likely that the expense

17 would benefit the estate, was it necessary to the

18 administration of the estate.

19         I appreciate that you have focused on the

20 reasonableness or not of the outcome, whatever, of that Article

21 78 proceeding and whether it complied with -- was consistent

22 with the text or the spirit of various other orders in this

23 case including a consent order and the path we followed to get

24 to this point a difficult to clear but ultimately productive

25 path for all concerned, I think.  I'd like if anyone else with

 1    particular focus on that question of the standard whether these

 2    expenses were reasonable and likely to benefit the estate as

 3    assessed at the time they were incurred.  Mr. Kushner, also

 4    notes that I have counsel standing with an interest in

 5    speaking.

 6            MR. KUSHNER:  Well, I would --

 7            THE COURT:  I'll hear from whoever would like to go --

 8            UNIDENTIFIED SPEAKER:  I would --

 9            MR. KUSHNER:  -- be brief, Your Honor.  You have a

10    full courtroom.

11            THE COURT:  Thank you.

12            MR. KUSHNER:  Your Honor has, in fact, put the finger

13    on the appropriate standard.

14            What should be analyzed here was what was in Mr.

15    Crystal's mind when he was asked to do these things.  What did

16    he do?  He was told he believed that under applicable state law

17    after consultation with my office's bankruptcy counsel that he

18    had the right to go ahead and the duty to go ahead to file the

19    Article 78 to challenge the lawfulness of the city's work stop

20    order.

21            The work stop order was challenged on the basis that

22    at the time that the Article 78 was filed and prepared, there

23    had been no permit revocation which meant that the lawfulness

24    of the sign or the sign had not been declared "unlawful" and

25    secondarily that there was no indication that whatever work was

 1  to be done in terms of painting was a threat to the general

 2  welfare of the citizens of New York.

 3          He did not know at the time, Mr. -- I'm proffering but

 4  Mr. Crystal is here, he will tell you that he did not know at

 5  the time that the same day in an ordinary type of way not to

 6  cast any culpability on the debtor's actions that the sign

 7  hanger had gone through and changed the sign already.  Once he

 8  learned about that, that rendered one aspect of the Article 78,

 9  that is the immediate request for provisional relief,

10  inappropriate to continue, and he discontinued it.  And he had

11  no other basis at the time that he discontinued it to go

12  forward with the Article 78 altogether because the permit

13  revocation did not follow until days later.  So as it stands

14  now, the debtor does have a viable claim to challenge the work

15  stop order or the lawfulness of the permit revocation and

16  that's a story for the future.

17          But looking at this case in a vacuum, at the time that

18  Mr. Crystal was asked to do the work, there was a legitimate

19  basis under state law to seek the relief that the debtor

20  required under the circumstances.  The timeline meant nothing,

21  it means nothing, it's a red herring.  I stand by my papers.

22  At the time that Mr. Crystal put pen to paper, he believed that

23  the debtor had an absolute right to file the Article 78

24  proceeding and upon learning that what he had done really was

25  improper under the circumstances and that the relief could not

1  be obtained, he also did the reasonable thing.

2        Judging that under those conditions, under those

3  undisputed facts, he belong -- he deserved compensation in this

4  case.

5        THE COURT:  Mr. Horan, would you like to reply --

6  would you like to respond?

7        MR. HORAN:  Yes.  Yes, Your Honor.  The question is

8  not what was in Mr. Crystal's head when he was preparing these

9  papers, the question is whether this Article 78 was likely to

10 benefit the estate.  And the answer to that question is that it

11 was not because -- for two reasons.  First of all, and I think

12 Mr. Kushner was a little bit loose with the facts, this sign

13 was illegal when it was installed.  It was installed in

14 violation of the stop work order.  The debtor knew or should

15 have known then and, therefore, the debtor should never have

16 asked Mr. Crystal to bring the Article 78.

17       And secondly, the -- there was no irreparable harm

18 which was the entire basis for the -- for the petition, no

19 irreparable harm because the sign was already installed and the

20 debtor was complying with its contractual obligations, albeit

21 in violation of the law.

22       This Article 78 was withdrawn because there was no

23 basis for it.  It should never have been filed in the first

24 place.  And there should be no fees paid from the estate for

25 preparing and filing the Article 78.  And just to be clear,

1  this has nothing to do, this is not in any way a personal

2  attack on Mr. Crystal.  The city does not object to the use of

3  NBC in appropriate circumstances.  But there should be no fees

4  paid for an improper factually false court filing.

5         MR. KUSHNER:  Just to be clear, Your Honor, if you

6  look at the time records in the application for Mr. Crystal,

7  they were performed in January at the time that the sign had

8  not been replaced.  The sign was replaced in February.

9  February 1st, I believe, was the date that the sign was

10 replaced.  Okay.  By that time, the application had been filed

11 and the need for it to go further was mooted.  Mr. Crystal did

12 nothing wrong and the suggestion by the city otherwise is

13 alarming.

14        THE COURT:  All right.  Would anyone else like to be

15 heard?

16        MR. NOE:  Just briefly, also, also on the record

17 timeline.

18        The main issue that we had --

19        THE COURT:  Go get your microphone before you speak.

20 It'll make a better record.

21        MR. NOE:  I apologize, Your Honor.

22        THE COURT:  Thank you, very much.

23        MR. NOE:  All right.  The main issues that we had

24 which generated a need for this lawsuit was the fact that the

25 property owner, because of the stop work order, did not want

1    the sign to be replaced and that's created -- despite the
2    reference to a timeline, that created the need for this
3    litigation in order -- the stop work order itself was improper
4    in terms of -- as far as a delta painted sign which caused no
5    inherent immediate risk or danger, this was part of the
6    arguments, and we went through the proper channels beforehand
7    also which the city left out.  Phyllis Arnold did contact the
8    Department of Buildings and asked them to lift the stop work
9    order because it was improper.  Once we learnt that they would
10   not do that, that caused the need for a lawsuit which was then
11   mooted by the fact that the landlord relented and allowed us to
12   place a sign there.  And that's when it became moot.  That's
13   all I have to say on the timeline.

14           THE COURT:  All right.  Anything further from any
15   party?

16           I appreciate the arguments that both sides have made.
17   To me it's most important to come back -- to consider the
18   context in the bigger picture here but then come back to the
19   very specific question that is framed by this professional
20   compensation request as opposed to the Article 78 and all of
21   the orders that provide the context and background to the
22   party's arguments, also of interest to the Court.  And I think
23   that question is most importantly at the time that the work was
24   done on two days, January 30th, and January 31st in the context
25   that it was done was it an appropriate enterprise by this

1  professional on behalf of the debtor, was there a sensible and

2  a reasonable basis to proceed with the work, and I appreciate

3  that from the different perspectives you reached different

4  conclusions in good faith.  But from this perspective, I'm

5  inclined to conclude that the answer is yes.

6         While I take note of the fact that the facts were very

7  dynamic, quite dynamic, the situation was dynamic, I think it

8  would be a mistake to use hindsight or even the question of

9  whether the matter that was brought you, the Article 78

10  proceeding that was brought, turned out to be necessary to

11  continue to conclusion.  I would be reluctant to establish a

12  standard that somehow created a disincentive appropriately to

13  bring but then appropriately to withdraw a case because somehow

14  you have to stand your ground to get paid eventually.

15         I'm also mindful here as in so many other situations

16  that in a reorganization professionals do take a lot of risks

17  but the risks should be bounded by the framework that does

18  permit them to have an award of compensation and to be paid

19  that compensation as if amendments permitted under the Code and

20  the rules and subject to notice in all of the proceedings that

21  we've had here.

22         So it seems to me that at least in a general way the

23  objections that have been made more appropriately -- first of

24  all, are a good caution as to how decisions should be made as

25  to the work that is going to be in the interest of the debtor

1    whether the services are necessary to the administration

2    however beneficial of the time at which the service was

3    rendered toward the completion of the case under this Title 11

4    and Chapter 11 -- I'm citing the Korea Chosun Daily Times case

5    from 337 B.R. 758 at 765 through 66 a case familiar to some in

6    this courtroom including myself having written that decision, I

7    think the point the city has made are good reminders as to the

8    context of how that decision should be made but not sufficient

9    in this case to overcome the showing that the debtor has made

10   with respect to the time and circumstances, a situation that

11   was present when these fees were incurred.

12          That's a separate question and I need input from the

13   parties on this as to when and how these fees could actually be

14   paid.  And I realize that's often a different question with an

15   administrative cost, administrative expense.  Mr. Kushner, Mr.

16   Curtin, can I hear from you on that?

17          MR. KUSHNER:  Yes, Your Honor.  I happen to know by my

18   own directing party with Michael Eisenberg who is the debtor's

19   controller that there is a reserve set aside for the payment of

20   professionals including the two applications that are before

21   you on this calendar that have yet to argue today.  So the

22   money's there.  It's been budgeted all along.  Again, this is a

23   business model that relies heavily on professionals.  The cash

24   collateral orders that have been negotiated and submitted for

25   approval on the ones that have been approved contain what I

1  would call hefty allowances for professionals out of need and

2  the money's there.

3          This money, certainly, is not going to in any way

4  interfere with the operations of the debtor.  And again, I

5  didn't ask it specifically as to Mr. Crystal's application but

6  more so in the context of the larger applications that are also

7  before you today.

8          THE COURT:  Well, and there is a question of the

9  holdback that would be consistent with the terms of the

10 ordinary course professionals.

11         MR. KUSHNER:  There's an eighty percent --

12         THE COURT:  Eighty percent.  I do want to note, and I

13 said this from time to time in this case, though not terribly

14 recently, it bears repeating, a business model founded on

15 litigation with the city is not a business model that seems

16 likely to me to lead to a successful reorganization of this

17 enterprise.  And moving this enterprise onto a different track

18 has been, perhaps, the single most significant component over

19 this reorganization effort since this case was filed back in

20 2011.  So yes, professionals are important.

21         Is litigation a business strategy?  I hope not.  But

22 then that's not --

23         MR. KUSHNER:  The --

24         THE COURT:  -- for me to set the business strategy, in

25 the case.

1    MR. KUSHNER:  -- the lion's share of the fees in this

2    case have been dedicated towards the need for administrative

3    compliance putting forth the effort through lawyers of getting

4    the signs approved, permits approved, that's certainly Ms.

5    Arnold's -- the bulk of Ms. Arnold's work and my work is done

6    as the quarterback of the Chapter 11 case.  So I don't think

7    it's as much litigation as you think, Your Honor, but I

8    understand your point.

9    THE COURT:  All right.  I'm reminded of the -- of the

10   need to emphasize that, perhaps, by your observation that this

11   is a reorganization driven by the retention of professionals.

12   All right.  Mr. Curtin, with respect to payment, let

13   me hear from you.  Any objection to proceeding along the lines

14   set forth?

15   MR. CURTIN:  Your Honor, with respect to this

16   application, it's -- as you mentioned, I think with the

17   holdback it comes out to, what, 4 --

18   THE COURT:  Four thousand dollars.

19   MR. CURTIN:  -- 4,000.  They can afford it.  The

20   money's there.

