Steven R. Gursky
Fredrick J. Levy
OLSHAN FROME WOLOSKY LLP
Park Avenue Tower
65 East 55th Street
New York, New York 10022
212.451.2300
sgursky@olshanlaw.com
flevy@olshanlaw.com
psartorius@olshanlaw.com

*Attorneys for Care Realty Corp.*

Hearing Date: July 18, 2013, 9:00 a.m.
Objections Due: July 11, 2013 4:00 p.m.

**UNITED STATES BANKRUPTCY COURT**
**THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>OTR MEDIA GROUP, INC.,<br><br>Debtor. | Chapter 11<br>Case No. 11-bk-47385 (ESS) |

**CARE REALTY CORP.'S MOTION FOR RELIEF
FROM AUTOMATIC STAY PURSUANT TO
11 U.S.C. § 362(d) AND FOR RELATED RELIEF**

TO THE HONORABLE ELIZABETH STRONG,
UNITED STATES BANKRUPTCY JUDGE:

Care Realty Corp. ("Care Realty") files this motion for relief from the automatic stay pursuant to 11 U.S.C. § 362(d) and for related relief (the "Motion") and in support of this Motion states as follows:

1.      As described below, Care Realty seeks to terminate a lease agreement (the "Lease", Exhibit "A" hereto) entered into with Underwood Acquisitions LLC ("Underwood"), a non-debtor, wholly-owned affiliate of the Debtor and shell corporation, which Lease the Debtor has continually asserted to this Court is property of its bankruptcy estate based upon the fact that

2161777-1

the Debtor is the operating company that actually uses the signage provided for in the Lease.[1]
The Lease entitles the Debtor to maintain billboard signage on Care Realty's property at 445/7 West 35th Street, New York, New York (the "Leased Premises"). Since December 2012, the Debtor has paid no rent on Lease.[2]

2. Despite early indications in this bankruptcy case that the Debtor intended to assume the Lease as part of its reorganization, more recently in its First Amended Disclosure Statement, the Debtor has stated its intention to abandon the Lease (ECF # 360, p. 52). The Debtor has not rejected the Lease and, despite its announced intention to abandon the Lease, it now refuses to voluntary relinquish its interest in the Lease unless Care Realty withdraws its administrative claim request and objection to confirmation (ECF # 388).

3. The Lease permits Care Realty to unilaterally terminate the agreement on 60 days written notice in the event Care Realty intends to improve the Leased Premises by building a "permanent structure" on it. Section 12 of the Lease Agreement provides, *in full*, as follows:

> After the initial three years of the Term of this Lease, Lessor shall have the right to cancel this lease with sixty (60) days written notice to Lessee in the event Lessor intends to improve the property by building thereon a permanent structure, Lessor will have the right to terminate this Agreement upon sixty days prior written notice (the "Construction Notice") to Lessee. Lessor shall include with the Construction Notice a copy of any permit applications relative to such improvement or demolition. Lessee shall remove all signs within sixty days after the Construction Notice is sent to Lessee. Further, in the event Lessor shall enter into an agreement to sell the property, Lessor may terminate this Agreement upon sixty days prior written notice (the "Sale Notice"). Lessor shall include with the Sale Notice a copy of the contract of sale (with financial and other business terms redacted) between Lessor and the purchaser or a copy of the deed pursuant to which title to the property is transferred to the purchaser. All signs will be removed within sixty days after the Sale Notice is sent to Lessee. In either

---

[1] The Debtor did execute a "good guy" guaranty of the Lease.
[2] From the filing of its petition through November 2012, the Debtor made monthly Lease payments of $5,000. However, the rent due is actually $16,068 per month. Care Realty has made a motion for allowance and payment of its administrative claim through May 2013 of $262,428 (ECF # 388). The Debtor asserts that it is entitled to a reduction but there is no agreement for any reduction. Care Realty has also filed an unsecured claim in the amount of $527,208 (Claim # 24). For a considerable period pre-petition, the Debtor paid no rent and Care Realty sued both the Debtor and Underwood in New York Supreme Court.

