```
 1                  UNITED STATES BANKRUPTCY COURT
                    EASTERN DISTRICT OF NEW YORK
 2

 3

 4  In re:                    .  Brooklyn, New York
                             .  March 12, 2013
 5  OTR MEDIA GROUP, INC.     .
                             .  11-47385
 6        Debtor.            .  Calendar Time:
    . . . . . . . . . . . . . .  10:30 A.M.
 7

 8            [9] ADJOURNED STATUS CONFERENCE
        ADJOURNED FROM:  10/25/11, 12/12/11, 12/15/11,
 9    1/6/12, 3/15/12, 7/17/12, 8/9/12, 9/27/12, 11/6/12

10              FINAL DECREE SIGNED 2/28/13

11      [335] HEARING ON NBC COMPENSATION REQUEST (RE:
        RELATED DOCUMENT(S) 323 AFFIDAVIT FILED BY DEBTOR,
12              OTR MEDIA GROUP, INC.)

13    [327] THIRD APPLICATION FOR COMPENSATION FOR GOETZ
            FITZPATRICK, LLP AS DEBTOR'S COUNSEL
14
       [328] FIRST APPLICATION FOR COMPENSATION FOR BRYAN
15          CAVE, LLP AS DEBTOR'S SPECIAL COUNSEL

16          BEFORE HONORABLE ELIZABETH S. STONG

17
    Attorney for Debtor:         GOETZ FITZPATRICK, LLP
18                               One Penn Plaza
                                 44th Floor
19                               New York, New York  10119
                                 BY:  GARY M. KUSHNER, ESQ.
20
    Attorney for City of
21  New York:                    NEW YORK CITY LAW DEPARTMENT
                                 OFFICE OF THE CORPORATION COUNSEL
22                               100 Church Street
                                 New York, New York  10007
23                               BY:  BRIAN T. HORAN, ESQ.

24

25
```

```
 1
 2

 3 Attorney for Metropolitan
   National Bank:               TANNENBAUM HELPERN SYRACUSE &
 4                              HIRSCHTRITT, LLP
                                900 Third Avenue
 5                              New York, New York  10022
                                BY:  WAYNE H. DAVIS, ESQ.
 6

 7 Attorney for United States
   Trustee:                     U.S. DEPARTMENT OF JUSTICE
 8                              OFFICE OF UNITED STATES TRUSTEE
                                271 Cadman Plaza
 9                              Suite 4529
                                Brooklyn, New York  11201
10                              BY:  WILLIAM CURTIN, ESQ.

11 Attorney for Debtor:         NOVACK BURNBAUM CRYSTAL, LLP
                                300 East 42nd Street
12                              New York, New York  10017
                                BY:  HOWARD C. CRYSTAL, ESQ.
13
   Attorney for Debtor:         LAW OFFICES OF ARIEL S. HOLZER
14                              BY:  ARIEL HOLZER, ESQ.

15 Attorney for Debtor:         BRYAN CAVE, LLP
                                1290 Avenue of the Americas
16                              New York, New York  10104
                                BY:  PHYLLIS ARNOLD, ESQ.
17
   Principal of Debtor:         ARI NOE
18
   Court Recorder Operator:     D. CAPERS
19

20 Court Transcriber:           CATHERINE ALDRICH
                                COMPU-SCRIBE, INC.
21                              2376 Cleveland Street
                                Bellmore, New York  11710
22

23 Proceedings recorded by electronic sound recording,
   transcript produced by transcription service
24

25
```

THE CLERK:  Numbers 46, 47, and 48 on the calendar, OTR Media Group, hearing on NBC compensation request, third application for compensation for Goetz Fitzpatrick, first application by Bryan Cave.

THE COURT:  All right.  Good morning.  Come on up. All right.  Let's get your appearances on the record.  Good to see everyone.

MR. KUSHNER:  Good morning again, your Honor.  Gary Kushner, Goetz Fitzpatrick, for OTR Media, the debtor.

THE COURT:  All right.

MR. HORAN:  Good morning, your Honor.  Brian Horan, New York City Law Department, for the City.

THE COURT:  Thank you, Mr. Horan.

MR. DAVIS:  Good morning, your Honor.  Wayne Davis of Tannenbaum, Helpern Syracuse & Hirschtritt, for Metropolitan National Bank.

MR. CURTIN:  William Curtin for the United States Trustee, your Honor.

MR. CRYSTAL:  Good morning, your Honor.  Howard Crystal, Novack Burnbaum Crystal.

MR. HOLZER:  Ariel Holzer, Law Office of Ariel S. Holzer, for the debtor, OTR Media.

THE COURT:  And Ms. Arnold.

MS. ARNOLD:  Phyllis Arnold, Bryan Cave.

1          THE COURT:  All right.  Mr. Kushner, let me hear
2   from you.
3          MR. KUSHNER:  Regarding the status, your Honor, I
4   believe the debtor is current with  its operating reports and
5   payment of United States Trustee fees, continues to make a
6   profit post-petition.  I know it's a separate part of today's
7   calendar, but we have an agreement with Metropolitan National
8   Bank regarding use of cash collateral and an agreed-upon
9   budget.  We continue to battle it out with the City in state
10  court and various other administrative proceedings outside of
11  this Court regarding the lawfulness of various signs.  Ms.
12  Arnold has been involved in that on a day to day basis, and
13  perhaps if you want more specificity as to status of those, I
14  can have Ms. Arnold make that presentation to your Honor, but
15  generally speaking we are following the Court's rulings, going
16  through the various administrative application permitting
17  processes, and then dealing with the resulting adjudications
18  as appropriate under the sign laws, and of course the City has
19  a different view, but that is my report of status.
20          I have spent a great deal of time since the last
21  hearing trying to be receptive to the various comments, most
22  of them productive comments, regarding the final disclosure
23  statement which your Honor actually conditionally approved the
24  last time, but because of scheduling and various requests

accommodating various delays as a result of schedules, I did
receive some more comments last night from the City which I
now have to evaluate, and our intention obviously is to get
you a document, file it, and submit to you a final order
regarding the confirmation process, you know, the formal
approval of the disclosure statement and then setting a
hearing on disclosure, on confirmation, and various associated
dates.

I can't -- other than that, we are proceeding
towards a date -- confirmation date, and that's where we're
headed in this case.

