Gary M. Kushner
Scott D. Simon
GOETZ FITZPATRICK LLP
One Penn Plaza, Suite 4401
New York, New York 10119
Tel: (212) 695-8100
gkushner@goetzfitz.com
ssimon@goetzfitz.com
*Attorneys for Debtor*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

In re:                                          Chapter 11

OTR MEDIA GROUP INC.,                           Case No. 1-11-47385 (ESS)

                              Debtor.
-----------------------------------------------------------X

## FOURTH INTERIM APPLICATION OF GOETZ FITZPATRICK LLP AS DEBTOR'S COUNSEL FOR ALLOWANCE OF COMPENSATON FOR PROFESSIONAL SERVICES RENDERED AND FOR REIMBURSEMENT OF ACTUAL AND <u>NECESSARY EXPENSES INCURRED</u>

TO THE HONORABLE ELIZABETH S. STONG,
 UNITED STATES BANKRUPTCY JUDGE:

Goetz Fitzpatrick LLP (sometimes referred to herein as "GF"), counsel for OTR Media Group Inc., the debtor and debtor-in-possession (the "Debtor"), files its fourth application (the "Application") pursuant to §§ 330(a) of title 11, United States Code (the "Bankruptcy Code") and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for allowance of interim compensation for professional services performed and for reimbursement of expenses for the period between February 1, 2013 and July 31, 2013 (the "Fourth Interim Period"). In support of the Application, Goetz Fitzpatrick LLP respectfully represents as follows:

# I.    RELIEF REQUESTED

1.    By this Application, Goetz Fitzpatrick LLP seeks entry of an order awarding (i) interim compensation in the sum of $190,072.50 in fees for professional services rendered during the Fourth Interim Period as bankruptcy counsel for the Debtor in this proceeding, and (ii) for reimbursement of disbursements made on behalf of the Debtor for the same period in the sum of $4,851.11.

## a)    First Interim Application

2.    Prior to the Debtor's chapter 11 filing, GF received an initial retainer from the Debtor in the amount of $65,000. Against the initial retainer, GF provided pre-petition professional services to the Debtor in the amount of $17,867.00 – primarily in preparation for the chapter 11 filing which occurred on August 25, 2011 (the "Filing Date"). As of the Filing Date, the balance of the initial retainer totaled $47,133.00 (the "Retainer Balance").

3.    By application filed with this Court on December 30, 2011 [ECF No. 78], GF requested interim compensation in the amount of $114,994.00 for fees and $3,769.56 for reimbursement of expenses covering the period between the Filing Date and November 30, 2011 (the "First Interim Application").

4.    By order dated February 17, 2012 [ECF No. 98], the First Interim Application was granted to the extent of awarding GF fees in the amount of $91,955.20 and expenses of $3,769.56 without prejudice to make a further application for payment of sums requested but not awarded.

5.    The Court directed a holdback of payment of fees requested in the First Interim Application such that $23,038.80, representing 20% of the total request for fees, was not paid to GF (the "First Holdback").

6.     GF has been paid the sums awarded in the First Interim Application. For purposes of the First Interim Application, GF applied the balance of its pre-petition retainer in the amount of $47,133.00 and was paid by the Debtor an additional $44,822.20 for fees and $3,769.56 for expenses.

### b)     <u>Second Interim Application</u>

7.     By second application filed on July 25, 2012 [ECF No. 217], GF requested interim compensation in the amount of $203,142.50 for fees and $8,605.23 for reimbursement of expenses for the period between December 1, 2011 and June 30, 2012 (the "Second Interim Application").

8.     By order dated August 31, 2012, the Second Interim Application was granted to the extent of awarding interim fees in the amount of $162,514.00, representing 80% of the fees sought in the Second Interim Application, and $7,605.23 in expenses, representing 100% of the expenses requested in the Second Interim Application. GF was paid by the Debtor for the amounts awarded for fees and expenses in connection with the Second Interim Application.

9.     A holdback of $40,628.50, representing 20% of the total fees requested in the Second Interim Application, was not paid to GF (the "Second Holdback").