21   THE COURT:  Right.  For all the reasons reflected in

22   the record, noting the merits of the arguments that came from

23   both sides and the lessons that I trust each and all of you is

24   drawing from all of them, the motion will be granted as

25   reflected in the record.  Please submit an appropriate proposed

 1  order.  If it's appropriate, just send it by Mr. Curtin's

 2  office for consent as to form since investments earn

 3  compensation --

 4          MR. CURTIN:  Thanks, Your Honor.

 5          THE COURT:  -- and he won't ask you to do that.

 6          All right.  And I will say in deciding this matter

 7  today on this record, I am motivated in significant part by the

 8  desire to keep a -- to have a single hearing in a matter that

 9  concerns only a few thousand dollars, it's real money to the

10  lawyers who would like to be paid.  I'm not saying I'd want

11  bigger fee applications but I don't -- I don't want you to

12  assume that it's a harbinger of how we're going to proceed with

13  respect to the other applications.

14          Where would you like to go next, Mr. Curtin -- I'm

15  sorry; Mr. Kushner.  Very -- Mr. Curtin, where would you like

16  to go next?  I apologize for my misspeaking again.

17          MR. CURTIN:  Well, if you want me to answer.

18          THE COURT:  Well, I'm always interested to hear the

19  position of your office.  But --

20          MR. KUSHNER:  I think --

21          THE COURT:  -- I'm wondering if it's appropriate to

22  give the parties --

23          MR. KUSHNER:  -- what's left are two fee applications,

24  Your Honor; one for Goetz Fitzpatrick and one for Bryan Cave.

25  Do you want to take those together or do you want to take those

1   separately?

2            THE COURT:  Well --

3            MR. KUSHNER:  They essentially involve the same

4   issues.

5            MR. CURTIN:  Well, I think -- if may, I think the

6   Bryan Cave one is settled.

7            THE COURT:  Let's start with the Bryan Cave one,

8   please.  Mr. Curtin?

9            MR. KUSHNER:  Was --

10           THE COURT:  Mr. Kushner, you'll let me hear the -- I

11   know there have been objections to those as well.  I hear -- as

12   to counsel whose applications have been determined, you're

13   welcome to stay but your free to go.

14           UNIDENTIFIED SPEAKER:  Thank you.

15           THE COURT:  You may be excused.  Please proceed.

16           MR. KUSHNER:  Can I just consult with Ms. Arnold --

17           THE COURT:  Yes, you may.

18           MR. KUSHNER:  -- because this is -- okay, so dealing

19   with Bryan Cave, Your Honor, Bryan Cave has submitted its first

20   interim fee application seeking fees in the amount of

21   $156,422.25 and reimbursement of disbursements in the amount of

22   $1,190.11 for a total request of $157,612.36.  There was one

23   objection filed by the Office of the United States Trustee

24   which I understand from Ms. Arnold has been now resolved with

25   the agreement between -- with the Bryan Cave law firm to accept

1    a sixty percent allowance and forty percent holdback on fees

2    and a hundred percent on disbursements.  I don't have the

3    numbers because I just learned about it right now.

4          THE COURT:  All right.  Mr. Curtin, let me hear from

5    you.  I have your objection; your office's objection.

6    Identifies some important issues.  It sounds like they've been

7    resolved with a productive compromise and I'm grateful to hear

8    that.  Let me hear from you.

9          MR. CURTIN:  Thank you, Your Honor.  And I do want to

10   put something on the record.

11         I think this -- both objections, the objection to

12   Goetz Fitzpatrick objection and the Bryan Cave objection.  As I

13   tried to make clear both in the papers and in subsequent

14   conversations were really based upon timing and economics.  The

15   timing being that we're close to confirmation and the economics

16   being that from our point of view, such a large expense at this

17   point in the case wouldn't be a prudent way to proceed.  But

18   since we're on Bryan Cave, I think it's clear that Bryan Cave

19   and Ms. Arnold's services in this case have brought some order

20   to what was a rather chaotic situation.  So the objection

21   really is not -- is not a reflection on the services that she

22   and her firm rendered.  It's purely an economic/timing issue.

23   So for those reasons, we had a conversation before the hearing

24   and agreed that a sixty percent allowance at this point with

25   all rights reserved on both sides to the final hearing to seek

1  the rest and then whatever -- whatever else is incurred between
2  when this application ends and confirmation.  So I think it
3  makes sense, I think it's something that the debtor can afford
4  to pay out without leaving it with a very small amount of money
5  in the bank.  And I think that based upon the circumstances in
6  the case and in the interest of case management, it's a prudent
7  way to proceed at this point.

8          THE COURT:  All right.  Would anyone else like to be
9  heard?  No response.  I note also that the work done by Ms.
10 Arnold and by the firm has been significant in the case and I
11 appreciate the points made to put in context the objection that
12 the Office of the United States Trustee focused on the issues
13 as you've indicated.

14         For all the reasons reflected in the record, the
15 application, the compensation for Bryan Cave as modified
16 consensually on the record will be granted.  I'll ask you to
17 submit a proposed order as reflected in the record and again
18 with review as to form by Mr. Curtin's office.  All right?  Mr.
19 Kushner.

20         MR. KUSHNER:  Yes, that brings us to Goetz Fitz's --
21 Goetz Fitzpatrick's, rather, fee application.

22         THE COURT:  Yes.

23         MR. KUSHNER:  This is the third interim fee
24 application of the firm as debtor's counsel.  It covers the
25 period July 1st, 2012 for the seven month period ending January

1    31st, 2013.  It seeks 164,950 in fees and $1,008.25 in

2    reimbursement of disbursements for a total request of

3    $165,958.25.  The debtor has had -- the counsel has had one

4    objection by the Office of the United States Trustee and there

5    was a reply filed by -- by the applicants.  And, again, I

6    learned of the sixty percent offer this morning and I don't

7    think that it's unfair or fair but Goetz Fitzpatrick does have

8    a little bit of a different situation than -- than Bryan Cave.

9           Again, this is the third application.  There are prior

10   holdbacks in this case of a substantial amount of money.  I

11   believe it's about 65,000 dollars.  Even a twenty percent

12   reduction holdback here would result in production of over a

13   hundred thousand dollars for fees.

14          I do appreciate very much the role of Mr. Curtin

15   personally and the Office of the United States Trustee.  I put

16   in what I felt was a legitimate reply in dealing with the law.

17   And I do respect his point about -- about the payment concern,

18   about the monies that are available to pay the expenses of this

19   estate at this time.

20          As I said to the Court before in response to another

21   question, those monies are set aside and I think that a forty

22   percent reduction is extreme at this point.  I'm certainly

23   willing to listen to a more reasonable number.  There's been no

24   challenge at all to the reasonableness of our fees.  As I

25   understand the main convention of the United States Trustee is

1    that according to his analysis, the estate can't pay for it.

2    Our firm has never and I have never put a debtor in the

3    situation of making sure that our fees are paid over the -- at

4    the expense of any other creditor of this case.  There has been

5    not one creditor come to this court in the course of this

6    entire Chapter 11 case that's complained that they haven't been

7    paid.  Again, these monies are set aside.  The payment of

8    allowed fees at the appropriate time as cash flow permits will

9    not interfere with the operations of this debtor.

10           And again, I think that the forty percent haircut

11   given the prior holdbacks and what have you, doesn't comport

12   with the law.  It doesn't comport with the facts of this case.

13   These expenses have been budgeted, approved by the lender and I

14   submit that, Your Honor, that a different -- slightly

15   different, not a greater difference, I'm not asking for a

16   hundred percent of the fees, I'm certainly willing to bend, but

17   I don't think that forty percent is appropriate.

18           THE COURT:  Mr. Kushner, I take all the points that

19   you make and I appreciate them.  I think this is one of the

20   matters that comes rather directly within the discretion of the

21   Court within a reasonable range.  I'd like to hear from others.

22   I only have submissions, of course, from the United States

23   Trustee.  Any other responses?  No response.

24           Here's my question for you.  As I do my best to make a

25   sensible determination here, why isn't the percentage that was

1  appropriate in the Bryan Cave situation not appropriate here?

2  MR. KUSHNER: I guess they're -- they've made -- you'd

3  have to ask Bryan Cave why -- why -- I think what I'm hearing

4  is that, from Ms. Arnold, was that there was no prior holdback,

5  that this is the first application. And from the fact that

6  this is something that they're prepared to do business-wise,

7  maybe they have a bigger firm in terms of the numbers of

8  revenues, we have a thirty-man firm. If Your Honor were to

9  just award these fees at a 20 percent level which has been

10  protocol in this case so far, and again, it's not something

11  that I've said is the number that needs to be paid here, I'm

12  still out a hundred percent -- over 100,000 dollars of having

13  financed that work throughout a year-and-a-half worth of work.

14  I think that that puts us on a different track than special

15  counsel.

16  THE COURT: Right. How much has been paid?

17  MR. KUSHNER: I can --

18  THE COURT: If the holdback has been -- how much is

19  the holdback up to at this point?

20  MR. KUSHNER: There's been a substantial amount paid.

21  I can give you some --

22  THE COURT: There has been a substantial amount paid

23  and I think those numbers are part of the equation. Mr.

24  Curtin, I think had a reply. Why I take it and if memory

25  serves, we are taking out of the holdback from twenty to forty

 1  percent.  What testifies that difference at this stage?

 2          MR. CURTIN:  Well, there's a couple things, Your

 3  Honor.  One is the fact that we are very, very close to

 4  confirmation and I think that clearly that the case law and the

 5  Code is consistent in the observation that the final -- the

 6  final fee application is the best time to consider fee

 7  application.  Certainly, interims are part of the process and

 8  we're not disputing that, obviously.  There have been several

 9  interim orders already.

10          But the bigger issue, as I mentioned on the -- in the

11  context of the Bryan Cave application is this debtor has to get

12  to confirmation and this debtor has to have somewhat of a

13  cushion, a cash cushion, an operational cushion in order to --

14  confirmation is not -- is not going to be easy here and for it

15  to be possible at all, we got to do everything we can to have

16  this debtor in a sound financial position come a month-and-a-

17  half from now. So that's where the issue of the larger holdback

18  comes from.

19          And I think the holdback itself is somewhat --

20  somewhat of a red herring because in some cases, Your Honor,

21  we'll ask for a larger holdback because, say, looking at the

22  applications, we anticipate having objections to more than

23  twenty percent of the fees so we don't want to get into a

24  disgorgement situation.  That's not the case here.  It's more a

25  case of economically how much -- from our point of view,

1  understanding it's only one point of view, but from our point

2  of view, how much prudently should go out the door at this

3  point.  And it's a balancing test.

4          Obviously, the -- no one's disputing that Mr.

5  Kushner's firm's done work in this case.  Done a lot of work in

6  the case.  And that's got to be balanced against what -- we're

7  not up here saying that they shouldn't get anything.  We got to

8  balance that against what is in from our point of view in the

9  interest of this debtor at this point in time, a month-and-a-

10  half away from what's going to be a challenging confirmation

11  hearing.  So that's where -- how we arrived at the number

12  and --

13          THE COURT:  Close to the end of the road --

14          MR. CURTIN:  -- so that's -- at this point, I just --

15          THE COURT:  -- wise to have a reserve.

16          MR. CURTIN:  Right.

17          MR. KUSHNER:  And there is a reserve.  There still is

18  a reserve.

19          THE COURT:  An incremental reserve.  I take the point,

20  Mr. Kushner.  I take the point, Mr. Curtin.

21          All right.  I am -- this is the last matter we have in

22  this case.  Is that right?  I would like a very short break.

23  I'm going to think about this for a moment.  I'll come back and

24  give you a ruling.  You can confer.  If you work it out, so

25  much the better.