2161777-1

> circumstance, Lessor will return to Lessee security deposit upon removal of all signs, structures, improvements, and equipment in accordance with this Agreement.

(Ex. A at § 12.)

4. The purpose of Section 12 is clear: the Leased Premises is essentially undeveloped and has been operated by Care Realty as a parking lot since the time the parties executed the Lease, but the parties intended to preserve Care Realty's ability to develop the Leased Premises at a later time if the right opportunity presented itself and specifically provided for such an option in the Lease. Care Realty now intends to develop the Leased Premises by building a permanent structure thereon.

5. By this Motion, Care Realty seeks relief from the automatic stay to exercise this express, bargained-for right to terminate the Lease, take full possession of the Leased Premises and to have this Motion deemed the Construction Notice provided for by the above-quoted Lease provision, as Care Realty has entered into a ground lease for development of the Leased Premises. Attached hereto as Exhibit "B" are recently-obtained New York Department of Buildings Work Permits for the Leased premises.

6. In the event that the Court grants the Motion, Care Realty seeks to have the Lease termination effective the later of 60 days from the service of this Motion (as the date of service of the Construction Notice) or the date of entry of the order granting the Motion.

**<u>Care Realty Is Entitled to Stay Relief Under Section 362(d)</u>**

7. In relevant part, Bankruptcy Code § 362(d) provides that the court shall grant relief from the automatic stay in the following circumstances:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay--

> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if--
>
> > (A) the debtor does not have an equity in such property; and
> >
> > (B) such property is not necessary to an effective reorganization.

8. With respect to a stay-relief application under Section 362(d), the Bankruptcy Code allocates the burden of proof to the debtor for all issues other than debtor's equity in property. Section 362(g) provides:

> In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section--
>
> (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
>
> (2) the party opposing such relief has the burden of proof on all other issues.

9. *Cause Exists for Stay Relief.* The Bankruptcy Code does not define the term "cause," and the legislative history accompanying it contains only general guidance. *See Sonnax Industries, Inc. v. Tri-Component Product Corp.*, 907 F.2d 1280, 1285 (2d Cir. 1990).

10. Sufficient cause exists here which warrants relief from the automatic stay. As described above, Section 12 of the Lease permits Care Realty to unilaterally terminate the Lease Agreement on 60 days written notice in the event that Care Realty seeks to develop the Leased Premises by building a "permanent structure" thereon.

11. Care Realty expressly bargained for its termination rights, and the Debtor expressly agreed to be bound by them. The Debtor should be held to its word and the Lease should be enforced pursuant to its terms.

12. Enforcement of the termination provisions of the Lease Agreement is consistent with well-established bankruptcy law. "The Bankruptcy Code neither enlarges the rights of a debtor under a contract, nor prevents the termination of a contract by its own terms." *In re Best Film & Video Corp.*, 46 B.R. 861 (Bankr. E.D.N.Y.) (*quoting In re Advent Corp.*, 24 B.R. 612, 614 (Bankr. 1st Cir. 1982)).

13. Care Realty's contractual right to unilaterally terminate the Lease in the event it intends to develop the Premises is unaffected by the Debtor's bankruptcy filing. "The general rule is . . . if the non-debtor party a right to terminate the arrangement, that right survives adoption of the contract by the trustee." *In re Best Film & Video Corp.*, 46 B.R. 861, 870 (Bankr. E.D.N.Y.) (*quoting Thompson v. Texas Mexican R'way Co.*, 328 U.S. 134, 141 (1946)). "The right to terminate a contract pursuant to its terms survives the bankruptcy of the other contracting party." *In re Best Film & Video Corp.*, 46 B.R. 861, 870 (Bankr. E.D.N.Y.) (*quoting Thompson v. Texas Mexican R'way Co.*, 328 U.S. 134, 142 (1946)).