THE COURT:  All right.  And I know we have our
February 20 -- excuse me, April 23rd date set for --

MR. KUSHNER:  Which is another thing, your Honor, I
did bring to Mr. Curtin's attention.  Even in the most
optimistic light if I were to drop everything today, get final
approved comments, get you a proposed order, your Honor were
to jump through hoops and sign it with copying and everything,
it's not going to go out until early next week, so that as I
read the Code, you need at least 28 days plus three days
notice on the hearing on confirmation.  There are probably
every bit a good reason to give some more dates for objections
and what have you, filing certification, so taking that
thought on the calendar, having discussed that with Mr.

1  Curtin, I think it's more appropriate to move that date into

2  perhaps the first or second week of May.

3          THE COURT:  That's -- I'd rather invest a little bit

4  more time now and have the right record in terms of timing,

5  service, substance in this case.

6          MR. KUSHNER:  So the April 23rd date is now, you

7  know, not going to be used for confirmation.

8          THE COURT:  Well, we'll look for a date in the

9  window you're describing some time in May.

10          All right.  Who else would like to be heard on

11  status?

12          MR. HORAN:  Just very briefly, your Honor, on status

13  Mr. Kushner has referred to OTR's ongoing compliance efforts

14  and dealings with DOB and the other administrative agencies

15  pursuant to the consent order, we learned -- the City learned

16  yesterday that the debtor's operating a signing at a location,

17  13 Carmine Street in Manhattan, that under the consent order

18  was a designated location, meaning that Ms. Arnold found that

19  that location could not be brought into compliance, and that

20  the copy had to be removed and any structure had to be removed

21  because that was no longer a viable sign.

22          DOB conducted an inspection late last month,

23  February, found that the debtor is operating a sign there.  We

24  ask that the copy be removed pursuant to the consent order,

1  and if not, we intend to move for a default under the order.

2  I just wanted to advise the Court of that.

3         THE COURT:  Mr. Curtin, how are we doing on -- Mr.

4  Kushner, how are we doing on Carmine Street?

5         MR. KUSHNER:  I learned of this at 7:00 o'clock last

6  night, quarter to 7:00, and I --

7         THE COURT:  So you're on it?

8         MR. KUSHNER:  So I haven't had a chance to speak

9  with Mr. Noe this morning regarding that, and we will give the

10  City an appropriate response, and certainly abide by the

11  spirit of the consent order.

12         THE COURT:  Glad to hear it.

13         Mr. Curtin, anything to add with respect to status?

14         MR. CURTIN:  No.  I don't think so, your Honor.

15  Nothing on status.

16         THE COURT:  Thank you.

17         And from the bank?

18         MR. DAVIS:  Just one brief comment with respect to

19  use of cash collateral.  The bank had reviewed during the

20  first week of March the proposed budget for March and supplied

21  the debtor with an order to be submitted to the Court for

22  signature.  The Office of the U.S. Trustee reviewed the order

23  and had no objection to it.

24         My understanding, my belief is that it was submitted

1  to the Court last week.

2         MR. KUSHNER:  March 8th.

3         THE COURT:  We will track this down.  If it's not

4  done already, it will be done soon.  Let's make sure we know

5  where this is.  We'll look.  All right.  We will follow up.

6  If there's any questions at all we'll be in touch with

7  debtor's counsel.  It's important to get that taken care of,

8  and than you so much.

9         Anything further on status from any other party?

10        All right.  There are a number of other matters on

11 the calendar.  Mr. Kushner, where do you suggest that we

12 proceed?

13        MR. KUSHNER:  Why don't we take the contested fee

14 application of Novack Burnbaum & Crystal if that's okay with

15 your Honor?

16        THE COURT:  That's fine.  Novack Burnbaum Crystal,

17 NBC compensation request?

18        MR. KUSHNER:  Yes.

19        THE COURT:  Number 46 on the calendar.  Please

20 proceed.

21        MR. KUSHNER:  It is -- I don't have the ECF filing

22 here.  I think it's got to be more than that.

23        THE COURT:  I'm sorry.  It's number 46 on my

24 calendar, on our calendar of today.

1          MR. KUSHNER:  Okay.  I don't -- yes.  I don't know.

2          THE COURT:  With respect to the ECF calendar, this

3  would be the order scheduling hearing is number 335 on the

4  docket.

5          MR. KUSHNER:  Novack -- yes.  May I proceed?

6          THE COURT:  Please.

7          MR. KUSHNER:  Novack, Burnbaum & Crystal was

8  retained to do essentially litigation work regarding various

9  issues over the debtor's -- over the lawfulness of the

10  debtor's signs, and pursuant to the protocol that was set up

11  by the Court on a monthly basis payment to ordinary course

12  professionals such as Novack, Burnbaum, Crystal required NBC

13  and others to submit on a monthly basis a monthly fee

14  statement, and then there's a procedure that's in place

15  pursuant to that order.  Does the Court want me to stop?

16          THE COURT:  I'm sorry?

17          MR. KUSHNER:  I think the Court calendar is being --

18          THE COURT:  Oh, we'll have our changeover at the

19  court reporting.  Please continue.

20          MR. KUSHNER:  Thank you, Judge.

21          THE COURT:  Thank you, Mr. Kushner.

22          MR. KUSHNER:  And on February 11th, which is within

23  the time period prescribed by the Court, NBC put in its fee

24  request for the time it incurred in January of 2013 seeking

fees of $5,749.73, and reimbursement of expenses of $70.86,
and along with its application or its notice, it submitted its
time log, and its undisputed that NBC's time for the month of
January revolved around the preparation, briefing, and filing
of an Article 78 proceeding involving the sign at 174 Canal
Street.

There has been one objection filed by the City.
Essentially the City's objection states that no compensation
should be awarded to NBC with respect to this fee notice
because it's work in January on the Article 78 contravening
the stay order, and that's the order -- the order I'm
referring to is the order of the Court dated January 9th,
2013, which denied the debtor's application to reinstate the
stay, and NBC's work also violated what I'll call the consent
order which was the consensual order entered on July 19th,
2012, which resolved the U.S.T.'s motion to convert or dismiss
the case.

The City also objects to the payment of fees to NBC
for January on the basis that no attorney should be
compensated for work that it voluntarily discontinued, and in
that vein what NBC did was after it filed the appropriate
application in state court it learned that the issue that it
was seeking provisional relief became moot, so the application
was withdrawn, and then the third basis of the objection was

that the consent order restricts all together the use of NBC

in any state court litigation, and the debtor has filed a

response to the City's objection on behalf of NBC, essentially

addressing each one of the points that were raised by the

consent order -- I'm sorry, by the City's objection.