### c)     <u>Third Interim Application</u>

10.     By third interim application filed on February 26, 2013 [ECF No. 337], GF requested interim compensation in the amount of $164,950.00 for fees and $1,008.25 for reimbursement of expenses for the period between July 1, 2012 and January 31, 2013 (the "Third Interim Application").

11.     By order dated March 15, 2013 [ECF No. 365], the Third Interim Application was granted to the extent of awarding interim fees in the amount of $115,465.00 and $1,008.25 in expenses. GF was paid the full amount awarded in the Third Interim Application.

12.     A holdback of $49,485.00, representing 30% of the total fees requested in the Third Interim Application, was not paid to GF (the "Third Holdback").[1]

## II.     JURISDICTION AND VENUE

13.     This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a "core" proceeding pursuant to 28 U.S.C. §159(b). Venue of these proceedings and over this Application are proper in this district pursuant to 28 U.S.C. §§1408 and 1409.

14.     The professional services for which allowances are sought by Goetz Fitzpatrick LLP in this application were rendered on behalf of the Debtor.

15.     A summary of the categories of services and the time devoted by Goetz Fitzpatrick LLP for each such service, as required by the Office of the United States Trustee, is annexed hereto as Exhibit "A".

16.     Goetz Fitzpatrick LLP also maintains records of the time it has expended for professional services on behalf of a client, as well as records for expenses that were paid on behalf of a client. Goetz Fitzpatrick LLP's time records were made concurrently with the rendition of the professional service rendered for the benefit of the Debtor. Each time entry made by Goetz Fitzpatrick LLP is reflected on Exhibit "B" annexed hereto.

---

[1] By this Application, GF does not seek to be paid any portion of the First Holdback, the Second Holdback or the Third Holdback, however, these sums will be sought by way of GF's final application for allowances.

### III.   DEBTOR'S COUNSEL

17.   Goetz Fitzpatrick LLP initially applied for retention as the Debtors' chapter 11 counsel on August 26, 2011 [See ECF No. 2] and renewed its application on October 5, 2011, on notice to all creditors and parties-in-interest, at the request of the Office of the United States Trustee ("UST") [See ECF No. 36].

18.   The UST and other parties-in-interest initially objected to the proposed retention on the grounds that Goetz Fitzpatrick LLP's representation of certain of the Debtor's landlords in a separate proceeding captioned 203 17th Realty LLC v. City of New York, 11 CV 1392 (the "1983 action") could give rise to a conflict of interest [See ECF Nos. 40, 42 and 43].

19.   The Court held a hearing on the retention application on October 25, 2011, at which time Goetz Fitzpatrick LLP's retention was approved.

20.   The Court held a further hearing on the retention application on November 29, 2011, at which time the Court clarified the initial retention of GF as Debtor's counsel to prohibit Goetz Fitzpatrick LLP form any further work for the landlords in the Debtor's case and/or the 1983 action.

21.   The Office of the United States Trustee approved the form of Order submitted by the Debtor and an order granting GF's retention was entered by the Court on December 15, 2011, effective as of the Filing Date. A copy of GF's retention order was annexed to the First Interim Application.

22.     Goetz Fitzpatrick LLP is a law firm comprised of approximately thirty lawyers and paraprofessionals. Goetz Fitzpatrick LLP is recognized as a leader in representing the construction and real estate industry. The firm is a leading force in sophisticated construction-related litigation, arbitrations and mediation. The firm's presence also extends to other industries in complex commercial litigation, transactional matters, trust and estates and general counseling.

23.     In 2011, Goetz Fitzpatrick LLP recruited Gary M. Kushner, Esq., who formerly led the Bankruptcy Group at Forchelli, Curto, Deegan, Schwartz, Mineo, Cohn & Terrana, LLP. Mr. Kushner now heads the Bankruptcy Group at Goetz Fitzpatrick LLP.

24.     Goetz Fitzpatrick also employs Scott D. Simon, Esq. in its Bankruptcy Group. Mr. Simon is a former associate with the New York City law firms Cahill Gordon & Reindel LLP and Littleton Joyce Ughetta Park & Kelly LLP. Mr. Simon has prior experience drafting motions common to a chapter 11 case, research on complex and unique bankruptcy issues and has hands-on experience in bankruptcy litigation matters.