1          Ms. Jackson can also use the opportunity to sequence

2    as efficiently as possible how we're going to move through the

3    next matters in the calendar to get you in and out as promptly

4    as possible.  All right.  Thank you very much.

5          THE CLERK:  All rise.

6      (Recess from 12:53 p.m. until 1:12 p.m.)

7          THE COURT:  Thank you.  Please be seated.  Is there

8    anything that anyone would like to add to the record with

9    respect to the compensation issue as to Goetz Fitzpatrick?  I

10   take it the request from the debtor is that there'd be an

11   approval at a level of a twenty percent holdback on fees and

12   none on expenses.  The request of the United States Trustee is

13   for the reasons indicated including our proximity to

14   confirmation and desirability of having a -- some kind of a bit

15   of a funding reserve that the holdback be forty percent, not

16   twenty percent.  Is that -- have I correctly summarized the

17   positions of the parties?

18         MR. CURTIN:  Yes, Your Honor.

19         MR. KUSHNER:  Yes, Your Honor.

20         THE COURT:  Appreciating that this is a matter that is

21   committed to the Court's sound discretion and that a

22   decision is -- a decision that is a sensible decision is at

23   least as important as continuing this to another hearing so

24   that I can reflect further and review all the cases, I'm going

25   to grant the application and provide for a thirty percent

1  holdback which not only is mid-point between your two positions
2  but to me a sensible assessment of the merits of the arguments
3  that you each make and -- so that's -- that's where we're going
4  to end up.
5          All right.  Please submit an appropriate proposed
6  order and do we have a next date, Mr. Kushner, or do we need to
7  find a next date?
8          MR. KUSHNER:  Right.  We need a new --
9          MR. CURTIN:  Yes.  Confirmation hearing.
10          THE COURT:  I think we do.  How far out in the future
11  shall we look?
12          MR. KUSHNER:  I think just the first week in May --
13          MR. CURTIN:  That first week in May.
14          MR. KUSHNER:  -- second week in May.
15          THE COURT:  All right.
16          MR. CURTIN:  Something between a week and two weeks,
17  if you have, would be perfect.
18          THE COURT:  Okay.  First week of May, week of May 6th,
19  first week of May depending on how you measure it could be as
20  soon as May 2nd.
21          MR. KUSHNER:  I have the 8th and 9th available.  I
22  don't know what Your Honor's availability and the 14th and 15th
23  available.
24          THE COURT:  I think the morning of the 9th should
25  work.  I think the morning of the 9th should work.

1          MR. KUSHNER:  Thursday?

2          THE COURT:  9:30 on Thursday the 9th?

3          MR. CURTIN:  May 9th at 9:30?

4          THE COURT:  Yes.

5          MR. CURTIN:  Yes.

6          MR. KUSHNER:  Thank you, Your Honor.

7          THE COURT:  Thank you.

8          MR. KUSHNER:  And Your Honor should be looking for the

9    final disclosure statement and an order.  So --

10          THE COURT:  We shall look with great interest for

11    those to be filed.  Thank you very much.

12          MR. KUSHNER:  Thank you.

13          THE COURT:  Anything further?  Thank you very much.

14          MR. KUSHNER:  Thank you.

15          THE COURT:  Thank you all.

16        (Whereupon these proceedings were concluded at 1:14 PM)

17

18

19

20

21

22

23

24

25

1

2                              **I N D E X**

3

4                              RULINGS

5                                              Page      Line

6    NBC compensation order approved              34        24

7    Fee application and compensation for Bryan   38        16

8    Cave approved

9    Third interim fee application for Goetz      44        25

10   Fitzpatrick approved with a thirty percent

11   holdback

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                    C E R T I F I C A T I O N

3

4    I, Ellen S. Kolman, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7              *Ellen S. Kolman*

8

9    _____

10   ELLEN S. KOLMAN

11   AAERT Certified Electronic Transcriber (CET**D-568)

12

13

      eScribers

14

      700 West 192nd Street, Suite #607

15

      New York, NY 10040

16

17

      Date:  June 5, 2013

18

19

20

21

22

23

24

25

| 24:25 | 26:14 | 15:18 |
|---|---|---|

## $

**$1,008.25 (1)**
39:1
**$1,190.11 (1)**
36:22
**$156,422.25 (1)**
36:21
**$157,612.36 (1)**
36:22
**$165,958.25 (1)**
39:3
**$5,749.73 (2)**
12:21;23:23
**$70.86 (2)**
12:21;23:23

## A

**abide (2)**
10:6;22:14
**ability (1)**
15:6
**absence (1)**
22:6
**absolute (1)**
27:23
**abundance (1)**
17:23
**accept (1)**
36:25
**accommodating (1)**
8:1
**according (2)**
17:7;40:1
**acknowledge (1)**
19:3
**action (1)**
16:7;19:9,12
**actions (2)**
14:18;27:6
**actual (1)**
19:11
**actually (3)**
7:24;17:24;32:13
**add (2)**
10:9;44:8
**addressing (1)**
13:21
**adjudicate (1)**
16:6
**adjudications (1)**
7:18
**administration (2)**
25:18;32:1
**administrative (8)**
7:11,17;9:11;
15:22;17:18;32:15,
15;34:2
**adversarial (1)**
14:25
**adversary (1)**

**adverse (1)**
19:17
**advertising (1)**
20:6
**advise (1)**
9:22
**afford (2)**
34:19;38:3
**after-the-fact (1)**
22:25
**again (11)**
6:9;21:15;32:22;
33:4;35:16;38:17;
39:5,9;40:7,10;41:10
**against (6)**
14:11,22;16:13;
18:5;43:6,8
**agencies (1)**
9:11
**agreed (2)**
7:9;18:9;21:20;
37:24
**agreement (6)**
7:8;20:17;21:1,2,
10;36:25
**agreements (1)**
22:6
**ahead (2)**
26:18,18
**alarming (1)**
29:13
**albeit (1)**
28:20
**allegations (1)**
14:11
**allowance (2)**
37:1,24
**allowances (1)**
33:1
**allowed (4)**
14:13;16:9;30:11;
40:8
**allowing (1)**
25:11
**along (4)**
12:21;20:8;32:22;
34:13
**although (1)**
25:14
**altogether (3)**
13:19;14:1;27:12
**always (1)**
35:18
**amendments (1)**
31:19
**amount (10)**
19:8,8;23:22,24;
36:20,21;38:4;
39:10;41:20,22
**analysis (1)**
40:1
**analyzed (1)**

**anticipate (1)**
42:22
**apologize (2)**
29:21;35:16
**appeal (1)**
22:19
**appeals (1)**
21:22
**appearances (1)**
6:7
**applicable (2)**
25:11;26:16
**applicants (1)**
39:5
**application (31)**
6:4,5;7:17;11:9;
12:22;13:7,14,16;
15:8;16:25,25;
18:15;19:14;20:25;
24:10;25:10;29:6,
10;33:5;34:16;
36:20;38:2,15,21,24;
39:9;41:5;42:6,7,11;
44:25
**applications (7)**
32:20;33:6;35:11,
13,23;36:12;42:22
**appreciate (5)**
25:19;30:16;31:2;
38:11;39:14;40:19
**Appreciating (1)**
44:20
**appropriate (23)**
7:18;8:24;10:6;
13:14;14:17,22;16:3,
5,7;21:22;22:13,19;
26:13;29:3;30:25;
34:25;35:1,21;40:8,
17;41:1,1;45:5
**appropriately (3)**
31:12,13,23
**approval (3)**
8:5;32:25;44:11
**approved (6)**
7:24;8:16;32:25;
34:4,4;40:13
**April (2)**
8:12;9:4
**argue (3)**
16:21;17:4;32:21
**arguing (2)**
15:11;23:25
**argument (2)**
14:19;19:7
**arguments (5)**
30:6,16,22;34:22;
45:2
**Ari (1)**
5:12
**Ariel (2)**
6:22,22
**arms (1)**

**army (1)**
23:5
**Arnold (12)**
6:24,25,25;7:12,
14;9:15;25:2;30:7;
36:16,24;38:10;41:4
**Arnold's (3)**
34:5,5;37:19
**around (2)**
12:24;22:16
**arrived (1)**
43:11
**Article (29)**
12:25;13:4;16:5,9,
17,20;19:20,23;
20:10,11;21:19;22:1,
7,17;23:7,8,11;
25:20;26:19,22;27:8,
12,23;28:9,16,22,25;
30:20;31:9
**aside (3)**
32:19;39:21;40:7
**aspect (2)**
17:18;27:8
**aspects (1)**
17:13
**assessed (1)**
26:3
**assessment (1)**
45:2
**associated (1)**
8:7
**assume (1)**
35:12
**attached (1)**
19:25
**attack (1)**
29:2
**attention (1)**
8:14
**attorney (2)**
13:12;17:3
**Attorneys (4)**
4:3,11,19;5:3
**automatic (3)**
14:4,14;21:12
**availability (1)**
45:22
**available (3)**
39:18;45:21,23
**Avenue (1)**
4:12
**award (2)**
31:18;41:9
**awarded (2)**
13:3;23:8
**away (1)**
43:10
**awfulness (1)**
14:11

## B

**back (4)**
30:17,18;33:19;
43:23
**background (1)**
30:21
**balance (1)**
43:8
**balanced (1)**
43:6
**balancing (1)**
43:3
**Bank (7)**
4:11;6:17;7:8;
10:12,15;17:25;38:5
**bankruptcy (3)**
21:7;24:22;26:17
**based (2)**
37:14;38:5
**basically (2)**
14:23;15:17
**basis (13)**
7:13;12:7,9;13:12,
18;14:8;16:22;
26:21;27:11,19;
28:18,23;31:2
**battle (2)**
7:10;24:24
**bears (1)**
33:14
**became (4)**
13:16;16:22;
19:20;30:12
**become (1)**
17:14
**beforehand (1)**
30:6
**behalf (3)**
13:21;16:7;31:1
**behind (1)**
24:25
**belaboring (1)**
17:4
**belief (2)**
10:20;15:3
**belong (1)**
28:3
**bend (1)**
40:16
**beneficial (1)**
32:2
**benefit (4)**
15:10;25:17;26:2;
28:10
**benefitting (1)**
23:10
**best (4)**
25:5,6;40:24;42:6
**better (2)**
29:20;43:25
**bigger (4)**

30:18;35:11;41:7;
42:10
**bill (1)**
    18:24
**bit (7)**
    8:21;9:2;24:1;
    25:14;28:12;39:8;
    44:14
**both (5)**
    30:16;34:23;
    37:11,13,25
**bottom (1)**
    19:12
**bounded (1)**
    31:17
**BR (1)**
    32:5
**break (1)**
    43:22
**BRIAN (2)**
    4:23;6:12
**brief (2)**
    10:13;26:9
**briefing (1)**
    12:24
**briefly (3)**
    9:9;18:18;29:16
**bring (5)**
    8:14;16:4;22:8;
    28:16;31:13
**brings (1)**
    38:20
**Brooklyn (1)**
    5:6
**brought (4)**
    9:16;31:9,10;
    37:19
**Bryan (19)**
    6:5,25;17:17,20;
    19:8;35:24;36:6,7,
    19,19,25;37:12,18,
    18;38:15;39:8;41:1,
    3;42:11
**BSA (1)**
    22:19
**budget (2)**
    7:9;10:16
**budgeted (2)**
    32:22;40:13
**Buildings (3)**
    21:21;22:22;30:8
**bulk (1)**
    34:5
**BURNBAUM (6)**
    4:2;6:21;11:9,11;
    12:3,8
**business (7)**
    22:9,11;32:23;
    33:14,15,21,24
**business-wise (1)**
    41:6