14. Relief from the automatic stay for cause is clearly warranted.

15. *The Lease is Not Necessary for the Debtor's Reorganization and There is No Equity* As cited above, the Debtor does not consider the Lease to be necessary for its reorganization. To the contrary, in its own words regarding the Lease and two others, the Debtor states in its First Amended Disclosure Statement approved by this Court: "The Debtor is prepared to abandon further efforts to operate the following three locations once the Debtor's contractual obligations to place advertising on these signs (if any) is complete …." (ECF # 360, p. 52) Under such circumstances and given the unilateral termination right, the Debtor can also have no equity in the Lease.

5
2161777-1

16. The Debtor has said that it has no such obligation with regard to the Leased Premises as it has no advertising on the billboard. The Lease is not necessary for the Debtor's reorganization and it has no equity in the Lease. Relief from the automatic stay pursuant to Bankruptcy Code § 362(d)(2) is warranted.

**The Court Should Direct the Debtor to Vacate the Leased Premises**

17. Pursuant to Section 12 of the Lease, upon Care Realty's delivery of a valid Construction Notice, Care Realty is required to "remove all signs within sixty days."

18. The Debtor should be required to remove all signs, structures, improvements, and other equipment belonging to the Debtor from the Leased Premises contemporaneous with the effective date of the Lease termination ordered by this Court.

2161777-1

**CONCLUSION**

19. Based upon the foregoing, Care Realty respectfully requests the entry of an order in the form annexed hereto granting the Motion providing it relief from the automatic stay, pursuant to Bankruptcy Code § 362(d), deeming the Motion to be the requisite Construction Notice, permitting Care Realty to terminate the Lease in accordance with Section 12 thereof, directing the Debtor to relinquish all right title and interest in the Lease on the later of (a) 60 days from the date of this Motion or (b) the date of entry of the order granting this Motion, directing the Debtor to remove all of its property from the Leased Premises on said termination date and such other relief as the Court deems just and proper.

Dated: New York, New York
June 20, 2013

OLSHAN FROME WOLOSKY LLP

By: /s/ Fredrick L. Levy
Steven R. Gursky
Fredrick J. Levy
*Attorneys for Care Realty Corp.*
Park Avenue Tower
65 East 55th Street
New York, New York 10022
212.451.2300

# **EXHIBIT A**

1. The undersigned, as Lessor, hereby leases and grants exclusively to Underwood Acquisitions, as lessee (with free access to and upon the property) described as: 445/7 W. 35th Street/Dyer Avenue (Block #733 Lot#58) in Manhattan, New York for a term of ten years commencing August 1, 2008.
2. In consideration for the above, lessee shall pay to the Lessor rental in the amount listed in the attached rider schedule per year payable on a monthly basis.

3. Lessee shall save the Lesser harmless from all damage to persons or property by reason of accidents resulting from the acts of its agents, employees or others employed in the construction, maintenance, repair, or removal of its signs on the property except if they are a result of negligence. Lessor shall not be liable for any damage to property of Lessee, by theft, vandalism, or otherwise, not for any injury or damage to persons of property resulting from any cause of whatsoever nature, unless caused by or due to the improper conduct of Lessor, its agents, servants or employees. Lessee shall indemnify and save harmless Lessor against and from all liabilities, obligations, damages, penalties, claims, costs and expenses, including reasonable attorney's fees and disbursements, paid, suffered or incurred as a result of any breach by lessee, lessee's agents contractors, employees, invitees or licensees, of any covenant or condition of this agreement, arising from the construction, maintenance, repair or removal of any signs on the property, or the carelessness, negligence, or improper conduct of the Lessee, Lessee's agents, contractors, employees, invitees or licensees.
4. Lessor agrees that he or she, his or her tenants, agents, employees or other persons acting in his, her or their behalf shall not place or maintain any object on the property which would in any way obstruct or impair the view of lessee's sign structures. If such an obstruction or impairment occurs, the lessee, without limiting such other remedies as may be available, has the option of requiring the Lessor to remove said obstruction or impairment, or the Lessee may itself remove the obstruction or impairment charging the cost of said removal to the Lessor, or the Lessee may reduce the rental herein paid to the sum of 5 dollars per year so long as such obstruction or impairment continues. Lessor agrees Lessee may trim any or all trees and vegetation of the property as often as Lessee deems necessary to prevent obstruction.
5. If the Lessee is prevented by any present or future law or ordinance, or the authorities having jurisdiction from constructing or maintaining on said premises, or if the direction of traffic is diverted away from facing the sign, the Lessee may immediately, at its option, adjust the rental in direct proportion to the decreased value of the leased premises for advertising purposes resulting from ay of the foregoing circumstances, or may terminate the lease and receive adjustment for all rent paid for the unexpired term. Lessor shall provide to Lessee any violation notices for violations relating to the posting of advertising at the Sign Space within 15 days of receipt. Lessor agrees and covenants to fully cooperate with Lessee in obtaining permits and approvals.
6. It is agreed between the parties that Lessee shall remain the owner of all advertising signs, structures, and improvements erected or made by Lessee, and that, notwithstanding the fact that the same constitute real estate fixtures, the