Specifically with respect to the City's contention

that the NBC work in January contravened the stay order and

the consent order, the debtor disputes that all together.

Number one, the stay order in its most simplistic form was the

order that was entered by this Court denying the reinstatement

of the automatic stay. It did not in any way prohibit the

debtor from defending itself or exercising its remedies in

connection with the enforcement, the City's enforcement of the

sign laws in state court. Essentially that if the City felt

that it had a basis to issue a notice of violation or work

permit, nothing in that stay order prevented the debtor from

defending the claims of the City in defending against the

quote, "allegations" that existed vis a vis the lawfulness of

the signs.

The stay order simply allowed the City without the

existence of the automatic stay to enforce its police powers,

and that order makes implicit, as it was never before the

Court, that the debtor was supposed to lie down and do nothing

to protect itself in the event it felt it was inappropriate --

1 the City's actions were inappropriate under state law. So we

2 think that that's an argument that does not have any merit.

3          Similarly, the consent order is even more explicit

4 and expressly reserved all of the debtor's rights to defend

5 itself against enforcement and to exercise whatever

6 appropriate remedies it had under state law to basically react

7 to what the City felt was their right to implement the sign

8 laws. This is a process that is adversarial, and state law --

9 under state law the City issues a violation, the debtor has a

10 right to defend it. If the City's issuance of a violation

11 under the debtor's belief is contrary to the sign laws, the

12 debtor has remedies under the CPLR and otherwise, and that's

13 really all that this is about.

14          THE COURT: Well, the ability of the debtor to

15 defend itself is a slightly different question than I think

16 the question posed by the application, which is, or at a

17 minimum includes the question whether the services were

18 reasonably likely to yield a benefit to the estate.

19          MR. KUSHNER: Well, the City is arguing that the

20 consent order and the stay order either collectively or by

21 themselves eliminated the debtor's right to exercise the right

22 to seek a temporary injunction under, for example CPLR 7805.

23 That's not in the debtor's opinion, I think if your Honor

24 looks at it, it couldn't possibly -- it would be stretching

the meaning of those documents that the debtor was --

basically walked into state court without arms and legs and

couldn't defend it, and essentially what NBC's services were

in this case was that the debtor felt that the City's issuance

of a work -- a stop-work order did not comply with its own

sign laws.

The administrative requirements I understand is two

instances in which a stop-work order can be issued.  One is

that the debtor is operating an unlawful sign or that the work

that's involved poses a threat to the health, welfare, safety

of the public, and in neither of those cases, at least in the

debtor's view, did it exist in that circumstance where a stop-

work order was appropriate.  NBC was called upon to the debtor

to bring the appropriate proceeding, an Article 78 proceeding

in state court to adjudicate that issue, whether or not it was

an appropriate action on behalf of the City to issue the stop-

work order in that instance and also sought provisional relief

as it is allowed to do in an Article 78 proceeding under 7805

of the CPLR.

So under the circumstances I submit to your Honor

that nothing before this Court was ever issued or contemplated

that would prevent the debtor from going in and defending

itself against what it perceived to be an excessive improper

violation of the City's enforcement rights.  That's why NBC

1 was called upon.

2     Second issue, your Honor, was the withdrawal of the
3 Article 78, and I had a discussion with Mr. Horan or my office
4 did last night, and even as a result of that discussion and my
5 conversations with Mr. Crystal, who is in the courtroom, what
6 happened here was that after the Article 78 was filed and they
7 were about to argue it, it was discovered that the issue --
8 the factual basis became moot, that the sign had already been
9 painted over and that the only thing that was prudent and
10 reasonable under the circumstances was for NBC to withdraw the
11 application because the application was moot as to the TRO
12 request, and was not ripe as to the other issue.

13     So I think that NBC shouldn't be penalized for doing
14 what it -- what a reasonable attorney would have done.  It
15 should be commended for not belaboring the point and argue
16 what's unarguable.  So I don't think that that's a meritorious
17 objection, and then the consent order, according to the City,
18 says that NBC couldn't be used at all by the debtor, and I
19 submit to your Honor that's not what the express language of
20 the consent order says.

21     What was contemplated in the consent order was that
22 there would not be an overlapping of professionals dealing
23 with various aspects of the sign laws or the process in which
24 the debtor's signs needed to go through in order to become

1  lawful or -- and you understand my point.

2         Bryan Cave undertook under that consent order a
3  large part of the administrative aspect of that process.  NBC
4  was still contemplated to do various litigation work that
5  would not be undertaken by Bryan Cave, and the express
6  language of the consent order says that the debtor would limit
7  its use of NBC.  As an abundance of caution even before NBC
8  was actually utilized by the debtor, my office contacted Mr.
9  Curtin of the United States Trustee's Office and Mr. Davis at
10  the bank to let them know that NBC was going to come in to do
11  this, and they certainly did not express an objection to doing
12  that.  We didn't ask the City out of practical reasons, your
13  Honor, because in this case we're not going to ask the City
14  who we can retain to engage in a legitimate litigation against
15  the City.  So I mean it's not something that common sense
16  would have dictated their response.

17         So for all of those reasons, we think that the time
18  spent by NBC, and Mr. Noe is here, he's agreed that the
19  services were reasonable and necessary under the
20  circumstances.  He's prepared to let the Court know that the
21  debtor does want to pay these expenses.  There's been no
22  objection by -- I mean these fees and expenses, and there's
23  been no objection by other parties in interest.  So we submit,
24  your Honor, that the fee application should be granted and the

City's objection be overruled.

THE COURT: All right. Before we hear from the City I'd like to hear briefly from Mr. Curtin as to whether your office has a position on this compensation request.

MR. CURTIN: Your Honor, excuse me, William Curtin for the United States Trustee. We don't have an objection, and I can confirm that I did have that conversation with the debtor, that the substance -- and just so everyone's clear, I did when -- after the fact, when the bill came in I did have a conversation with Mr. Kleinman also and told him all this. So this was all -- obviously nothing was hidden at least from my end.

The issue was whether did the debtor acknowledge that the consent order said -- you know, it says what it says. It says limit the use. It doesn't say they can't use them. It says limit the use, and I think the largely to this point they have limited the use, but the argument was that it would cost one amount for Bryan Cave to do it and a much smaller amount for NBC to do this particular -- you know, this particular action. So I said it makes sense to me, reserving all rights obviously to object to the fees, but not objecting to the actual use of NBC for this action.