25.     In connection with complex litigation matters that may arise in a chapter 11 case, GF utilizes the services of several highly experienced and extremely capable litigators including Ronald D. Coleman, Esq.

## IV.     FACTUAL BACKGROUND

26.     On August 25, 2011, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is operating its business and managing its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

27.     No trustee, examiner or committee of creditors has been appointed in this case.

28.     The Debtor is a full service "outdoor advertising company" as defined by the New York City Administrative Code, now in its second decade of operation. The Debtor posts bulletins, wallscapes and spectaculars on prime real estate locations covering the New York City market. The Debtor also provides media sales and billboard maintenance services to its advertising clientele.

29.     The Debtor's chapter 11 filing was precipitated by, among other things, the issuance of substantial fines and legal expenses in connection with New York City's promulgation and enforcement of zoning regulations that effectively banned the Debtor from maintaining certain signs (the "Sign Laws"). The fines, legal expenses, and loss of revenue severely interfered with the Debtor's relationship with landlords of various buildings on which the Debtor placed outdoor signs. The City's enforcement scheme has restricted the Debtor's available advertising sources and created substantial cash flow issues since the City served restraining notices on the Debtor's clients.

30.     The chapter 11 filing was elected to obtain the benefits of the automatic stay and a breathing spell from the City's selective effort to put the Debtor out of business, and to preserve the Debtor's relationships and assets for the benefit of its landlords, vendors, clients and other creditors.

## V. SIGNIFICANT SERVICES PERFORMED BY GOETZ FITZPATRICK LLP DURING THE FOURTH INTERIM PERIOD

31.     The following is a summary description of the significant services performed by Goetz Fitzpatrick LLP during the Fourth Interim Period. All of the professional services provided by Goetz Fitzpatrick LLP on behalf of the Debtor during the Fourth Interim Period are set forth in its time records (the "Time Records", annexed hereto as Exhibit "B"). The Court is respectfully referred to the Time Records for specific details of the work performed by Goetz Fitzpatrick LLP during the Fourth Interim Period.

32.     In summary, the work performed by Goetz Fitzpatrick LLP during the Fourth Interim Period has been classified in several general categories, as follows:

a.      "Asset Disposition", which is generally described as the work necessary to counsel the Debtor and assist the Debtor with the potential sale of the Debtor's signs and leases. The majority of sale negotiation efforts overlaps with case administration and business operations and were billed under both of these categories.

b.      "Business Operations", which is generally described as the work necessary to counsel the Debtor in its business decisions. Services rendered in this category primarily included negotiations with the Debtor's landlords concerning operations, discussions with service providers regarding the automatic stay and continuation of services and negotiations with creditors concerning litigation with the City of New York.

c.      "Court Hearings", which is generally described as the work necessary for scheduled hearings, coordinating hearings with creditors, preparing hearing agendas, and attending court hearings.

d.      "Claims Administration and Objections", which is generally described as the work necessary to evaluate the merits of claims filed against the Debtor's estate and developing the basis of any objections thereto.

e. "Fee Application", which includes the work necessary to secure approval of the retention and compensation of professionals. In this chapter 11 case, the Court approved a process allowing for monthly compensation of ordinary course professionals which requires, *inter alia*, the submission of monthly payment requests. The "Fee Application" category also includes the work necessary to review, coordinate and file the monthly payment requests of the Debtor's ordinary course professionals and to review and respond to any objections which were filed in connection therewith.

f. "Cash Collateral", which includes time spent securing debtor-in-possession financing sources and approvals for use of cash collateral.

g. "Legal Motions and Contested Matters", which is generally described as the work necessary to prepare motions filed with the Court, and to prepare responses in other contested matters.

h. "Plan and Disclosure Statement", which is generally described as the work necessary to prepare the Debtor's plan and disclosure statement.

i. "Legal Research", which is generally described as the legal work associated with the preparation of legal points and authorities to support or oppose motion practice, as well as legal research on a myriad of other legal issues that affect the administration of the chapter 11 case.

j. "Case Administration", which is generally described as the work necessary to counsel the Debtor about its responsibilities as a debtor in a chapter 11 case; attending to scheduling issues; updating creditors with respect to miscellaneous inquiries; reviewing operating reports and review of other financial information.

k. "Document Production" which includes discovery undertaken in connection with various motions, contested matters and litigation and any disputes related to these types of proceedings.