# C

**Cadman (1)**
    5:4
**calen (1)**
    11:19
**calendar (10)**
    6:2;7:7;8:23;11:6,
    14,20,22;12:13;
    32:21;44:3
**call (2)**
    13:8;33:1
**called (2)**
    16:4,14
**came (3)**
    18:24;21:11;34:22
**campaign (2)**
    21:5;23:5
**can (14)**
    7:14;15:23;18:4,
    22;32:16;34:19;
    36:16;38:3;41:17,
    21;42:15;43:24;
    44:1,24
**Canal (1)**
    12:25
**capable (1)**
    24:12
**care (1)**
    11:2
**Carmine (2)**
    9:14,25
**case (38)**
    8:10;13:10;15:20;
    18:4;19:18,22;21:2;
    24:22;25:8,23;
    27:17;28:4;31:13;
    32:3,4,5,9;33:13,19,
    25;34:2,6;37:17,19;
    38:6,6,10;39:10;
    40:4,6,12;41:10;
    42:4,24,25;43:5,6,22
**cases (3)**
    16:1;42:20;44:24
**cash (5)**
    7:9;10:14;32:23;
    40:8;42:13
**cast (1)**
    27:6
**caused (2)**
    30:4,10
**causing (1)**
    20:5
**caution (2)**
    17:23;31:24
**Cave (19)**
    6:5;7:1;17:17,20;
    19:8;35:24;36:6,7,
    19,19,25;37:12,18,
    18;38:15;39:8;41:1,
    3;42:11
**certainly (11)**

10:6;18:2;19:13;
23:2;24:6,7;33:3;
34:4;39:22;40:16;
42:7
**certifications (1)**
    8:22
**challenge (4)**
    22:14;26:19;
    27:14;39:24
**challenged (1)**
    26:21
**challenging (1)**
    43:10
**chance (1)**
    10:4
**changed (1)**
    27:7
**changeover (1)**
    12:14
**channels (1)**
    30:6
**chaotic (1)**
    37:20
**Chapter (3)**
    32:4;34:6;40:6
**check (1)**
    24:1
**choice (2)**
    24:16,23
**Chosun (1)**
    32:4
**Church (1)**
    4:20
**circumstance (1)**
    16:2
**circumstances (9)**
    16:10,24;18:10;
    24:19;27:20,25;
    29:3;32:10;38:5
**citing (1)**
    32:4
**citizens (1)**
    27:2
**CITY (35)**
    4:18,19;6:13,13;
    7:10,19;8:2;9:12;
    10:6;13:1,11;14:8,
    10,13,24;15:1,2,11;
    16:7;17:7;18:3,4,5,
    17;21:6,8,16;23:6;
    24:22,23;29:2,12;
    30:7;32:7;33:15
**city's (14)**
    13:2,21,23,24;
    14:6,17;15:2,20;
    16:14;18:15;21:18,
    25;23:1;26:19
**claim (1)**
    27:14
**claimed (1)**
    20:9
**claims (1)**
    14:10

**clear (6)**
    18:24;25:24;
    28:25;29:5;37:13,18
**clearly (1)**
    42:4
**CLERK (2)**
    6:2;44:5
**clients (1)**
    20:6
**Climanph (1)**
    18:25
**close (3)**
    37:15;42:3;43:13
**Code (3)**
    8:19;31:19;42:5
**collateral (3)**
    7:9;10:14;32:24
**collectively (1)**
    15:12
**commended (1)**
    17:4
**comment (1)**
    10:14
**comments (4)**
    7:22,23;8:2,16
**committed (1)**
    44:21
**common (1)**
    18:6
**compensated (1)**
    13:12
**compensation (13)**
    6:3,4;11:12;13:2;
    18:19;24:9;28:3;
    30:20;31:18,19;
    35:3;38:15;44:9
**competent (1)**
    24:25
**complained (1)**
    40:6
**completion (1)**
    32:3
**compliance (3)**
    9:10,16;34:3
**complied (1)**
    25:21
**comply (1)**
    15:21
**complying (1)**
    28:20
**component (1)**
    33:18
**comport (2)**
    40:11,12
**compromise (1)**
    37:7
**concern (1)**
    39:17
**concerned (1)**
    25:25
**concerns (1)**
    35:9
**conclude (1)**

31:5
**concluded (1)**
    46:16
**conclusion (1)**
    31:11
**conclusions (1)**
    31:4
**conditionally (1)**
    7:24
**conditions (1)**
    28:2
**conducted (1)**
    9:18
**confer (1)**
    43:24
**confirm (1)**
    18:22
**confirmation (13)**
    8:5,7,9,20;9:5;
    37:15;38:2;42:4,12,
    14;43:10;44:14;45:9
**connection (1)**
    14:6
**consensual (1)**
    13:9
**consensually (1)**
    38:16
**consent (25)**
    9:12,14,21;10:7;
    13:8,19,22,25;14:20;
    15:12;17:7,10,11,17,
    21;19:4,15;21:18,19,
    24;22:20,21;23:2;
    25:23;35:2
**consider (2)**
    30:17;42:6
**consistent (3)**
    25:21;33:9;42:5
**consult (1)**
    36:16
**consultation (1)**
    26:17
**contact (1)**
    30:7
**contacted (1)**
    17:24
**contain (1)**
    32:25
**contained (1)**
    19:24
**contemplated (3)**
    16:11;17:11,19
**contention (1)**
    13:24
**contested (1)**
    11:8
**context (7)**
    30:18,21,24;32:8;
    33:6;38:11;42:11
**continue (6)**
    7:9;12:15;21:8;
    23:4;27:10;31:11
**continues (2)**

7:6;20:25
**continuing (1)**
44:23
**contract (1)**
23:13
**contractual (1)**
28:20
**contrary (1)**
15:3
**contravened (1)**
13:24
**contravenes (1)**
13:4
**controller (1)**
32:19
**convention (1)**
39:25
**conversation (4)**
18:22,25;19:12;
37:23
**conversations (2)**
16:19;37:14
**convert (1)**
13:10
**copy (2)**
9:17,20
**copying (1)**
8:17
**correctly (1)**
44:16
**cost (2)**
19:7;32:15
**costs (1)**
23:24
**Counsel (15)**
4:3;11:2;19:17;
22:17;23:16;24:10,
16,16,23;26:4,17;
36:12;38:24;39:3;
41:15
**couple (1)**
42:2
**course (7)**
7:19;12:7;22:9,11;
33:10;40:5,22
**COURT (112)**
6:6,11,14,24;7:2,
10,11;8:11;9:1,6,22,
24;10:3,8,12,17,21,
23;11:11,14,19,22,
25;12:2,6,12,13,14,
14,17,19;13:6,15,20;
14:3,7,15;15:6,18;
16:6,11;17:16;18:11,
17;19:15;20:15,21;
21:7,8,11,12,12,14,
16;22:6,23,23,24;
23:11,18,20;24:5,14;
25:2;26:7,11;28:5;
29:4,14,19,22;30:14,
22;33:8,12,24;34:9,
18,21;35:5,18,21;
36:2,7,10,15,17;

37:4;38:8,22;39:20;
40:5,18,21;41:16,18,
22;43:13,15,19;44:7,
20;45:10,15,18,24;
46:2,4,7,10,13,15
**courtroom (4)**
16:19;25:7;26:10;
32:6
**courts (1)**
20:25
**Court's (2)**
7:16;44:21
**covers (1)**
38:24
**CPLR (3)**
15:4,14;16:10
**create (1)**
22:4
**created (3)**
30:1,2;31:12
**creditor (2)**
40:4,5
**criteria (1)**
25:11
**CRYSTAL (18)**
4:2,7;6:20,21,21;
11:9,12;12:3,8;
16:19;24:7;27:4,18,
22;28:16;29:2,6,11
**Crystal's (3)**
26:15;28:8;33:5
**culpability (1)**
27:6
**current (1)**
7:5
**CURTIN (35)**
5:8;6:18,18;8:24;
9:24;10:9,10;17:24;
18:18,20,20;32:16;
34:12,15,19;35:4,14,
15,17;36:5,8;37:4,9;
39:14;41:24;42:2;
43:14,16,20;44:18;
45:9,13,16;46:3,5
**Curtin's (3)**
8:14;35:1;38:18
**cushion (3)**
42:13,13,13

## D

**Daily (1)**
32:4
**danger (1)**
30:5
**date (9)**
8:9,9,12,24;9:4,6;
29:9;45:6,7
**dated (1)**
13:6
**dates (2)**
8:7,21
**DAVIS (5)**

4:15;6:15,15;
10:13;17:25
**day (2)**
20:7;27:5
**days (3)**
8:19;27:13;30:24
**days' (1)**
8:20
**day-to-day (1)**
7:13
**deal (1)**
7:21
**dealing (5)**
7:18;17:12;24:12;
36:18;39:16
**dealings (1)**
9:11
**Debtor (51)**
4:3;6:10,23;7:5;
9:19;10:16;13:20,
25;14:5,10,16;15:1,
4,6,17,20,24;16:4,
12;17:8,21,24;18:11,
23;19:3;20:24;21:1,
20;23:10;24:20,21,
22;27:14,19,23;
28:14,15,20;31:1,25;
32:9;33:4;38:3;39:3;
40:2,9;42:11,12,16;
43:9;44:10
**debtor's (17)**
9:13;11:1;12:5,5;
13:7;14:21;15:3,13,
15;16:2;17:14;
23:16;24:9,16;27:6;
32:18;38:24
**December (1)**
21:11
**decided (2)**
19:21;22:4
**deciding (1)**
35:6
**decision (6)**
22:18;32:6,8;
44:22,22,22
**decisions (1)**
31:24
**declaration (1)**
25:3
**declared (1)**
26:24
**dedicated (1)**
34:2
**default (1)**
9:22
**defend (4)**
14:21;15:2,7,19
**defending (4)**
14:5,10,10;16:12
**delays (1)**
8:1
**delta (1)**
30:4

**denied (2)**
13:6;21:12
**denying (1)**
14:3
**DEPARTMENT (6)**
4:18;5:2;6:13;
21:21;22:22;30:8
**depending (1)**
45:19
**described (1)**
12:19
**describing (2)**
9:7;19:23
**deserved (1)**
28:3
**designated (1)**
9:15
**desirability (1)**
44:14
**desire (1)**
35:8
**despite (1)**
30:1
**determination (1)**
40:25
**determinations (3)**
21:22,23;22:22
**determined (1)**
36:12
**dictated (1)**
18:7
**difference (2)**
40:15;42:1
**different (10)**
7:19;15:7;31:3,3;
32:14;33:17;39:8;
40:14,15;41:14
**difficult (1)**
25:24
**directing (1)**
32:18
**directly (1)**
40:20
**disbursements (3)**
36:21;37:2;39:2
**discharging (1)**
20:5
**disclos (1)**
8:6
**disclosure (3)**
7:23;8:5;46:9
**discontinued (3)**
13:13;27:10,11
**discovered (1)**
16:21
**discretion (2)**
40:20;44:21
**discussed (1)**
8:23
**discussion (2)**
16:17,18
**disgorgement (1)**
42:24