Lessee shall have the right to remove said signs, structures, and improvements at any time during the term of the lease, or after the expiration of this lease.

7. This lease shall constitute the sole agreement of the parties relating to the lease of the above described premises. Neither party will be bound by any statements, warranties, or promises, oral, unless such statements, warranties or promises are set forth specifically in this lease or in writing. In the event of any litigation to determine the rights of either party under this lease, the prevailing party shall be entitled to such reasonable attorney(s) fees and all court costs as shall be awarded by a court of competent jurisdiction.
8. The word "Lessor" as used herein shall include Lessors. This lease is binding upon and inures to the benefit of the heirs, executors, successors, and assigns of Lessee and Lessor.
9. Lessee shall at all times take all necessary steps to avoid interference with Lessor's business or the business of any tenant of Lessor.
10. All communications and notices given or made pursuant to this lease shall be in writing and shall be sent by certified mail, return receipt requested to the addresses of the parties as set forth herein (or to any other address to which wither party is directed in writing by the other to send such communications and notices). All communications or notices given or made to Lessor shall be sent to: Care Realty Corp. 200 East 69th Street New York, NY 10021
11. Lessor shall have the right to maintain another outdoor advertising currently displayed on the West side of the Property. Lessee shall be responsible and shall pay for its own electricity.
12. After the initial three years of the Term of this Lease, Lessor shall have the right to cancel this lease with sixty (60) days written notice to Lessee in the event Lessor intends to improve the property by building thereon a permanent structure, Lessor will have the right to terminate this Agreement upon sixty days prior written notice (the "Construction Notice") to Lessee. Lessor shall include with the Construction Notice a copy of any permit applications relative to such improvement or demolition. Lessee shall remove all signs within sixty days after the Construction Notice is sent to Lessee. Further, in the event Lessor shall enter into an agreement to sell the property, Lessor may terminate this Agreement upon sixty days prior written notice (the "Sale Notice"). Lessor shall include with the Sale Notice a copy of the contract of sale (with financial and other business terms redacted) between Lessor and the purchaser or a copy of the deed pursuant to which title to the property is transferred to the purchaser. All signs will be removed within sixty days after the Sale Notice is sent to Lessee. In either circumstance, Lessor will return to Lessee security deposit upon removal of all signs, structures, improvements and equipment in accordance with this Agreement.
13. Lessee shall at all times during the term hereof maintain in effect, and pay the full premium for, the following insurance (i) a policy of liability insurance with a combined single limit of Three Million dollars for property damage and for bodily injury, including death; and (ii) statutory workers compensation and employer's liability coverage, if required by law, in statutory amounts. All insurance required under this paragraph shall be issued by a reputable insurance carrier authorized to

do business in the state of new your. Lessor shall be named as an additional insured under each such policy. Lessee shall provide Lessor with a certificate of insurance demonstrating satisfaction of the requirements of this paragraph.
14. Lessor represents that he or she is the owner tenant other of the property covered by this lease and has the authority to execute this lease. All rents to be paid pursuant to this lease and all notices are to be forwarded to the undersigned Lessor at the address noted below the Lessor's signature.