So the bottom line is we did have that conversation. It was certainly not done surreptitiously or anything like

1  that, and we don't have an objection to the fee application.

2       THE COURT:  I'd like to hear from the City, and I'll

3  just note at the outset that the dynamics of taking a position

4  with respect to an entity retaining counsel to be adverse to

5  your unusual dynamics, they -- and here in the structure of

6  this case.

7       MR. HORAN:  Your Honor, Mr. Kushner said that the

8  issue raising the Article 78 petition was -- became moot, and

9  once NBC realized that it decided to withdraw the petition.

10 That's not really the case, or perhaps it's just a very

11 generous way of describing what happened.  In fact, the

12 Article 78 petition was false, contained flat out mis-

13 statements.  Paragraph 3, and this is attached as Exhibit 1 to

14 our objection, paragraph 3 states that "The stop-work order

15 had the effect of prohibiting OTR from performing work

16 necessary to replace the existing painted sign with a new

17 painted sign."

18      The next paragraph it states, "The stop-worker order

19 is causing OTR irreparable harm by preventing it from

20 discharging its obligations to its clients to post advertising

21 signage at the premises."  In fact, the same day that the RJI

22 was filed along with the petition, OTR installed the sign that

23 it claimed it couldn't install.

24      So their entire predicate for the Article 78 turns

out not to be correct.  The Article 78 was nothing more than
an effort by OTR to shield its violation of the stop-work
order.  It wanted to put the sign up.  The stop-work order it
said couldn't put the sign up, and it did so anyway, and then
sought protection in state court, and the time frame for this
is important.  DOB issued the stop-work order in September
2012.  OTR didn't enter the agreement to install the sign
until October, the following -- over a month later, and it
wasn't until February, four months after the issuance of the
stop-work order, that OTR in fact installed the sign and then
ran to state court and sought protection so that it could
leave the sign up without fear of being in violation of the
stop-work order or receiving notices of violation.

Indeed, the reply that the debtor submitted on this
fee application continues to make mis-statements to the Court.
 The reply states that the debtor entered the agreement in
September.  That's not the case.  It entered into the
agreement to install the sign in October, over a month after
the stop-work order was issued.

So what we have here is another instance of OTR,
this is a year's long campaign that it's been engaged in to
shield itself from enforcement by the City.  It sought this
relief in state court only after this Bankruptcy Court said
that the City could continue enforcing the sign laws.  OTR had

entered into this agreement in October.  In December it came
to this Court and asked for relief, asked the Court to
reinstitute the automatic stay.  This Court denied that motion
in January, and then OTR installed the sign anyway and asked
the state court to protect it, and again, this is -- this was
the third order of this Court finding that the City could
enforce the sign laws.

On top of those orders finding that there was no
stay on the City's enforcement there's the consent order, and
this Article 78 petition flies in the face of the consent
order which set up a process whereby the debtor agreed to make
submissions to the Department of Buildings, have DOB render
determinations, and if necessary and appropriate take appeals
from those determinations.  The second part of the consent
order importantly specifically reserved the City's right to
issue NOV's for ongoing violations, and what this Article 78
sought to do was not only short circuit the regulatory process
of normalizing the signs through DOB, but also to stay the
issuance of NOV's for the violation that OTR decided to create
when it installed the sign.

THE COURT:  In the absence of all the other
agreements and proceedings and orders, would this Article 78
proceeding be the kind of thing that a sign enterprise like
OTR might bring in the ordinary course of its business?

1          MR. HORAN:  Your Honor, I can't speak to the

2    ordinary course of the typical sign business.  I'm not

3    familiar enough, but it seems to me that when a stop-work

4    order is issued within an intent to revoke a permit the

5    appropriate thing to do is to abide by the stop-work order and

6    then challenge the permit revocation.  I mean this permit has

7    been revoked.  It was revoked in February.  It was revoked

8    right around the time when this Article 78 was filed, and I

9    understand from counsel told me today that that decision by

10   DOB to revoke the permit is now on appeal at BSA.  That's the

11   appropriate process.  That's the process that was envisioned

12   in the consent order.

13          What the consent order did not envision is OTR's

14   disregarding entirely the determinations of the Department of

15   Buildings, installing an illegal sign, and then going to state

16   court, after this Court didn't give it the relief it wanted,

17   going to state court to protect that after the fact violation.

18          The City's position is not that NBC cannot be used

19   in litigation.  We certainly read the consent order.  The

20   plain language says that NBC's use should be limited.  What

21   that means to us is that OTR is not entitled to continue its

22   campaign of endless litigation using an army of law firms to

23   try to shield itself from enforcement by the City, and this

24   Article 78 is an example of just that, and that's why fees

1 should not be awarded because this Article 78, given that it

2 was predicated on flat out falsehoods, had no reasonable

3 likelihood of benefitting the debtor, the estate.

4          THE COURT:  And what is the status of the Article

5 78?

6          MR. HORAN:  It's been withdrawn.  It was -- as soon

7 as the -- as it turned out that the contract was entered into

8 only after the stop-work order was issued, number one, and

9 number two, that the sign had already been installed in

10 violation of the stop-work order, the debtor's counsel

11 voluntarily withdrew the petition.

12          THE COURT:  Would others like to be heard on this?

13          MR. HORAN:  Thank you, your Honor.

14          THE COURT:  Thank you very much.  No one's noted it

15 in the record, so I will.  Just for a sense of portionality,

16 it does seem that the amount of money that we're looking at

17 here is $5,749.73 and $70.86 in expenses, an amount that is

18 probably already overcome by the costs the parties have

19 incurred in filing these papers and arguing.  Just a bit of a

20 reality check, my friends.

21          Mr. Kushner, let me hear you in reply.

22          MR. KUSHNER:  Well, in response to that last

23 observation, Judge --

24          THE COURT:  Please correct me if I'm wrong, but

1  that's basically --

2       MR. KUSHNER:  -- there certainly have been time and

3  expense spent in responding to it.  Certainly if Mr. Crystal

4  would have done it himself I don't think he would have sought

5  compensation, but that's not the protocol.  I'm debtor's

6  counsel.  I make the application.  He would be a witness, but

7  honor be thy name, Judge.  What's really at the root of this

8  is NBC is a well-respected, highly capable law firm dealing

9  significantly in its practice in the sign law issues.  So it

10 would be a disincentive for NBC counsel, debtor's counsel of

11 choice in these matters, not to work any further.  The easiest

12 way to do that is to knock them out on their face.