## A.   <u>Asset Disposition</u>

33.   During the Fourth Interim Period, the Debtor's efforts were concentrated on the sign legalization process, recognizing that the Debtor's ability to sell its sign inventory hinged on the outcome of the sign legalization process. That process is ongoing and the Debtor has determined that its business would be optimally marketable only after the sign application process has fully run its course. Consequently, the Time Records reflect that no services applicable to this service category was billed by GF during the Fourth Interim Period.

**B.** **Business Operations**

34.     During the Fourth Interim Period, the Debtor called upon GF to assist in a litany of business issues including landlord disputes, fee request disputes, counseling on business issues arising from the issuance of various state court rulings concerning aspects of the sign laws promulgated by the City of New York, compliance with the consent order dated and entered on July 19, 2012 (the "Consent Order"), sign registration issues and other sundry day-to-day business problems and issues.

35.     As set forth in the Time Logs, GF counseled the Debtor on the following specific business issues:

(a)     general assistance with various questions from, and discussions with, regulatory counsel;

(b)     assisting the Debtor in its compliance with the Consent Order;

(c)     assistance with collection of the Debtor's outstanding accounts receivable;

(d)     counsel on tax liabilities and issues;

(e)     counsel on general long-term strategy development regarding the Debtor's business goals;

(f)     counsel on altering responsibilities of various ordinary course professionals;

(g)     counsel on new joint venture in London, England and potential new sign locations in New York City, Los Angeles, Salt Lake City and other domestic cites;

(h)     discuss various lease extensions including the Bruckner, Zerega and Covenant House locations;

(i)     delay tactics of New York City and its effect on the reorganization, sign approval process and long term viability; and

(j)     development of general business strategy.

36.       GF performed 25.80 hours in professional services categorized as Business

Operations during the Fourth Interim Period, for a total charge to the Debtor of $10,712.50.

## C.    Court Hearings

37.       During the Fourth Interim Period, Goetz Fitzpatrick LLP was required to prepare

for and attend several Court conferences and hearings, including:

(a)  status conference, hearing on Debtor's motion for use of cash collateral, hearing on UST's motion to convert or dismiss chapter 11 case (the "UST Motion"), hearing on Debtor's motion to extend time to assume or reject leases; hearing on motion to object to certain claims and hearing on approval of the adequacy of the Debtor's disclosure statement, all of which were heard by the Court on February 14, 2013;

(b) hearings on motions for interim compensation for Bryan Cave, LP, Goetz Fitzpatrick LLP and Novack, Burnbaum & Crystal, which were heard by the Court on March 12, 2013;

(c) scheduling status conference; hearing on UST Motion; hearing on Debtor's motion for use of cash collateral; hearing on City of New York's declaration of non-compliance with the Consent Order; and hearing on Debtor's objections to claims motion which were heard by the Court on April 23, 2013;

(d) status conference, hearing on Debtor's application to use cash collateral, hearing on the UST Motion, hearing on Debtor's objections to claims motion, hearing on the City's declaration of the Debtor's non-compliance with the Consent Order; scheduling status conference; interim fee application of the Debtor's accountant; and final fee application of Whiteman, Osterman & Hanna, LLP, special appellate counsel which were before the Court on May 9, 2013;

(e) scheduling status conference, hearing on Debtor's motion to use cash collateral, hearing on Debtor's motions for Rule 2004 examinations, hearing on UST Motion, hearing on City's declaration of Debtor's non-compliance with Consent Order, and hearing on Debtor's motion objecting to allowance of claims, all of which were heard by the Court on June 27, 2013; and

(f)  status conference, scheduling conference, hearing on UST Motion, hearing on Debtor's motion for use of cash collateral, hearing on City's declaration of Debtor's non-compliance with Consent Order, hearing on confirmation of Debtor's amended plan; hearing on Care Realty's motion for payment of administrative rent (and related issues), hearing on Debtor's motion objecting to claims, and hearing on Care Realty's motion to vacate the automatic stay which were before the Court on July 17, 2013.