**disincentive (2)**
24:15;31:12
**dismiss (1)**
13:10
**disputes (1)**
13:25
**disputing (2)**
42:8;43:4
**disregarding (1)**
22:21
**DOB (6)**
9:11,18;20:16;
21:21;22:3,18
**docket (1)**
11:25
**document (1)**
8:4
**documents (1)**
15:17
**dollars (6)**
25:8;34:18;35:9;
39:11,13;41:12
**done (13)**
10:23,24;17:3;
19:13;24:8;27:1,24;
30:24,25;34:5;38:9;
43:5,5
**door (1)**
43:2
**down (2)**
10:23;14:16
**drawing (1)**
34:24
**driven (1)**
34:11
**drop (1)**
8:15
**during (1)**
10:15
**duty (1)**
26:18
**dynamic (3)**
31:7,7,7
**dynamics (2)**
19:16,18

## E

**early (1)**
8:18
**earn (1)**
35:2
**easiest (1)**
24:17
**East (2)**
4:4;5:4
**easy (1)**
42:14
**ECF (2)**
11:16,22
**economic/timing (1)**
37:22
**economically (1)**

42:25
**economics (2)**
37:14,15
**effect (1)**
20:2
**efficiently (1)**
44:2
**effort (3)**
20:11;33:19;34:3
**efforts (1)**
9:10
**eighty (2)**
33:11,12
**Eisenberg (1)**
32:18
**either (1)**
15:12
**eliminated (1)**
15:13
**else (6)**
9:8;10:11;25:25;
29:14;38:1,8
**emphasize (1)**
34:10
**end (3)**
19:2;43:13;45:4
**ending (1)**
38:25
**endless (1)**
23:5
**ends (1)**
38:2
**enforce (2)**
14:14;21:16
**enforcement (7)**
14:6,7,22;16:14;
21:6,18;23:6
**enforcing (1)**
21:8
**engage (1)**
18:5
**engaged (1)**
21:6
**enough (1)**
22:11
**enter (1)**
20:17
**entered (6)**
13:9;14:3;21:1,2,
10;23:13
**enterprise (4)**
22:8;30:25;33:17,
17
**entire (3)**
20:9;28:18;40:6
**entirely (1)**
22:21
**entitled (1)**
23:4
**entity (1)**
19:17
**envision (1)**
22:21

**envisioned (1)**
22:20
**equation (1)**
41:23
**ESQ (4)**
4:7,15,23;5:8
**essentially (6)**
12:4;13:2,21;14:7;
15:19;36:3
**establish (1)**
31:11
**estate (9)**
15:10;23:10;
25:17,18;26:2;28:10,
24;39:19;40:1
**evaluate (1)**
8:3
**Even (6)**
8:14;14:20;16:18;
17:23;31:8;39:11
**event (1)**
14:17
**events (1)**
25:7
**eventually (1)**
31:14
**everyone (1)**
6:8
**everyone's (1)**
18:23
**example (2)**
15:14;23:7
**excessive (1)**
16:13
**excuse (2)**
8:12;18:20
**excused (1)**
36:15
**exercise (2)**
14:22;15:13
**exercising (1)**
14:5
**Exhibit (1)**
19:25
**exist (1)**
16:2
**existed (1)**
14:11
**existence (1)**
14:14
**existing (1)**
20:3
**expense (6)**
24:6;25:12,16;
32:15;37:16;40:4
**expenses (9)**
12:21;18:12,13;
23:23;25:16;26:2;
39:18;40:13;44:12
**experience (1)**
25:3
**expertise (1)**
25:3

**explicit (1)**
14:20
**express (3)**
17:9,21;18:2
**expressly (1)**
14:21
**extreme (1)**
39:22

## F

**face (2)**
21:19;24:18
**faced (1)**
24:18
**fact (10)**
18:24;19:23;20:7,
20;26:12;29:24;
30:11;31:6;41:5;
42:3
**facts (4)**
28:3,12;31:6;
40:12
**factual (1)**
16:22
**factually (1)**
29:4
**fair (2)**
18:11;39:7
**faith (1)**
31:4
**false (2)**
19:24;29:4
**falsehoods (1)**
23:9
**familiar (2)**
22:11;32:5
**far (3)**
30:4;41:10;45:10
**fear (1)**
20:22
**February (7)**
8:12;9:19;12:18;
20:19;22:16;29:8,9
**fee (13)**
11:8;12:9,19;13:3;
18:14;20:25;35:11,
23;36:20;38:21,23;
42:6,6
**fees (23)**
7:6;12:20;13:11;
18:13;19:11;23:7;
24:20;28:24;29:3;
32:11,13;34:1;
36:20;37:1;39:1,13,
24;40:3,8,16;41:9;
42:23;44:11
**felt (5)**
14:8,17,24;15:20;
39:16
**few (1)**
35:9
**fight (1)**

24:20
**file (3)**
8:4;26:18;27:23
**filed (13)**
13:1,14,20;16:20;
20:8;22:17;26:22;
28:23;29:10;33:19;
36:23;39:5;46:11
**filing (6)**
8:22;11:16;12:24;
23:25;28:25;29:4
**final (7)**
7:23;8:4,15;37:25;
42:5,6;46:9
**financed (1)**
41:13
**financial (1)**
42:16
**find (1)**
45:7
**finding (2)**
21:16,17
**fine (2)**
9:1;11:11
**finger (1)**
26:12
**firm (8)**
24:12;36:25;
37:22;38:10,24;
40:2;41:7,8
**firms (1)**
23:5
**firm's (1)**
43:5
**first (12)**
6:4;8:25;10:15;
28:11,23;31:23;
36:19;41:5;45:12,13,
18,19
**Fitzpatrick (6)**
6:4,10;35:24;
37:12;39:7;44:9
**Fitzpatrick's (1)**
38:21
**Fitz's (1)**
38:20
**flat (2)**
19:24;23:9
**flies (1)**
21:19
**flow (1)**
40:8
**focus (1)**
26:1
**focused (2)**
25:19;38:12
**follow (2)**
10:25;27:13
**followed (1)**
25:23
**following (2)**
7:16;20:18
**form (3)**

14:2;35:2;38:18
**formal (1)**
8:5
**forth (2)**
34:3,14
**forty (6)**
37:1;39:21;40:10,
17;41:25;44:15
**forward (1)**
27:12
**found (2)**
9:15,19
**founded (1)**
33:14
**four (2)**
20:19;34:18
**framed (2)**
25:10;30:19
**framework (1)**
31:17
**free (1)**
36:13
**friends (1)**
24:1
**full (1)**
26:10
**funding (1)**
44:15
**further (6)**
11:4;24:17;29:11;
30:14;44:24;46:13
**future (2)**
27:16;45:10

## G

**Gary (1)**
6:9
**general (2)**
27:1;31:22
**generally (1)**
7:15
**generated (1)**
29:24
**generous (1)**
19:22
**given (2)**
23:8;40:11
**Glad (1)**
10:8
**Goetz (8)**
6:4,10;35:24;
37:12;38:20,21;
39:7;44:9
**Good (12)**
6:6,8,9,12,15,20,
25:8;21;25:8;31:4,
24;32:7
**grant (1)**
44:25
**granted (2)**
18:15;34:24;38:16
**grateful (1)**

37:7
**great (2)**
7:21;46:10
**greater (1)**
40:15
**ground (1)**
31:14
**Group (2)**
5:12;6:3
**guess (1)**
41:2

## H

**haircut (1)**
40:10
**half (2)**
42:17;43:10
**hanger (1)**
27:7
**happen (1)**
32:17
**happened (2)**
16:20;19:23
**harbinger (1)**
35:12
**harm (3)**
20:5;28:17,19
**head (1)**
28:8
**headed (1)**
8:9
**health (1)**
15:25
**hear (15)**
7:2;10:8;18:17,18;
24:2;26:7;32:16;
34:13;35:18;36:10,
11;37:4,7,8;40:21
**heard (4)**
9:8;23:18;29:15;
38:9
**hearing (11)**
7:22;8:6,20;11:23;
35:8;37:23,25;41:3;
43:11;44:23;45:9
**heavily (1)**
32:23
**hefty (1)**
33:1
**HELPERN (2)**
4:10;6:16
**Here's (1)**
40:24
**herring (2)**
27:21;42:20
**hidden (1)**
19:2
**highly (1)**
24:12
**himself (1)**
24:8
**hindsight (5)**

25:13,13,14,14;
31:8
**HIRSCHTRITT (2)**
4:10;6:16
**holdback (14)**
33:9;34:17;37:1;
39:12;41:4,18,19,25;
42:17,19,21;44:11,
15;45:1
**holdbacks (2)**
39:10;40:11
**HOLZER (3)**
6:22,22,23
**Honor (46)**
6:9,12,15,19,20;
7:4,15,24;8:13,16;
9:9;10:10,13;11:10,
17;15:15;16:10,16;
17:9;18:3,14,20;
19:19;22:10;23:19;
24:11;26:9,12;28:7;
29:5,21;32:17;34:7,
15;35:4,24;36:19;
37:9;40:14;41:8;
42:3,20;44:18,19;
46:6,8
**Honor's (1)**
45:22
**hoops (1)**
8:17
**hope (1)**
33:21
**HORAN (13)**
4:23;6:12,12,14;
9:9;16:17;19:19;
22:10;23:12,19;
24:6;28:5,7
**HOWARD (2)**
4:7;6:20
**hundred (4)**
37:2;39:13;40:16;
41:12

## I

**Identifies (1)**
37:6
**illegal (2)**
22:23;28:13
**immediate (2)**
27:9;30:5
**implement (1)**
14:24
**implicit (1)**
14:15
**important (6)**
11:2;20:15;30:17;
33:20;37:6;44:23
**importantly (1)**
21:24;30:23
**improper (5)**
16:13;27:25;29:4;
30:3,9

**inappropriate (2)**
14:18;27:10
**inclined (1)**
31:5
**includes (1)**
15:9
**including (4)**
25:23;32:6,20;
44:13
**incremental (1)**
43:19
**incurred (6)**
12:20;23:25;
25:16;26:3;32:11;
38:1
**Indeed (1)**
20:24
**indicated (2)**
38:13;44:13
**indication (1)**
26:25
**inevitable (1)**
25:15
**inhere (1)**
19:18
**inherent (1)**
30:5
**injunction (1)**
15:14
**input (1)**
32:12
**inspection (1)**
9:19
**install (3)**
20:9,17;21:3
**installed (8)**
20:8,20;21:13;
22:4;23:15;28:13,13,
19
**installing (1)**
22:22
**instance (2)**
16:8;21:5
**instances (1)**
15:23
**intend (1)**
9:21
**intent (1)**
22:13
**intention (1)**
8:3
**interest (6)**
26:4;30:22;31:25;
38:6;43:9;46:10
**interested (1)**
35:18
**interfere (2)**
33:4;40:9
**interim (3)**
36:20;38:23;42:9
**interims (1)**
42:7
**into (7)**

8:24;9:16;15:18;
21:2,10;23:13;42:23
**invest (1)**
9:1
**investments (1)**
35:2
**invite (1)**
25:13
**involve (1)**
36:3
**involved (2)**
7:12;15:25
**involving (1)**
12:25
**irreparable (3)**
20:5;28:17,19
**issuance (4)**
15:2,20;20:19;
22:3
**issue (16)**
13:15;14:8;16:6,7,
16,21;17:1;19:3,20;
21:25;25:8;29:18;
37:22;42:10,17;44:9
**issued (6)**
15:23;16:11;
20:16;21:4;22:12;
23:14
**issues (7)**
12:4;15:1;24:13;
29:23;36:4;37:6;
38:12