Additional comments: Lessee shall, at Lessee's sole cost and expense, obtain all permits and consents required to erect, alter and maintain the new structure and any equipment required for all structures, or any additions, changes or new structures or equipment. Before the end of the term Lessee shall remove all structures and equipment from the property and repair any damage to the property caused by the erection, alteration and/or removal of the structure and equipment, all at Lessee's sole cost and expense. Upon execution of this lease Lessee shall pay Lessor the sum of $20,000 as a security deposit which will be returned to Lessee at the expiration of the term of this Lease or upon early termination as defined in paragraph 12 .

IN WITNESS WHEREOF, the parties hereto have executed this Lease as of the December 12, 2007.

Lessor: **Care Realty**

By: _____

Name: Max Kian

Lessee: **Underwood Acquisitions**

By: _____

Name: Michael Eisenberg

RIDER to Rental Agreement between Care Realty and Underwood Acquisitions dated December 12, 2007

Section 3 - Lessee Payments

Following is the detailed breakdown of the monthly rents:

Starting
August 2008 – July 2009   $15,000.00 Monthly total annual rent $180,000.00

August 2009 – July 2011   $15,450.00 Monthly total annual rent $185,400.00

August 2011 – July 2013   $16,068.00 Monthly total annual rent $192,816.00

August 2014 – July 2015   $16,871.40 Monthly total annual rent $202,456.80

August 2015 – July 2016   $17,714.98 Monthly total annual rent $212,579.64

August 2016 – July 2017   $18,600.71 Monthly total annual rent $223,208.62

August 2017 – July 2018   $19,530.75 Monthly total annual rent $234,369.03

**EXHIBIT B**




# Work Permit Department of Buildings

**Permit Number:** 121439531-01-EQ-FN

**Issued:** 05/28/2013  **Expires:** 08/08/2013

**Issued to:** TZVI BLATTER
**Business:** MARGE NY INC
**Contractor No:** GC-607539

**Address:** MANHATTAN    445 W 35TH ST

**Description of Work:**
FULL DEMOLITION - CONSTRUCTION EQUIPMENT - FENCE FULL DEMOLIITON OF ONE STORY SECURITY SHED USING PARTIAL MECHANICAL MEANS.

*Review is requested under Building Code: 2008*    SITE FILL: OFF-SITE

To see a Zoning Diagram (ZD1) or to challenge a zoning approval filed as part of a New Building application or Alteration application filed after 7/13/2009, please use "My Community" on the Buildings Department web site at www.nyc.gov/buildings.

**Emergency Telephone Day or Night:** 311

**Borough Commissioner:**    **Commissioner of Buildings:**

Tampering with or knowingly making a false entry in or falsely altering this permit is a crime that is punishable by a fine, imprisonment or both.
01 06/06/2013

OP-35A (5/10)




# Work Permit Department of Buildings

**Permit Number:** 121439531-01-DM

**Address:** MANHATTAN    445 W 35TH ST

**Issued:** 05/28/2013    **Expires:** 08/08/2013

*Issued to:* TZVI BLATTER
*Business:* MARGE NY INC
*Contractor No:* GC-607539

**Description of Work:**
FULL DEMOLITION - FULL DEMOLIITON OF ONE STORY SECURITY SHED USING PARTIAL MECHANICAL MEANS.

Review is requested under Building Code: 2008         SITE FILL: OFF-SITE

To see a Zoning Diagram (ZD1) or to challenge a zoning approval filed as part of a New Building application or Alteration application filed after 7/13/2009, please use "My Community" on the Buildings Department web site at www.nyc.gov/buildings.

**Emergency Telephone Day or Night:** 311

**Borough Commissioner:**          **Commissioner of Buildings:**

Tampering with or knowingly making a false entry in or falsely altering this permit is a crime that is punishable by a fine, imprisonment or both.
01 06/06/2013

OP-35A (5/10)