13      So I'm faced in a position as a reasonable lawyer

14 what they would do under the circumstances to say fight for

15 those fees.  The debtor wants to pay them.  The debtor wants

16 to use these lawyers.  NBC will not work if it can't get paid

17 in a bankruptcy case, and the City -- the debtor would have

18 lost its counsel of choice and the City would have won a small

19 part of this ongoing battle, and that is it's knocked out a

20 competent adversary.  That's what's really behind the

21 response, Judge.

22      THE COURT:  And we do have the statement in the

23 Arnold declaration that NBC's experience and expertise in

24 litigation, well, reflected in her view that NBC is in the

best position.  That language is quoted in your submission at
paragraph 3.2, page 7, the best position to proceed.  I take
the point, and in all events from this seat in the courtroom
the dollars are not the issue.  From the standpoint of good
case management I would be remiss if not to note them.

The question framed by this application is whether
this -- whether the applicable criteria for allowing an
expense have been met here, and those are not necessarily a
hindsight -- those do not invite necessarily a hindsight
measure, although hindsight, a tiny bit of hindsight may be
inevitable.  The question really should be whether at the time
the expenses incurred was it reasonably likely that the
expense would benefit the estate, was it necessary to the
administration of the estate?

I appreciate that you have focused on the
reasonableness or not or the outcome, whatever of that Article
78 proceeding and whether it complied with, was consistent
with the text or the spirit of various other orders in this
case, including the consent order and the path we followed to
get to this point, a difficult to clear, but ultimately
productive path for all concerned I think.

I'd like to hear from anyone else with particular
focus on that question of the standard, whether these expenses
were reasonably likely to benefit the estate as assessed at

1  the time they were incurred.

2       Mr. Kushner, I also note that I have counsel

3  indicating an interest in speaking.  I'll hear from whoever

4  would like to go first.

5       MR. KUSHNER:  I would be brief, your Honor.  You

6  have a full courtroom.

7       THE COURT:  We do.

8       MR. KUSHNER:  Your Honor has in fact put the finger

9  on the appropriate standard.  What should be analyzed was what

10 was in Mr. Crystal's mind when he was asked to do these

11 things.  What did he do?  He was told he believed that under

12 applicable state law, after consultation with my office's

13 bankruptcy counsel, that he had the right to go ahead and a

14 duty to go ahead to file the Article 78 to challenge the

15 lawfulness of the City's work-stop order.  The work-stop order

16 was challenged on the basis that at the time that the Article

17 78 was filed and prepared there had been no permit revocation,

18 which meant that the lawfulness of the sign or that the sign

19 had not been declared quote, "unlawful," and secondarily, that

20 there was no indication that whatever work was to be done in

21 terms of painting was a threat to the general welfare of the

22 citizens of New York.

23       He did not know at the time Mr. -- I'm proffering,

24 but Mr. Crystal is here.  He will tell you that he did not

know at the time that the same day in an ordinary type of way,

not to cast any culpability on the debtor's actions, that the

sign hanger had gone through and changed the sign already.

Once he learned about that, that rendered one aspect of the

Article 78, that is the immediate request for provisional

relief, inappropriate to continue, and he discontinued it, and

he had no other basis at the time that he discontinued it to

go forward with the Article 78 all together because the permit

revocation did not follow until days later.

So as it stands now, the debtor does have a viable

claim to challenge the work-stop order or the lawfulness of

the permit revocation, and that's a story for the future, but

looking at this case in a vacuum, at the time that Mr. Crystal

was asked to do the work, there was a legitimate basis under

state law to seek the relief that the debtor required under

the circumstances.  The time line meant nothing.  It means

nothing.  It's a red herring.  I stand by my papers.  At the

time that Mr. Crystal put pen to paper he believed that the

debtor had an absolute to file the Article 78 proceeding, and

upon learning that what he had done really was improper under

the circumstances and that the relief could not be obtained,

he also did the reasonable thing.

Judging that under those conditions, those

undisputed facts, he deserves compensation in this case.

1          THE COURT:  Mr. Horan, would you like to respond?

2          MR. HORAN:  Yes, your Honor.   The question is not

3  what was in Mr. Crystal's head when he was preparing these

4  papers.  The question is whether this Article 78 was likely to

5  benefit the estate, and the answer to that question is that it

6  was not because, for two reasons.  First of all, and I think

7  Mr. Kushner was a little bit loose with the facts.  This sign

8  was illegal when it was installed.  It was installed in

9  violation of the stop-work order.  The debtor knew or should

10  have known that, and therefore, the debtor should never have

11  asked Mr. Crystal to bring the Article 78, and secondly, there

12  was no irreparable harm, which was the entire basis for the

13  petition.  No irreparable harm because the sign was already

14  installed, and the debtor was complying with its contractual

15  obligations, albeit in violation of the law.

16          This Article 78 was withdrawn because there was no

17  basis for it.  It should never have been filed in the first

18  place, and there should be no fees paid from the estate for

19  preparing and filing the Article 78, and just to be clear,

20  this has nothing to do -- this is not in any way a personal

21  attack on Mr. Crystal.  The City does not object to the use of

22  NBC in appropriate circumstances, but there should be no fees

23  paid for an improper factually false court filing.

24          THE COURT:  Mr. Kushner.

1    MR. KUSHNER:  Just to be clear, your Honor, if you

2  look at the time records in the application for Mr. Crystal,

3  they were performed in January, the time that the sign had not

4  been replaced.  The sign was replaced in February.  February

5  1st I believe was the date that the sign was replaced.  Okay.

6   By that time the application had been filed and the need for

7  it to go further was mooted.  Mr. Crystal did nothing wrong,

8  and the suggestion by the City otherwise is alarming.

9    THE COURT:  All right.  Would anyone else like to be

10 heard?

11    MR. NOE:  Just briefly also on the reference to the

12 time line, the main issue that we had --

13    THE COURT:  Get to the microphone before you speak.

14  It will make a better record.

15    MR. NOE:  I apologize, your Honor.

16    THE COURT:  Thank you very much.

17    MR. NOE:  All right.  The main issues that we had,

18 which generated the need for this law suit was the fact that

19 the property owner, because of the stop-work order, did not

20 want the sign to be replaced, and that's created -- despite

21 the reference to a time line, that created the need for this

22 litigation in order -- the stop-work order itself was improper

23 in terms of -- as far as a painted sign, which caused no

24 inherent immediate risk or danger.  This was part of the

arguments, and we went through the proper channels beforehand
also, which the City left out. Phyllis Arnold did contact the
Department of Buildings and asked them to lift the stop-work
order because it was improper.