38.     Before each and every Court hearing, Goetz Fitzpatrick LLP diligently prepared the client (when necessary), prepared and extensively reviewed pleadings and other documents and prepared for oral argument before the Bankruptcy Court.

39.     GF rendered a total of 52 hours in this service category during the Fourth Interim Period, amounting to $$22,535.00 in fees charged to the Debtor.

## D.     Claims Administration and Objections

40.     In connection with this category, Goetz Fitzpatrick LLP was required to deal with various landlord claims asserted against the Debtor; identify claims against which the Debtor intended to file claims objections; and evaluate the nature of claims asserted by the City and various taxing authorities.

41.     In connection with this category, Goetz Fitzpatrick LLP worked with the Debtor and the City to discuss possible resolution of the City's proof of claim and the myriad of administrative proceedings against the Debtor.

42.     In addition, during the Fourth Interim Period, the Debtor continued to prosecute its first omnibus motion objecting to claims to the extent it was unable to resolve claim disputes. In connection with that motion, Goetz Fitzpatrick LLP replied to various responses from certain creditors, resolved several claims which were the subject of that motion and continued to negotiate claims which could not be settled.

43.     During the Fourth Interim Period, GF engaged in substantial negotiations with MNB to attempt to resolve the Bank's claim and to discuss a payout of the allowed claim over the life of a proposed plan of reorganization.

44.     GF's efforts on behalf of the Debtor in regard to MNB were successful in that an agreement was reached between the Debtor and MNB to fix the Bank's allowed claim and to structure repayment over the term of the plan.

45.     GF and counsel for the Bank have negotiated and completed an agreed form of stipulation and settlement during the Fourth Interim Period, which was filed with the Court.

46.     GF rendered a total of 9.4 hours in this service category during the Fourth Interim Period amounting to $3,947.50 in fees charged to the Debtor.

**E.      Fee Application/Retention Matters**

47.     As noted in prior interim GF fee applications, the Debtor's business model relies upon the use of a stable of attorneys, each with differing expertise. During the chapter 11 case, the Debtor has sought approval for the following retention of law firms and accounting firms:

(a)     Law Office of Ariel S. Holzer, which specializes in regulatory matters and sign law enforcement issues;

(b)     Novack Burnbaum Crystal LLP, which specializes in litigation of sign regulatory matters and transactional issues relating to the outdoor advertising business;

(c)     Bartfield & Knopler PLLC, which specializes in litigation matters particular to the outdoor advertising industry;

(d)     GoldmanHarris LLC, which specializes in appellate practice before the Board of Standards & Appeals, focusing on sign regulatory issues;

(e)     Cohen Hochman & Allen, which specializes in matters before the ECB concerning sign laws and regulatory issues;

(f)     Whiteman Osterman & Hanna, a firm located in the Albany, New York, area, which specializes in general appellate work on sign laws and regulatory matters;

(g)     Bryan Cave, LLP, which specializes, for purposes of this chapter 11 case, in the regulatory assessment of the Debtor's signs and the processes and administrative submissions required to legalize those signs;

(h)     Pease & Associates, Inc., which was retained to prepare the Debtor's tax returns for 2009 and 2010;

(i)     Roth & Company LLP, which was retained as the Debtor's general accountant, with the limited function of resolving certain tax claims and preparing tax returns; and

(j)     Goetz Fitzpatrick LLP, which was retained to represent the Debtor in the chapter 11 case; and

(k)     Bruce Silverman, an expert in sign regulations who was needed in connection with several litigations being handled for the Debtor by Bryan Cave.

48.     The Holzer, Novack, Bartfield, Goldman and Cohen firms were retained as ordinary course professionals that the Debtor requires to navigate day-to-day proceedings before the ECB, Department of Buildings, and various other administrative and court hearings particular to the outdoor sign business.