## J

**Jackson (1)**
44:1
**January (11)**
12:20,23;13:4,6,
12,24;21:13;29:7;
30:24,24;38:25
**Judge (4)**
12:16;24:4,11;
25:1
**Judging (1)**
28:2
**July (1)**
13:9;38:25
**jump (1)**
8:17
**JUSTICE (1)**
5:2

## K

**keep (1)**
35:8
**kind (2)**
22:8;44:14
**knew (1)**
28:14
**knock (1)**
24:17

**knocked (1)**
24:25
**known (1)**
28:15
**Korea (1)**
32:4
**KUSHNER (67)**
6:9,10;7:2,4;8:13;
9:4,24;10:1,4,22;
11:7,8,13,16,21,24;
12:1,3,13,16,17,18;
15:11;17:17;19:19;
24:2,3,15;26:3,6,9,
12;28:12;29:5;
32:15,17;33:11,23;
34:1;35:15,20,23;
36:3,9,10,16,18;
38:19,20,23;40:18;
41:2,17,20;43:17,20;
44:19;45:6,8,12,14,
21;46:1,6,8,12,14
**Kushner's (2)**
9:10;43:5

## L

**landlord (1)**
30:11
**language (4)**
17:9,21;23:3;25:5
**large (2)**
17:18;37:16
**largely (1)**
19:6
**larger (3)**
33:6;42:17,21
**last (9)**
7:21,25;8:2;9:19;
10:1,21;16:18;24:3;
43:21
**late (1)**
9:19
**later (2)**
20:18;27:13
**LAW (17)**
4:18;6:13,22;
14:18,23,25;15:1;
23:5;24:12,13;
26:16;27:19;28:21;
36:25;39:16;40:12;
42:4
**lawful (1)**
17:14
**lawfulness (5)**
7:12;12:5;26:19,
23;27:15
**laws (8)**
7:19;14:7,24;15:4,
22;17:13;21:9,16
**lawsuit (2)**
29:24;30:10
**lawyer (1)**
24:19

**lawyers (3)**
24:21;34:3;35:10
**lead (1)**
33:16
**learned (7)**
9:12,12;10:1;
13:15;27:8;37:3;
39:6
**learning (1)**
27:24
**learnt (1)**
30:9
**least (5)**
8:19;16:1;19:2;
31:22;44:23
**leave (1)**
20:21
**leaving (1)**
38:4
**left (2)**
30:7;35:23
**legitimate (3)**
18:5;27:18;39:16
**legs (1)**
15:18
**lender (1)**
40:13
**lessons (1)**
34:23
**level (2)**
41:9;44:11
**lie (1)**
14:16
**lift (1)**
30:8
**light (1)**
8:15
**likelihood (1)**
23:9
**likely (5)**
15:10;25:16;26:2;
28:9;33:16
**limit (3)**
17:22;19:5,6
**limited (2)**
19:7;23:3
**line (1)**
19:12
**lines (1)**
34:13
**lion's (1)**
34:1
**listen (1)**
39:23
**litigation (11)**
12:4;13:20;17:19;
18:5;23:2,5;25:4;
30:3;33:15,21;34:7
**little (3)**
9:1;28:12;39:8
**LLP (1)**
4:2
**location (3)**

9:13,15,16
**log (1)**
12:22
**long (1)**
21:5
**longer (1)**
9:18
**look (5)**
9:6;10:25;29:6;
45:11;46:10
**looking (4)**
23:23;27:17;
42:21;46:8
**looks (1)**
15:16
**loose (1)**
28:12
**lost (1)**
24:23
**lot (2)**
31:16;43:5

**M**

**main (3)**
29:18,23;39:25
**makes (3)**
14:15;19:10;38:3
**making (1)**
40:3
**management (2)**
25:9;38:6
**Manhattan (1)**
9:14
**many (1)**
31:15
**March (3)**
10:15,16,22
**matter (5)**
31:9;35:6,8;43:21;
44:20
**matters (4)**
11:6;24:16;40:20;
44:3
**May (15)**
8:25;9:7;12:1;
25:14;36:5,15,17;
45:12,13,14,18,18,
19,20;46:3
**maybe (1)**
41:7
**mean (3)**
18:6,12;22:15
**meaning (2)**
9:15;15:17
**means (2)**
23:4;27:21
**meant (2)**
26:23;27:20
**measure (2)**
25:14;45:19
**Media (4)**
5:12;6:3,10,23

**memory (1)**
41:24
**mentioned (2)**
34:16;42:10
**merit (1)**
14:19
**meritorious (1)**
17:5
**merits (2)**
34:22;45:2
**Metropolitan (3)**
4:11;6:16;7:8
**Michael (1)**
32:18
**microphone (1)**
29:19
**mid-point (1)**
45:1
**might (1)**
22:8
**mind (1)**
26:15
**mindful (1)**
31:15
**minimum (1)**
15:8
**misspeaking (1)**
35:16
**misstatements (2)**
19:24;20:25
**mistake (1)**
31:8
**model (3)**
32:23;33:14,15
**modified (1)**
38:15
**moment (1)**
43:23
**money (3)**
23:22;33:3;35:9;
38:4;39:10
**money's (3)**
32:22;33:2;34:20
**monies (3)**
39:18,21;40:7
**month (5)**
9:19;12:23;20:18;
21:3;38:25
**month-and-a- (2)**
42:16;43:9
**monthly (3)**
12:7,9,9
**months (1)**
20:19
**moot (5)**
13:16;16:22,25;
19:20;30:12
**mooted (2)**
29:11;30:11
**more (13)**
7:13;8:2,21,24;
9:2;11:17;14:20;
20:11;31:23;33:6;

39:23;42:22,24
**morning (9)**
6:6,9,12,15,20;
10:5;39:6;45:24,25
**most (6)**
7:22;8:14;14:2;
30:17,23;33:18
**motion (3)**
13:10;21:13;34:24
**motivated (1)**
35:7
**move (3)**
8:24;9:21;44:2
**moving (1)**
33:17
**much (14)**
11:3;19:8;23:20;
29:22;34:7;39:14;
41:16,18;42:25;43:2,
25;44:4;46:11,13
**myself (1)**
32:6

**N**

**name (1)**
24:11
**National (3)**
4:11;6:17;7:8
**NBC (30)**
6:3;11:12;12:8,19;
13:3,11,14,19,21,24;
15:19;16:4,14,24;
17:2,8,19,22,23;
18:1,9;19:8,11,21;
23:1;24:12,15,21;
25:4;29:3
**NBC's (4)**
12:23;13:7;23:3;
25:3
**necessarily (2)**
25:12,13
**necessary (6)**
18:10;20:2;21:22;
25:17;31:10;32:1
**need (11)**
8:19;29:11,24;
30:2,10;32:12;33:1;
34:2,10;45:6,8
**needed (1)**
17:14
**needs (1)**
41:11
**negotiated (1)**
32:24
**neither (1)**
16:1
**net (1)**
25:12
**New (9)**
4:5,13,18,19,21;
6:13;20:3;27:2;45:8
**next (7)**

8:18;20:4;35:14,
16;44:3;45:6,7
**night (3)**
8:2;10:2;16:18
**Noe (6)**
5:12;10:5;18:9;
29:16,21,23
**none (1)**
44:12
**normalizing (1)**
22:2
**note (4)**
25:9;31:6;33:12;
38:9
**noted (1)**
23:21
**notes (1)**
26:4
**notice (5)**
8:20;12:22;13:3;
14:8;31:20
**notices (1)**
20:23
**noting (1)**
34:22
**NOVACK (7)**
4:2;6:21;11:9,11;
12:1,3,8
**NOVs (2)**
21:25;22:3
**number (10)**
11:6,14,19,23;
14:2;23:14,14;
39:23;41:11;43:11
**Numbers (4)**
6:2;37:3;41:7,23
**NY (4)**
4:5,13,21;5:6

**O**

**object (2)**
19:10;29:2
**objecting (1)**
19:11
**objection (24)**
10:19;13:1,2,18,
21,23;17:6;18:2,12,
13,15,22;19:14;20:1;
34:13;36:23;37:5,5,
11,12,12,20;38:11;
39:4
**objections (5)**
8:22;31:23;36:11;
37:11;42:22
**objects (1)**
13:11
**obligations (2)**
20:6;28:20
**observation (3)**
24:4;34:10;42:5
**obtained (1)**
28:1

**obviously (5)**
8:3;19:1,10;42:8;
43:4
**o'clock (1)**
10:1
**October (3)**
20:17;21:3,10
**offer (1)**
39:6
**Office (13)**
6:22;10:18;16:17;
17:24,25;18:19;35:2,
19;36:23;38:12,18;
39:4,15
**office's (2)**
26:17;37:5
**often (1)**
32:14
**once (3)**
19:21;27:7;30:9
**one (18)**
10:13;13:1,22;
14:2;15:24;19:7;
23:14;27:8;35:24,
24;36:6,7,22;39:3;
40:5,19;42:3;43:1
**ones (1)**
32:25
**one's (2)**
23:21;43:4
**ongoing (3)**
9:10;22:1;24:24
**only (8)**
16:23;21:7;22:2;
23:13;35:9;40:22;
43:1;45:1
**onto (1)**
33:17
**operating (4)**
7:5;9:13,20;15:24
**operational (1)**
42:13
**operations (2)**
33:4;40:9
**opinion (1)**
15:15
**opportunity (1)**
44:1
**opposed (1)**
30:20
**optimistic (1)**
8:15
**order (74)**
8:4,16;9:12,14,21,
22;10:7,17,18;11:23;
12:10;13:5,5,5,6,8,9,
19,22,25,25;14:2,3,9,
13,15,20;15:12,12,
21,23;16:3,8;17:7,
10,11,14,18,21;19:4;
20:1,4,12,13,16,20,
22;21:4,15,18,19,24;
22:12,14,20,21;23:2,

14,16;25:23;26:20,
21;27:15;28:14;
29:25;30:3,3,9;35:1;
37:19;38:17;42:13;
45:6;46:9
**orders (6)**
21:17;22:7;25:22;
30:21;32:24;42:9
**ordinary (5)**
12:7;22:9,10;27:5;
33:10
**others (3)**
12:8;23:18;40:21
**otherwise (2)**
15:4;29:12
**OTR (17)**
5:12;6:3,10,23;
20:2,5,8,11,16,20;
21:5,10,13;22:4,8,
21;23:4
**out (20)**
7:10;8:18;18:3;
19:24;20:10;23:9,
13;24:18,25;30:7;
31:10;33:1;34:17;
38:4;41:12,25;43:2,
24;44:3;45:10
**outcome (1)**
25:20
**outset (1)**
19:16
**outside (1)**
7:11
**over (9)**
12:4,5;16:23;
20:18;21:3;33:18;
39:12;40:3;41:12
**overcome (2)**
23:24;32:9
**overlapping (1)**
17:12
**overruled (1)**
18:16
**own (2)**
15:21;32:18
**Owner (2)**
5:12;29:25