Once we learned that they would not do that, that
caused the need for the lawsuit, which was then mooted by the
fact that the landlord relented and allowed us to place the
sign there, and that's when it became moot. That's all I have
to say on the time line.

THE COURT: All right. Anything further from any
party?

I appreciate the arguments that both sides have
made. To me it's most important to come back to consider the
context and the bigger picture here, but then come back to the
very specific question that is framed by this professional
compensation request as opposed to the Article 78 and all of
the orders that provide the context and background for the
parties' arguments, also of interest to the Court, and I think
that question is most importantly at the time that the work
was done on two days, January 30th and January 31st, in the
context that it was done was it an appropriate enterprise by
this professional on behalf of the debtor? Was there a
sensible and a reasonable basis to proceed with the work, and
I appreciate that from the different perspectives you reach

1  different conclusions in good faith, but from this perspective

2  I'm inclined to conclude that the answer is yes.

3        While I take note of the fact that the facts were

4  very dynamic, quite dynamic, the situation was dynamic, I

5  think it would be a mistake to use hindsight or even the

6  question of whether the matter that was brought, here the

7  Article 78 that was brought, turned out to be necessary to

8  continue to conclusion.  I would be reluctant to establish a

9  standard that somehow created a disincentive appropriately to

10 bring, but then appropriately to withdraw a case because

11 somehow you have to stand your ground to get paid eventually.

12       I'm also mindful here, as in so many other

13 situations, that in a reorganization professionals do take a

14 lot of risks, but the risks should be bounded by the framework

15 that does permit them to have an award of compensation and to

16 be paid that compensation as if it's permitted under the Code

17 and the rules and subject to notice and all of the proceedings

18 that we've had here.

19       So it seems to me that at least in a general way the

20 objections that have been made more appropriately, first of

21 all, are a good caution as to how decisions should be made as

22 to the work that is going to be in the interest of the debtor,

23 whether the services are necessary to the administration of or

24 beneficial at the time at which the service was rendered for

the completion of a case under this Title 11 and Chapter 11.
I'm citing the Korea Chosun Daily Times case from 337 BR 758
at 765, 366, a case familiar to some in this courtroom
including myself, having written that decision.

I think that the points the City has made are good
reminders as to the context of how that decision should be
made, but not sufficient in this case to overcome the showing
that the debtor has made with respect to the time and
circumstances and situation that was present when these fees
were incurred.  That's a separate question, and I need input
from the parties on this as to when and how these fees could
actually be paid, and I realize that's also a different
question with an administrative cost, administrative expense.

Mr. Kushner, Mr. Curtin, can I hear from you on
that?

MR. KUSHNER:  Yes, your Honor.  I happen to know by
my own direct inquiry with Michael Eisenberg, who is the
debtor's controller, that there is a reserve set aside for the
payment of professionals, including the two applications that
are before you on this calendar that we have yet to argue
today.  So the money's there.  It's been budgeted all along.
Again, this is a business model that relies heavily on
professionals.  The cash collateral orders that have been
negotiated and submitted for approval on the ones that have

been approved contain what I would call hefty allowances for
professionals out of need, and the money's there.

This money certainly is not going to in any way
interfere with the operations of the debtor, and again I
didn't ask it specifically as to Mr. Crystal's application,
but more so in the context of the larger applications that are
also before you today.

THE COURT: Well, and there is a question of a
holdback that would be consistent with the terms of the
ordinary course of professionals.

MR. KUSHNER: There's an 80 percent --

THE COURT: 80 percent. I do want to note, and I've
said this from time to time in this case, and it bears
repeating. A business model founded on litigation with the
City is not a business model that seems likely to me to lead
to a successful reorganization of this enterprise, and moving
this enterprise on to a different track has been perhaps the
single most significant component of this reorganization
effort. This case was filed back in 2011. So yes,
professionals are important. Is litigation a business
strategy? I hope not, but it's not for me to set the business
strategy in a case.

MR. KUSHNER: The lion's share of the fees in this
case have been dedicated towards the need for administrative

compliance.  Putting forth the effort through lawyers of
getting the signs approved, permits approved, that's certainly
Ms. Arnold's -- the bulk of Ms. Arnold's work, and my work is
done as the quarterback of the Chapter 11 case.  So I don't
think it's as much litigation as you think, your Honor, but I
understand your point.

          THE COURT:  All right.  I'm reminded of the need to
emphasize that perhaps by your observation that this is a
reorganization driven by the retention of professionals.

          All right.  Mr. Curtin, with respect to payment, let
me hear from you.  Any objection to proceeding along the lines
set forth?

          MR. CURTIN:  Your Honor, with respect to this
application, it's as you mentioned I think that with the
holdback comes out to what, 4 --

          THE COURT:  $4,000.

          MR. CURTIN:  4,000.  They can afford it.  The
money's there.

          THE COURT:  All right.  For all the reasons
reflected in the record, noting the merits of the arguments
that have been advanced on both sides, and the lessons that I
trust each and all of you is drawing from all of them, the
motion will be granted as reflected in the record.  Please
submit an appropriate proposed order.  It's appropriate to

1  send it by Mr. Curtin's office for consent as to form.  Since

2  it does concern compensation I would ask you to do that.

3          MR. KUSHNER:  Thank you, your Honor.

4          THE COURT:  All right.  And I will say that in

5  deciding this matter today on this record I am motivated in

6  significant part by the desire to keep a -- to have a single

7  hearing on a matter that concerns only a few thousand dollars.

8   It's real money to the lawyers who would like to be paid.

9  I'm not saying I want bigger fee applications, but I don't

10 want you to assume that it's a harbinger of how we're going to

11 proceed with respect to the other applications.

12         Where would you like to go next, Mr. Curtin?  Mr.

13 Kushner.  Mr. Kushner, where would you like to go next?  I

14 apologize for my mis-speaking again.

15         MR. CURTIN:  Well, if you want me to answer --

16         THE COURT:  Well, I'm always interested to hear the

17 position of your office.  I'm wondering if it's appropriate to

18 give the parties --

19         MR. KUSHNER:  I think what's left are two fee

20 applications, your Honor, one for Goetz Fitzpatrick and one

21 for Bryan Cave.  Do you want to take those together or do you

22 want to take those separately?  They essentially involve the

23 same issues.