49.     Goetz Fitzpatrick LLP has prepared and filed numerous monthly fee submissions applicable to each of the ordinary course professionals during the Fourth Interim Period.

50.     The filing of certain applications resulted in the filing of objections by the UST and other parties-in-interest. GF researched the legal issues applicable to each objection, prepared replies and ultimately resolved the issues raised by each objecting party.

51.     During the Fourth Interim Period, GF was required to engage in discussions with the UST and counsel for the Bank regarding numerous retention issues and carve-out issues.

52.     During the Fourth Interim Period, GF prepared and filed its third interim application for allowance of compensation and reimbursement of expenses and responded to an objection filed by the UST. In addition, the following services rendered on behalf of the Debtor were placed into this category:

(a)     discuss and reassign various litigation responsibilities primarily involving sign regulatory matters as between GoldmanHarris, Bryan Cave and Novack, Birnbaum & Crystal who were previously retained as professionals;

(b)     resubmit amended retention applications/orders reflecting reappointment of regulatory work amongst retained professionals;

(c)     prepare, edit and finalize fee applications for Roth & Co., the Pease firm and special appellate counsel in Albany;

(d)     draft numerous monthly interim compensation requests for ordinary course professionals;

(e)     draft, edit and finalize interim application of Novack, Birnbaum & Crystal and respond to objection which was filed by the City of New York;

(f)     draft, edit and finalize interim application of Bryan Cave and respond to objection to allowance which was filed by the UST;

(g)     miscellaneous, numerous communications with Bank counsel regarding retention issues and anticipated fee estimates;

(h)     draft, edit and finalize retention application for Bruce Silverman; and

(i)     draft, edit and finalize appropriate order for each approved retention application and fee award rendered by the Court.

53.     GF rendered a total of 51.20 hours in this service category during the Fourth Interim Period, amounting to $20,735.00 in fees charged to the Debtor.

**F.**     **Cash Collateral**

54.     During the Fourth Interim Period, Goetz Fitzpatrick LLP has continued to work closely with the Debtor's secured lender, Metropolitan National Bank ("MNB"), and arranged for use of the bank's cash collateral so that the Debtor could continue to operate in chapter 11.

55.     During the Fourth Interim Period, Goetz Fitzpatrick LLP successfully negotiated budgets with MNB covering the months of February 2013 through July 2013. Cash Collateral agreements covering each of these months were also negotiated with MNB and approved by the Court.

56.     GF rendered a total of 7.2 hours in this service category during the Fourth Interim Period, amounting to $2,777.50 in fees charged to the Debtor.

**G.**     **Legal Motions and Contested Matters**

57.     Goetz Fitzpatrick LLP prepared and responded to several critical motions during the Fourth Interim Period, including:

(a)     a host of regulatory litigations pending before the Environmental Control Board ("ECB") or Board of Standards and Appeals ("BSA") to the extent issues on these proceedings related to or affected the chapter 11 case;

(b)     exploration of affirmative litigation causes of action against the City of New York for delaying sign application reviews/approvals and for selective enforcement of existing sign laws;

(c)     drafting responses to various objections to fee applications;

(d)     responding to creditors with respect to automatic stay issues and potential violations;

(e)     City's declaration of Debtor's non-compliance with Consent Order (discussed in more detail below);

(f)     attend to motions by Care Realty for relief from the automatic stay and for payment of alleged unpaid post-petition rent;

(g)     prepare numerous applications seeking discovery under Rule 2004; and

(h)    review, discuss numerous pleadings involving a litany of state court regulatory litigation to the extent that same required input about the Debtor's chapter 11 case.

58.    All totaled, GF was required to expend 165.20 hours of time in this service category amounting to a charge of $67,740.00 in fees.

## **Detailed Work on Particular Motions/ Contested Matters**

### **(1)    UST Motion to Convert or Dismiss**

59.    During the Third Interim Period, the UST filed an application to convert or dismiss the Debtor's chapter 11 case [ECF No. 154]. The City joined in the application.