**P**

**page (1)**
25:6
**paid (13)**
24:22;28:24;29:4;
31:14,18;32:14;
35:10;40:3,7;41:11,
16,20,22
**painted (4)**
16:23;20:3,3;30:4
**painting (1)**
27:1
**paper (1)**
27:22

**papers (4)**
23:25;27:21;28:9;
37:13
**Paragraph (4)**
19:25;20:1,4;25:6
**part (8)**
7:7;17:18;21:24;
24:24;30:5;35:7;
41:23;42:7
**particular (3)**
19:9,9;26:1
**parties (4)**
23:25;32:13;
35:22;44:17
**parties-in-interest (1)**
18:14
**party (3)**
11:4;30:15;32:18
**party's (1)**
30:22
**path (3)**
9:3;25:23,25
**pay (5)**
18:12;24:20;38:4;
39:18;40:1
**payment (7)**
7:5;12:7;13:11;
32:19;34:12;39:17;
40:7
**pen (1)**
27:22
**penalized (1)**
17:2
**perceived (1)**
16:13
**percent (20)**
33:11,12;37:1,1,2,
24;39:6,11,22;40:10,
16,17;41:9,12;42:1,
23;44:11,15,16,25
**percentage (1)**
40:25
**perfect (1)**
45:17
**performed (1)**
29:7
**performing (1)**
20:2
**perhaps (5)**
7:13;8:25;19:22;
33:18;34:10
**period (3)**
12:19;38:25,25
**permit (9)**
14:9;22:13,14,15,
18;26:23;27:12,15;
31:18
**permits (2)**
34:4;40:8
**permitted (1)**
31:19
**permitting (1)**
7:17

**personal (1)**
29:1
**personally (1)**
39:15
**perspective (1)**
31:4
**perspectives (1)**
31:3
**petition (8)**
7:7;19:20,21,24;
20:8;21:19;23:17;
28:18
**Phyllis (2)**
6:25;30:7
**picture (1)**
30:18
**place (3)**
12:10;28:24;30:12
**plain (1)**
23:2
**Plaza (1)**
5:4
**Please (9)**
11:14;12:2,15;
24:5;34:25;36:8,15;
44:7;45:5
**plus (1)**
8:19
**pm (3)**
44:6,6;46:16
**point (24)**
17:4,15;19:6;25:7,
8,24;32:7;34:8;
37:16,17,24;38:7;
39:17,22;41:19;
42:25;43:1,1,3,8,9,
14,19,20
**points (3)**
13:22;38:11;40:18
**police (1)**
14:14
**posed (1)**
15:8
**poses (1)**
15:25
**position (8)**
18:19;19:16;23:1;
24:18;25:5,6;35:19;
42:16
**positions (2)**
44:17;45:1
**poss (1)**
15:16
**possible (3)**
42:15;44:2,4
**post (1)**
20:6
**post- (1)**
7:6
**powers (1)**
14:14
**practical (1)**
18:3

**practice (1)**
24:13
**predicate (1)**
20:9
**predicated (1)**
23:9
**premises (1)**
20:7
**preparation (1)**
12:24
**prepared (2)**
26:22;41:6
**preparing (2)**
28:8,25
**Present (2)**
5:11;32:11
**presentation (1)**
7:15
**prevent (1)**
16:12
**prevented (1)**
14:9
**preventing (1)**
20:5
**prior (3)**
39:9;40:11;41:4
**probably (2)**
8:21;23:24
**procedure (1)**
12:10
**proceed (9)**
11:7,15;12:1;25:6;
31:2;35:12;36:15;
37:17;38:7
**proceeding (10)**
8:8;12:25;16:5,5,
9;22:7;25:21;27:24;
31:10;34:13
**proceedings (4)**
7:11;22:7;31:20;
46:16
**process (9)**
8:5;14:25;17:13,
19;21:20;22:2,19,20;
42:7
**processes (1)**
7:17
**production (1)**
39:12
**productive (3)**
7:23;25:24;37:7
**professional (2)**
30:19;31:1
**professionals (9)**
12:7;17:12;31:16;
32:20,23;33:1,10,20;
34:11
**proffering (1)**
27:3
**profit (1)**
7:6
**prohibit (1)**
14:5

**prohibiting (1)**
20:2
**promptly (1)**
44:3
**proper (1)**
30:6
**property (1)**
29:25
**proportionality (1)**
23:22
**proposed (5)**
8:16;10:16;34:25;
38:17;45:5
**protect (3)**
14:16;21:14;22:25
**protection (2)**
20:14,21
**protocol (3)**
12:6;24:9;41:10
**provide (2)**
30:21;44:25
**provisional (3)**
13:16;16:8;27:9
**proximity (1)**
44:13
**prudent (3)**
16:23;37:17;38:6
**prudently (1)**
43:2
**public (1)**
16:1
**purely (1)**
37:22
**pursuant (4)**
9:12,21;12:6,10
**put (9)**
12:19;20:13,13;
26:12;27:22;37:10;
38:11;39:15;40:2
**puts (1)**
41:14
**putting (1)**
34:3

## Q

**quarter (1)**
10:2
**quarterback (1)**
34:6
**quite (1)**
31:7
**quoted (1)**
25:5

## R

**raised (2)**
13:22;19:20
**ran (1)**
20:20
**range (1)**
40:21

**rather (4)**
9:1;37:20;38:21;
40:20
**reached (1)**
31:3
**react (1)**
14:23
**read (2)**
8:19;23:2
**real (1)**
35:9
**reality (1)**
24:1
**realize (1)**
32:14
**realized (1)**
19:21
**really (8)**
15:5;19:22;24:11,
25;25:15;27:24;
37:14,21
**reason (1)**
8:21
**reasonable (10)**
16:24;17:3;18:10;
23:9;24:19;26:2;
28:1;31:2;39:23;
40:21
**reasonableness (2)**
25:20;39:24
**reasonably (2)**
15:9;25:16
**reasons (7)**
18:3,8;28:11;
34:21;37:23;38:14;
44:13
**receive (1)**
8:2
**receiving (1)**
20:23
**recently (1)**
33:14
**receptive (1)**
7:22
**Recess (1)**
44:6
**record (13)**
6:7;9:2;23:21;
29:16,20;34:22,25;
35:7;37:10;38:14,16,
17;44:8
**records (1)**
29:6
**red (2)**
27:21;42:20
**reduction (2)**
39:12,22
**reference (1)**
30:2
**referred (1)**
9:10
**referring (1)**
13:5

**reflect (1)**
44:24
**reflected (5)**
25:4;34:21,25;
38:14,17
**reflection (1)**
37:21
**Regarding (7)**
7:4,8,11,23;8:4;
10:5;12:4
**regulatory (1)**
22:2
**reimbursement (3)**
12:21;36:21;39:2
**reinstate (1)**
13:7
**reinstatement (1)**
14:4
**reinstitute (1)**
21:12
**relented (1)**
30:11
**relief (8)**
13:16;16:8;21:7,
11,22;24;27:9,19,25
**relies (1)**
32:23
**reluctant (1)**
31:11
**remedies (3)**
14:6,23;15:4
**reminded (1)**
34:9
**reminders (1)**
32:7
**remiss (1)**
25:9
**removed (3)**
9:17,17,20
**render (1)**
21:21
**rendered (3)**
27:8;32:3;37:22
**reorganization (4)**
31:16;33:16,19;
34:11
**repeating (1)**
33:14
**replace (1)**
20:3
**replaced (4)**
29:8,8,10;30:1
**reply (7)**
20:24;21:1;24:2;
28:5;39:5,16;41:24
**report (1)**
7:20
**reporting (1)**
12:15
**reports (1)**
7:5
**request (11)**
6:3;11:12;12:19;

17:1;18:19;27:9;
30:20;36:22;39:2;
44:10,12
**requests (1)**
7:25
**required (2)**
12:8;27:20
**requirements (1)**
15:22
**reserve (6)**
32:19;43:15,17,18,
19;44:15
**reserved (3)**
14:21;21:25;37:25
**Reserving (1)**
19:10
**resolved (3)**
13:9;36:24;37:7
**respect (12)**
10:9;14;11:22;
13:3,23;19:17;
32:10;34:12,15;
35:13;39:17;44:9
**respond (1)**
28:6
**responding (1)**
24:7
**response (8)**
10:6;13:20;18:7;
24:3;25:1;38:9;
39:20;40:23
**responses (1)**
40:23
**rest (1)**
38:1
**restricts (1)**
13:19
**result (3)**
8:1;16:18;39:12
**resulting (1)**
7:18
**retain (1)**
18:5
**retained (1)**
12:3
**retaining (1)**
19:17
**retention (1)**
34:11
**revenues (1)**
41:8
**review (2)**
38:18;44:24
**reviewed (2)**
10:15,18
**revocation (4)**
22:15;26:23;
27:13,15
**revoke (2)**
22:13,18
**revoked (3)**
22:15,16,16
**revolved (1)**

12:24
**right (38)**
6:6,7,11;7:2;8:11;
9:2,8;10:25;11:5;
14:24;15:1,13,13;
17:16;18:17;21:25;
22:16;26:18;27:23;
29:14,23;30:14;34:9,
12,21;35:6;37:3,4;
38:8,18;41:16;43:16,
21,22;44:4;45:5,8,15
**rights (4)**
14:21;16:14;
19:10;37:25
**ripe (1)**
17:1
**rise (1)**
44:5
**risk (1)**
30:5
**risks (2)**
31:16,17
**RJI (1)**
20:7
**road (1)**
43:13
**role (1)**
39:14
**root (1)**
24:11
**rules (1)**
31:20
**ruling (1)**
43:24
**rulings (1)**
7:16

## S

**safety (1)**
16:1
**same (4)**
20:7;25:8;27:5;
36:3
**saying (2)**
35:10;43:7
**schedules (1)**
8:1
**scheduling (2)**
7:25;11:23
**scrolling (1)**
12:11
**seat (1)**
25:7
**seated (1)**
44:7
**second (4)**
8:25;16:16;21:24;
45:14
**secondarily (1)**
26:25
**secondly (1)**
28:17

**seek (3)**
15:14;27:19;37:25
**seeking (3)**
12:20;13:15;36:20
**seeks (1)**
39:1
**seem (1)**
23:22
**seems (3)**
22:12;31:22;33:15
**send (1)**
35:1
**sense (4)**
18:6;19:10;23:22;
38:3
**sensible (4)**
31:1;40:25;44:22;
45:2
**separate (2)**
7:7;32:12
**separately (1)**
36:1
**September (2)**
20:16;21:2
**sequence (1)**
44:1
**serves (1)**
41:25
**service (2)**
9:3;32:2
**services (6)**
15:9,19;18:10;
32:1;37:19,21
**set (8)**
8:12;12:6;21:20;
32:19;33:24;34:14;
39:21;40:7
**setting (1)**
8:6
**settled (1)**
36:6
**seven (1)**
38:25
**several (1)**
42:8
**shall (2)**
45:11;46:10
**share (1)**
34:1
**shield (3)**
20:12;21:6;23:6
**short (1)**
43:22
**short-circuit (1)**
22:2
**showing (1)**
32:9
**sides (3)**
30:16;34:23;37:25
**sign (43)**
7:19;8:17;9:13,18,
20;12:25;14:7,24;
15:3,21,24;16:22;