24         MR. CURTIN:  Well, I think -- if I may, I think the

1  Bryan Cave one was settled.

2      THE COURT:  Let's start with the Bryan Cave one,

3  please.  Mr. Kushner, let me -- I know there have been

4  objections and there's been a withdrawal as to counsel whose

5  application has been determined.  You're welcome to stay, but

6  you're free to go.  You may be excused.

7      Please proceed.

8      MR. KUSHNER:  Can I just consult with Ms. Arnold

9  because this is --

10     THE COURT:  Yes, you may.

11     MR. KUSHNER:  Okay.  So dealing with Bryan Cave,

12  your Honor, Bryan Cave has submitted its first interim fee

13  application seeking fees in the amount of $156,422.25 and

14  reimbursement of disbursements in the amount of $1,190.11, for

15  a total request of $157,612.36.  There was one objection filed

16  by the Office of the United States Trustee, which I understand

17  from Ms. Arnold has been now resolved with the agreement

18  between -- with the Bryan Cave law firm to accept a 60 percent

19  allowance or 40 percent holdback on fees, and a hundred

20  percent on disbursements.  I don't have the numbers because I

21  just learned about it right now.

22     THE COURT:  All right.  Mr. Curtin, let me hear from

23  you.  I have your objection, your office's objection.  It

24  identifies some important issues.  It sounds like they've been

1  resolved with a productive compromise, and I'm grateful to
2  hear that.  Let me hear from you.

3         MR. CURTIN:  Thank you, your Honor, and I do want to
4  put something on the record.  I think both objections, the
5  objection -- the Goetz Fitzpatrick objection and the Bryan
6  Cave objections I've tried to make clear both in the papers
7  and in subsequent conversations what we're really, based upon
8  timing and economics, the timing being that we're close to
9  confirmation, and the economics being that from our point of
10 view such a large expense at this point in the case wouldn't
11 be a prudent way to proceed, but since we're on Bryan Cave, I
12 think it's clear that Bryan Cave and Ms. Arnold's services in
13 this case have brought some order to what was a rather chaotic
14 situation.  So the objection really is not -- is not a
15 reflection on the services that she -- that the firm rendered.
16  It's purely an economic/timing issue.

17         So for those reasons we had a conversation before
18 the hearing and agreed that a 60 percent allowance at this
19 point with all rights reserved on both sides to the final
20 hearing to seek the rest, and then whatever else is incurred
21 between when this application ends and the confirmation.  So I
22 think it makes sense.  I think it's something that the debtor
23 can afford to pay out without leaving it with a very small
24 amount of money in the bank, and I think that based upon the

1  circumstances of the case and in the interest of case

2  management, it's a prudent way to proceed at this point.

3       THE COURT:  All right.  Would anyone else like to be

4  heard?  No response.

5       I note also that the work done by Ms. Arnold and by

6  the firm has been significant in the case, and I appreciate

7  the points made to put in context the objection of the Office

8  of the United States Trustee focused on the issues as you've

9  indicated.

10      For all the reasons reflected in the record, the

11  application for compensation for Bryan Cave as modified

12  consensually on the record will be granted.  I'll ask you to

13  submit a proposed order as reflected in the record, and again,

14  with review as to form by Mr. Curtin's office.  All right.

15      Mr. Kushner.

16      MR. KUSHNER:  Yes.  That brings us to Goetz Fitz's -

17  - Goetz Fitzpatrick's rather fee application.

18      THE COURT:  Yes.

19      MR. KUSHNER:  This is the third interim fee

20  application of the firm as debtor's counsel.  It covers the

21  period July 1st, 2012 for the seven-month period ending

22  January 31st, 2013.  It seeks $164,950 in fees and $1,008.25

23  in reimbursement of disbursements, for a total request of

24  $165,958.25.

The debtor has had -- counsel has had one objection by the Office of the United States Trustee, and there was a reply filed by the applicant, and again I learned of the 60 percent offer this morning, and I don't think that it's unfair or fair, but Goetz Fitzpatrick does have a little bit of a different situation than Bryan Cave.

Again, this is the third application. There are prior holdbacks in this case of a substantial amount of money. I believe it's about $65,000. Even at 20 percent reduction a holdback would result in a reduction of over $100,000 for fees. I do appreciate very much the role of Mr. Curtin personally and the Office of the United States Trustee. I put in what I felt was a legitimate reply and dealing with the law, and I do respect his point about the payment concern, about the monies that are available to pay the expenses of this estate at this time.

As I said to the Court before in response to another question, those monies are set aside. I think that a 40 percent reduction is extreme at this point. I'm certainly willing to listen to a more reasonable number. There's been no challenge at all to the reasonableness of our fees. As I understand the main contention of the United States Trustee is that according to his analysis the estate can't pay for it.

Our firm has never, and I have never put a debtor in

1  a situation of making sure that our fees are paid over the --
2  at the expense of any other creditor of this case.  There has
3  been not one creditor come to this Court in the course of this
4  entire Chapter 11 case that's complained that they hadn't been
5  paid.  Again, these monies are set aside.  The payment of
6  allowed fees at the appropriate time as cash flow permits will
7  not interfere with the operations of this debtor, and again, I
8  think that the 40 percent, given the prior holdbacks and what
9  have you, doesn't comport with the law.  It doesn't comport
10 with the facts of this case.  These expenses have been
11 budgeted, approved by the lender, and I submit that, your
12 Honor, that a different -- slightly different, not a greater
13 difference, I'm not asking for a hundred percent of the fees.
14  I'm certainly willing to bend, but I don't think that 40
15 percent is appropriate.
16         THE COURT:  Mr. Kushner, I take all the points that
17 you make and I appreciate them.  I think this is one of the
18 matters that comes rather directly within the discretion of
19 the Court within a reasonable range.
20         I'd like to hear from others.  I only have
21 submissions from Office of the United States Trustee.  Any
22 other responses?  No response.
23         Here's my question for you.  As I do my best to make
24 a sensible determination here, why isn't the percentage that

1 was appropriate in the Bryan Cave situation not appropriate

2 here?

3 MR. KUSHNER: I guess they've made -- you'd have to

4 ask Bryan Cave why. I think what I'm hearing is that -- from

5 Ms. Arnold was that there was no prior holdback, that this is

6 the first application, and from the fact that, you know, this

7 is something that they're prepared to do business wise, maybe

8 they have a bigger firm in terms of the numbers of revenues.