60.    In connection with that motion, Goetz Fitzpatrick LLP prepared opposition papers, including a comprehensive memorandum of law. The Bankruptcy Court held an extensive hearing on June 29, 2012, after which the parties (UST, Debtor, MNB and the City) discussed a global resolution, much of which occurred during the Fourth Interim Period.

61.    The UST's motion to convert or dismiss was ultimately resolved during the Fourth Interim Period and the Consent Order was extensively negotiated and entered by the Court.

62.    On April 29, 2013, the City of New York filed declarations of the Debtor's non-compliance with the Consent Order. The filing of the City's pleadings triggered an abundance of work including the preparation of an extensive objection, consultation with the client as to the content of a factual response, consultation with the client as to discovery issues, attendance at multiple Court hearings, legal research and excessive discussions with counsel for the City as to procedural and substantive issues relating to this matter.

63.     By far, the most comprehensive, time consuming endeavor related to the City's declaration of non-compliance concerned the negotiation, drafting, editing and filing of a joint pre-hearing statement in which the parties stipulated to certain undisputed facts and outlined their respective disputed issues of fact.

64.     In addition to the preparation of the joint pre-hearing statement, the City and the Debtor engaged in numerous discovery exchanges and discovery disputes – some resolved and some not.

65.     The Debtor estimates that of the work that became necessary in regard to the "Legal Motions/Contested Matters" category, more than 125 hours was required to be dedicated by GF amounting to over $50,000 in charges.

**H.      Plan and Disclosure Statement**

66.     During the Fourth Interim Period, Goetz Fitzpatrick LLP has reviewed a litany of documents, pleadings, financial information – both historical and present – claims and other material, in preparation for editing the Debtor's amended plan and amended disclosure statement which were initially started earlier in the chapter 11 case.

67.     Goetz Fitzpatrick LLP has met with the Debtor and its professionals on numerous occasions to distill all of the relevant information required to be provided in an amended plan and disclosure statement.

68.     As described above, Goetz Fitzpatrick LLP drafted, edited and finalized a comprehensive plan and disclosure statement, which were initially docketed on June 22, 2012.

69.     During the Fourth Interim Period, GF was required to revise, update and supplement the original plan and disclosure statement on a number of occasions. Toward the end of the Third Interim Period in late January, 2013, GF prepared a second draft disclosure statement which was circulated to the UST, MNB and the City. GF incorporated comments from parties-in-interest, revised the disclosure statement, and filed it with the Court on February 14, 2013.

70.     Following the circulation of the revised draft of the disclosure statement and plan, GF conducted a series of meetings and telephone conferences with various parties in interest including the City, MNB, the UST, a litany of landlords and taxing authorities.

71.     As a result of these meetings and telephone conferences, GF was able to finalize and file a final version of the amended plan and disclosure statement.

72.     The amended disclosure statement was approved by order of the Court following entry of which, GF served a solicitation package and coordinated the counting of ballots in order to ascertain whether the Debtor had received approval(s) for each respective class of claims.

73.     In preparing the final version of the disclosure statement, GF was required to conduct research on a number of legal issues, including research on the extent to which the plan could provide for releases and injunctions, classification issues, voting issues, cram down and new value issues.

74.     GF rendered a total of 69.90 hours in this service category during the Fourth Interim Period, amounting to $28,492.50 in fees charged to the Debtor.

## I.     Legal Research

75.     During the Fourth Interim Period, Goetz Fitzpatrick LLP conducted specific additional research projects not otherwise associated with a pending motion or contested matter. This research was primarily designed to avoid the need investigate controlling authority as to potential legal issues which GF Debtor reasonably expected to encounter during the chapter 11 case.

76.     In other instances, Goetz Fitzpatrick LLP researched the interaction of the Bankruptcy Code with relevant New York State Law in order to advise the Debtor on its most efficient course of action with respect to its business goals.

77.     Of course, GF was required to research a myriad of legal issues in order to respond to numerous pleadings generated in the aforementioned contested matters.

78.     GF rendered a total of 21.0 hours in this service category during the Fourth Interim Period, amounting to $7,367.50 in fees charged to the Debtor.

## J.     Case Administration

79.     Since its retention, Goetz Fitzpatrick LLP has endeavored to ensure that the Debtor has timely complied with its duties and with Court deadlines during the Fourth Interim Period.