17:13;20:3,3,8,13,
14,17,20,22;21:3,8,
13,16;22:5,8,11,23;
23:15;24:13;26:24,
24;27:6,7;28:12,19;
29:7,8,9;30:1,4,12
**signage (1)**
20:6
**signature (1)**
10:17
**significant (3)**
33:18;35:7;38:10
**significantly (1)**
24:13
**signs (6)**
7:12;12:5;14:12;
17:14;22:3;34:4
**Similarly (1)**
14:20
**simplistic (1)**
14:2
**simply (1)**
14:13
**single (2)**
33:18;35:8
**situation (7)**
31:7;32:10;37:20;
39:8;40:3;41:1;
42:24
**situations (1)**
31:15
**sixty (3)**
37:1;24;39:6
**slightly (2)**
15:7;40:14
**small (2)**
24:24;38:4
**smaller (1)**
19:8
**smart (1)**
9:3
**somehow (2)**
31:12,13
**sometime (1)**
9:7
**somewhat (3)**
42:12,19,20
**soon (3)**
10:24;23:12;45:20
**sorry (4)**
11:19;12:12;
13:23;35:15
**sought (6)**
16:8;20:14,21;
21:7;22:1;24:8
**sound (2)**
42:16;44:21
**sounds (1)**
37:6
**speak (3)**
10:4;22:10;29:19
**SPEAKER (2)**
26:8;36:14

12:25
**stretching (1)**
15:16
**structure (2)**
9:17;19:18
**subject (1)**
31:20
**submission (1)**
25:5
**submissions (2)**
21:21;40:22
**submit (9)**
8:4;12:8;16:10;
17:9;18:14;34:25;
38:17;40:14;45:5
**submitted (6)**
10:17,20;12:22;
20:24;32:24;36:19
**subsequent (1)**
37:13
**substance (2)**
9:3;18:23
**substantial (3)**
39:10;41:20,22
**successful (1)**
33:16
**sufficient (1)**
32:8
**suggest (1)**
11:7
**suggestion (1)**
29:12
**Suite (1)**
5:5
**summarized (1)**
44:16
**supplied (1)**
10:16
**supposed (1)**
14:16
**sure (2)**
10:24;40:3
**surreptitiously (1)**
19:13
**SYRACUSE (2)**
4:10;6:16

**T**

**TANNENBAUM (2)**
4:10;6:16
**temporary (1)**
15:14
**terms (5)**
9:2;27:1;30:4;
33:9;41:7
**terribly (1)**
33:13
**test (1)**
43:3
**testifies (1)**
42:1
**Thanks (1)**

35:4
**there'd (1)**
44:10
**therefore (1)**
28:15
**Third (6)**
4:12;6:3;13:18;
21:15;38:23;39:9
**thirty (1)**
44:25
**thirty-man (1)**
41:8
**though (1)**
33:13
**thought (1)**
8:23
**thousand (3)**
34:18;35:9;39:13
**threat (2)**
15:25;27:1
**three (1)**
8:19
**throughout (1)**
41:13
**Thursday (2)**
46:1,2
**thy (1)**
24:11
**till (1)**
8:18
**timeframe (1)**
20:15
**timeline (4)**
27:20;29:17;30:2,
13
**Times (1)**
32:4
**timing (3)**
9:2;37:14,15
**tiny (1)**
25:14
**Title (1)**
32:3
**today (6)**
8:15;11:20;22:18;
32:21;33:7;35:7
**today's (1)**
7:7
**together (1)**
35:25
**told (3)**
19:1;22:17;26:16
**top (1)**
21:17
**total (2)**
36:22;39:2
**touch (1)**
11:1
**toward (1)**
32:3
**towards (2)**
8:8;34:2
**track (3)**

**speaking (2)**
7:15;26:5
**Special (2)**
4:3;41:14
**specific (1)**
30:19
**Specifically (3)**
13:23;21:25;33:5
**specificity (1)**
7:14
**spent (3)**
7:21;18:9;24:7
**spirit (2)**
10:6;25:22
**stage (1)**
42:1
**stand (2)**
27:21;31:14
**standard (3)**
26:1,13;31:12
**standing (1)**
26:4
**stands (1)**
27:13
**start (1)**
36:7
**state (18)**
7:10;13:15,19;
14:7,18,23,25;15:1,
18;16:5;20:15,21;
21:7,14;22:23,24;
26:16;27:19
**statement (5)**
7:24;8:6;12:9;
25:2;46:9
**STATES (16)**
5:2;6:18;7:6;13:2;
17:25;18:21;20:1,4;
21:1;36:23;38:12;
39:4,15,25;40:22;
44:12
**status (8)**
7:4,14,20;9:8,9;
10:9;11:4;23:11
**stay (13)**
13:5,7,25;14:2,4,9,
13,14;15:12;21:12,
17;22:3;36:13
**still (3)**
17:19;41:12;43:17
**stop (23)**
15:21,23;16:3,7;
20:1,4,12,13,16,19,
22;21:3;22:12,14;
23:14,16;26:19,21;
27:15;28:14;29:25;
30:3,8
**story (1)**
27:16
**strategy (2)**
33:21,24
**Street (5)**
4:4,20;9:14,25;

10:23;33:17;41:14
**tried (1)**
37:13
**TRO (1)**
16:25
**trust (1)**
34:23
**Trustee (12)**
5:3;6:19;7:6;
10:18;18:21;36:23;
38:12;39:4,15,25;
40:23;44:12
**Trustee's (1)**
17:25
**try (1)**
23:6
**trying (1)**
7:22
**turned (2)**
23:13;31:10
**turns (1)**
20:10
**twenty (7)**
39:11;41:25;
42:23;44:11,16
**twenty-eight (1)**
8:19
**two (9)**
15:23,23;23:15;
28:11;30:24;32:20;
35:23;45:1,16
**type (1)**
27:5
**typical (1)**
22:11

### U

**ultimately (1)**
25:24
**Um-hum (1)**
24:14
**unarguable (1)**
17:5
**under (23)**
7:18;9:14,22;
14:18,23,25;15:3,4,
14;16:9,10,24;17:17;
18:10;24:19;26:16;
27:19,20,25;28:2,2;
31:19;32:3
**undertaken (1)**
17:20
**undertook (1)**
17:17
**undisputed (2)**
12:23;28:3
**unfair (1)**
39:7
**UNIDENTIFIED (2)**
26:8;36:14
**UNITED (12)**
5:2;6:18;7:6;

17:25;18:21;36:23;
38:12;39:4,15,25;
40:22;44:12
**unlawful (2)**
15:24;26:24
**unusual (1)**
19:18
**up (11)**
6:6;10:25;12:6,11;
20:13,14,22;21:20;
41:19;43:7;45:4
**upon (6)**
7:9;16:4,15;27:24;
37:14;38:5
**use (14)**
7:9;10:14;13:19;
17:22;19:5,5,6,7,11;
23:3;24:21;29:2;
31:8;44:1
**used (3)**
9:5;17:8;23:1
**using (1)**
23:5
**UST's (1)**
13:10
**utilized (1)**
17:24

### V

**vacuum (1)**
27:17
**various (11)**
7:10,12,16,22,25;
8:1,7;12:4;17:13,19;
25:22
**vein (1)**
13:13
**viable (2)**
9:18;27:14
**view (8)**
7:19;16:2;25:4;
37:16;42:25;43:1,2,8
**violated (1)**
13:8
**violation (12)**
14:9;15:1,3;16:13;
20:12,22,23;22:4,25;
23:15;28:14,21
**violations (1)**
22:1
**vis-a-vis (1)**
14:11
**voluntarily (2)**
13:13;23:16

### W

**walked (1)**
15:18
**wants (2)**
24:20,21
**way (9)**

14:4;19:23;24:17;
27:5;29:1;31:22;
33:3;37:17;38:7
**WAYNE (2)**
4:15;6:15
**week (3)**
8:18,25;10:15,21;
45:12,13,14,16,18,
18,19
**weeks (1)**
45:16
**welcome (1)**
36:13
**welfare (2)**
15:25;27:2
**well-respected (1)**
24:12
**what's (5)**
17:5;24:11,25;
35:23;43:10
**whereby (1)**
21:20
**Whereupon (1)**
46:16
**who's (1)**
16:19
**whose (1)**
36:12
**WILLIAM (3)**
5:8;6:18;18:20
**willing (2)**
39:23;40:16
**window (1)**
9:7
**wise (1)**
43:15
**withdraw (3)**
16:24;19:21;31:13
**withdrawal (1)**
16:16
**withdrawn (3)**
13:17;23:12;28:22
**withdrew (1)**
23:16
**within (3)**
12:18;40:20,21
**without (4)**
14:13;15:18;
20:22;38:4
**witness (1)**
24:10
**won (1)**
24:24
**wondering (1)**
35:21
**work (49)**
12:4;13:4,7,13,24;
15:21,21,23,25;16:3,
7;17:20;20:1,2,4,12,
13,16,19,22;21:4;
22:12,14;23:14,16;
24:17,21;26:19,21,
25;27:14,18;28:14;

29:25;30:3,8,23;
31:2,25;34:5,5;38:9;
41:13,13;43:5,5,24;
45:25,25
**worth (1)**
41:13
**written (1)**
32:6
**wrong (2)**
24:5;29:12

### Y

**year-and-a-half (1)**
41:13
**year's (1)**
21:5
**yesterday (1)**
9:13
**yield (1)**
15:10
**York (7)**
4:5,13,18,19,21;
6:13;27:2

### 1

**1 (1)**
19:25
**1:12 (1)**
44:6
**1:14 (1)**
46:16
**100 (1)**
4:20
**100,000 (1)**
41:12
**10007 (1)**
4:21
**10017 (1)**
4:5
**10022 (1)**
4:13
**11 (4)**
32:3,4;34:6;40:6
**11201 (1)**
5:6
**11th (1)**
12:18
**12:53 (1)**
44:6
**13 (1)**
9:13
**14th (1)**
45:22
**15th (1)**
45:22
**164,950 (1)**
39:1
**174 (1)**
12:25
**19th (1)**
13:9

**1st (2)**
29:9;38:25

### 2

**20 (2)**
8:12;41:9
**2011 (1)**
33:20
**2012 (3)**
13:9;20:16;38:25
**2013 (2)**
12:20;13:6;39:1
**23rd (2)**
8:12;9:4
**271 (1)**
5:4
**2nd (1)**
45:20

### 3

**3 (3)**
19:25;20:1;25:6
**300 (1)**
4:4
**30th (1)**
30:24
**31st (2)**
30:24;39:1
**335 (1)**
11:23
**337 (1)**
32:5

### 4

**4 (1)**
34:17
**4,000 (1)**
34:19
**42nd (1)**
4:4
**4529 (1)**
5:5
**46 (3)**
6:2;11:14,19
**47 (1)**
6:2
**48 (1)**
6:2

### 6

**65,000 (1)**
39:11
**66 (1)**
32:5
**6th (1)**
45:18

### 7

**7 (3)**
  10:1,2;25:6
**758 (1)**
  32:5
**765 (1)**
  32:5
**78 (29)**
  12:25;13:4;16:5,9,
  17,20;19:20,23;
  20:10,11;21:19;22:1,
  7,17;23:7,8,11;
  25:21;26:19,22;27:8,
  12,23;28:9,16,22,25;
  30:20;31:9
**7805 (2)**
  15:14;16:9

---

## 8

**8th (2)**
  10:22;45:21

---

## 9

**9:30 (2)**
  46:2,3
**900 (1)**
  4:12
**9th (6)**
  13:6;45:21,24,25;
  46:2,3