9 We have a 30-man firm.

10 If your Honor were to just award these fees at a 20

11 percent level, which has been the protocol in this case so

12 far, and again, that's not something that I said is the number

13 that needs to be paid here. I'm still out a hundred percent -

14 - over $100,000 of having financed that work throughout a year

15 and a half worth of work. I think that that puts us on a

16 different track than special counsel.

17 THE COURT: All right. How much has been paid?

18 MR. KUSHNER: I can --

19 THE COURT: I think the holdback has been -- how

20 much is the holdback up to at this point?

21 MR. KUSHNER: There's been a substantial amount

22 paid. I can read it from --

23 THE COURT: There has been a substantial amount

24 paid, and I think those numbers are part of the equation.

1    Mr. Curtin, anything to add in reply?  I take it --
2  if memory serves, we are taking now the holdback from 20 to 40
3  percent.  What justifies that difference at this stage?
4        MR. CURTIN:  Well, there's a couple things, your
5  Honor.  One is the fact that we are very, very close to
6  confirmation, and I think that clearly that the case law and
7  the Code is consistent in the observation that the final fee
8  application is the best time to consider a fee application.
9  Certainly interims are a part of the process, and we're not
10 disputing that.  Obviously there have been several interim
11 orders already, but the bigger issue, as I mentioned in the
12 context of the Bryan Cave application, is this debtor has to
13 get to confirmation, and this debtor has to have somewhat of a
14 cushion, a cash cushion, an operational cushion in order to --
15 confirmation is not going to be easy here, and for it to be
16 possible at all we've got to do everything we can to have this
17 debtor in a sound financial position come a month and a half
18 from now.
19       So where the issue of the larger holdback comes
20 from, and I think the holdback itself is somewhat of a red
21 herring because in some cases your Honor will ask for a larger
22 holdback because say looking at the applications we anticipate
23 having objections to more than 20 percent of fees.  So we
24 don't want to get into a disgorgement situation.  That's not

the case here.  It's more a case of economically how much from

our point of view, understanding it's only one point of view,

but from our point of view how much prudently should go out

the door at this point, and it's a balancing test.

Obviously no one's disputing that Mr. Kushner's firm

has done work in this case, done a lot of work in the case,

and that's got to be balanced against, you know, what the --

we're not up here saying that they shouldn't get anything.

We've got to balance that against what is in, from our point

of view, in the interest of this debtor at this point in time,

a month and a half away from what's going to be a challenging

confirmation hearing.  So that's how where -- how we arrived

at the number.

THE COURT:  Close to the end of the road.

MR. CURTIN:  At this point I guess --

THE COURT:  Wise to have a reserve.

MR. CURTIN:  Right.

MR. KUSHNER:  And there is a reserve.  There still

is a reserve.

THE COURT:  An incremental reserve.  I take your

point, Mr. Kushner.  I take your point, Mr. Curtin.

All right.  I'm -- this is the last matter we have

in this case.  Is that right?

I would like a very short break.  I'm going to think

1  about this for a moment.  I'll come back and give you a

2  ruling.  You can confer.  If you work it out, so much the

3  better.  Ms. Jackson can also use the opportunity to sequence

4  as efficiently as possible how we're going to move through the

5  next matters on the calendar to get you in and out as promptly

6  as possible.

7          All right.  Thank you very much.

8          THE CLERK:  All rise.

9              (Off the record/On the record)

10          THE COURT:  Thank you.  Please be seated.

11          Is there anything that anyone would like to add to

12  the record with respect to the compensation issue as to Goetz

13  Fitzpatrick?  I take it the request from the debtor is that

14  there be an approval at a level of a 20 percent holdback on

15  fees and none on expenses.  The request from the United States

16  Trustee is for the reasons indicated, including our proximity

17  to confirmation and the desirability of having some kind of a

18  bit of a funding reserve that that holdback be 40 percent, not

19  20 percent.  Have I correctly summarized the positions of the

20  parties?

21          MR. CURTIN:  Yes, your Honor.

22          MR. KUSHNER:  Yes, your Honor.

23          THE COURT:  Appreciating that this is a matter that

24  is committed to the Court's own discretion that a decision is

1  -- a decision that is a sensible decision is at least as

2  important as continuing this to another hearing so that I can

3  reflect further with you on the cases, I'm going to grant the

4  application and provide for a 30 percent holdback, which not

5  only is the midpoint between the two positions, but to me a

6  sensible assessment of the merits of the arguments that you

7  each make, and so that's where we're going to end up.

8           All right.  Please submit an appropriate proposed

9  order, and do we have a next date, Mr. Kushner or do we need

10 to find a next date?

11          MR. CURTIN:  Right.  We need a new confirmation

12 hearing.

13          THE COURT:  I think we do.  How far out in the

14 future shall we look?

15          MR. KUSHNER:  I think the first week in May, the

16 second week in May.

17          THE COURT:  All right.

18          MR. CURTIN:  Something between a week and two weeks

19 if you have would be perfect.

20          THE COURT:  Okay.  The first week of May, the week

21 of May 6th.  The first week of May, depending on how you

22 measure it, could be as soon as May 2nd.

23          MR. KUSHNER:  I have the 8th and 9th available.  I

24 don't know your Honor's availability, and the 14th and 15th

1  available.

2      THE COURT:  I think the morning of the 9th should

3  work.  I think the morning of the 9th should work.

4      MR. KUSHNER:  A Thursday.

5      THE COURT:  9:30 on Thursday, the 9th.

6      MR. KUSHNER:  May 9th at 9:30?

7      THE COURT:  Yes.

8      MR. KUSHNER:  Yes.  Thank you.

9      THE COURT:  Thank you.

10     MR. KUSHNER:  And your Honor should be looking for

11 the final disclosure statement and an order, so --

12     THE COURT:  We shall look with great interest for

13 those to be filed.  Thank you very much.

14     MR. KUSHNER:  Thank you.

15     THE COURT:  Anything further?  Thank you very much.

16  Thank you, all.

17

18

19          *          *          *

20                  **CERTIFICATION**

21

22 I, Catherine Aldrich, certify that the foregoing is a correct

23 transcript from the electronic sound recordings of the

24 proceedings in the above-entitled matter.

25

1 _____     June 22, 2013

2          Catherine Aldrich