80.     Goetz Fitzpatrick LLP has responded to many creditor inquiries about the status of the chapter 11 case. Goetz Fitzpatrick LLP also responded to the inquires of many entities who have conducted due diligence in connection with the potential purchase of the Debtor's signs.

81.     Goetz Fitzpatrick LLP has insured that proper notices have been generated during the Fourth Interim Period, including noticing of Court calendars and adjournments.

82.     During the Fourth Interim Period, GF routinely responded to various inquiries from the Debtor and other parties-in-interest about case developments, general case administration and other aspects or events which have occurred in the chapter 11 case.

83.     GF rendered a total of 21.0 hours in this service category during the Fourth Interim Period, amounting to $8,287.50 in fees charged to the Debtor.

**K**.    **Document Production**

84.     During the Fourth Interim Period, GF was engaged in discovery and document production on a number of fronts including the City's declaration of non-compliance with the Consent Order and the several Rule 2004 applications.

85.     All totaled, GF spent 47.70 hours in this category for a charge of $16,727.50.

**L.**    **Expenses**

86.     The Time Records also delineate the nature of reimbursements sought for the Fourth Interim Period.

87.     Goetz Fitzpatrick LLP has been required during the course of its retention to outlay funds for actual and necessary purposes. Charges for express or overnight mail were used only when first class mail was impractical, such as when a response was required in advance of an immediate deadline. The firm did not charge the Debtor for the cost of overhead expenses.

88.     These expenses are fully documented on Exhibit "B" hereto.

**VI.     STATUTORY BASIS FOR RELIEF REQUESTED**

89.     The statutory basis for the relief sought herein are sections 330 and 331 of Title 11 of the Bankruptcy Code and Bankruptcy Rule 2016, as supplemented by the Local Bankruptcy Rules. Under sections 330(a)(3)(A) of the Bankruptcy Code, a Court shall consider the following factors in determining whether the amount of compensation requested is reasonable:

<ol type="A" start="1">
<li>the time spent on such services;</li>
<li>the rates charged for such services;</li>
<li>whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered towards the completion of, a case under this title;</li>
<li>whether the services were performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue, or task addressed; and</li>
<li>whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.</li>
</ol>

<u>See</u> Section 330(a)(3)(A) of the Bankruptcy Code.

90.     The philosophy underlying the adoption of section 330 of the Bankruptcy Code is equally applicable to interim compensation. The Bankruptcy Code provides that the same considerations apply to making interim awards of compensation under section 331 as to final allowances under section 330. <u>See In re Public Service Co. of New Hampshire</u>, 93 B.R. at 826; <u>In re International Horizons, Inc.</u>, 10 B.R. 895 (Bankr.N.D.Ga. 1981). Section 331 of the Bankruptcy Code provides:

> A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date as is provided under section 330 of this title. After notice and a hearing, the Court may allow and disburse to such applicant such compensation or reimbursement.

11 U.S.C. §331.

91.     It is respectfully submitted that the compensation and expenses sought herein by Goetz Fitzpatrick LLP should be allowed based on the above standard. The rates charged are typical of other comparably skilled practitioners, and the amount of time spent was reasonable in light of the nature of the issues presented and the complexity of the administration of the Debtor's case. The services provided were both necessary and beneficial to the administration of the case, the estate and the Debtor's creditors.

WHEREFORE, Goetz Fitzpatrick LLP respectfully requests that the Court enter an order granting this Application in its entirety and for such further and different relief as is just, proper and equitable.

Dated: New York, New York
        August 28, 2013

                                        Respectfully submitted,

                                        Goetz Fitzpatrick LLP
                                        *Attorneys for the Debtor*


                            By:     /s/Gary M. Kushner
                                    Gary M. Kushner
                                    A Partner of the Firm
                                    One Pennsylvania Plaza
                                    44th Floor
                                    New York, New York 10119
                                    (212) 695-8100

t:\kushner\kdrive\kushner\otr - chapter 11\chapter 11\fourth interim application of gf for compensation.doc