TRACY HOPE DAVIS
United States Trustee for Region 2
Office of the United States Trustee
271 Cadman Plaza East, Suite 4529
Brooklyn, New York 11201
Telephone: (718) 422-4960
William E. Curtin (WC-1974)

UNITED STATES BANKRUPTCY COURT  Hearing Date: September 20, 2013
EASTERN DISTRICT OF NEW YORK  Hearing Time: 12:00 noon
-------------------------------------------------------x
In re:

OTR MEDIA GROUP INC.,  Chapter 11

                                                   Case No. 11-47385 (ESS)

                          Debtor.
-------------------------------------------------------x

**OBJECTION OF THE UNITED STATES TRUSTEE TO APPLICATIONS OF GOETZ FITZPATRICK LLP, AS COUNSEL TO THE DEBTOR, AND NOVACK, BURNBAUM & CRYSTAL, LLP, AS SPECIAL COUNSEL TO THE DEBTOR FOR INTERIM ALLOWANCE OF FEES FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES**

TO:  THE HONORABLE ELIZABETH S. STONG,
       UNITED STATES BANKRUPTCY JUDGE:

Tracy Hope Davis, United States Trustee for Region 2 (the "United States Trustee"), pursuant to her duties under 28 U.S.C. § 586 (a)(3)(A)(i) and (ii), respectfully submits this objection (the "Objection") to the fourth interim application of Goetz Fitzpatrick LLP ("Goetz"), as counsel for OTR Media Group (the "Debtor") and the second interim application of Novack, Burnbaum & Crystal, LLP ("NBC" and collectively with Goetz, the "Professionals"), as special counsel for the Debtor, for allowance of fees for services rendered and reimbursement of expenses (the "Applications") and respectfully represents as follows:

1

## PRELIMINARY STATEMENT

The Professionals' requests for awards of compensation and reimbursement of out of pocket expenses are summarized below:

| Applicant | Fees Requested | Expenses Requested |
|---|---|---|
| Goetz, Counsel to the Debtor | $190,072.50 | $4,851.11 |
| NBC, Special Counsel to the Debtor | $55,314.93 | $0.00 |

The Applications seek an aggregate interim award of approximately $250,000.00 in fees and expenses in a case that has just over $112,000.00 in cash and is currently defending itself against allegations of default under a consent order, which could result in conversion of the Debtor's case to chapter 7. The landscape of this case has deteriorated significantly in the past several months. After resolving previous efforts to convert its case, the subsequent actions of the Debtor have resulted in both the City of New York and the United States Trustee alleging serious defaults of a consensual order. At this critical juncture of this case, on the eve of a determination as to whether or not this case should be converted to chapter 7 or should remain in chapter 11, award and payment of fees and expenses is inappropriate. Accordingly, the Court should deny the Applications without prejudice or, in the alternative, adjourn the Applications to a date after the Court has ruled on the Debtor's default under the Consent Order.

## STATEMENT OF FACTS

**A.    General Background**

1.    On August 25, 2011, the Debtor commenced its case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. ECF Doc. No. 1.

2. The United States Trustee has not, to date, formed an unsecured creditors' committee in the Debtor's case.

3. The Debtor is operating its business and managing its affairs as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

4. The United States Trustee has not appointed a trustee or an examiner in the case.

5. The Debtor is a full service outdoor advertising company as defined by the New York City Administrative Code. See Declaration of Ari Noe ("Noe") Pursuant to Local Bankruptcy Rule 1007-4, executed on August 25, 2011, (the "Noe Declaration") at 2, ¶ 4, ECF Doc. No. 3. The Debtor provides bulletins, wallscapes and spectaculars in prime real estate locations covering the New York City market and provides media sales and billboard maintenance services to its advertising clientele. Id.

**B.      Retention of Professionals**

6. By Order dated December 16, 2011, the Court approved the Debtor's application to retain and employ Goetz as counsel to the Debtor. ECF Doc. No. 69.

7. By Order dated December 6, 2011, the Court approved the Debtor's application to retain and employ NBC as special counsel to the Debtor. ECF Doc. No. 65.

**C.      Operations**

8. The Debtor's July 2013 operating report shows that it had $112,097.15 in cash as of July 31, 2013. ECF Doc. No. 504.

**D.      The Plan**

9. On June 22, 2012, the Debtor filed a plan of reorganization and accompanying disclosure statement. ECF Doc. Nos. 179 and 180.

10. On March 20, 2013, the Debtor filed an amended plan of reorganization (the "Plan") and accompanying amended disclosure statement (the "Disclosure Statement"). ECF Doc. Nos. 360 and 361.

11. By Order dated March 22, 2013, the Court approved the Disclosure Statement. ECF Doc. No. 362. The hearing on confirmation if the Plan has been periodically adjourned.

**E.     The United States Trustee's Motion to Convert or Dismiss**

12. By motion dated May 18, 2012 (the "Motion to Convert or Dismiss"), the United States Trustee moved to convert or dismiss the Debtor's case pursuant to section 1112(b). ECF Doc. No 154.

13. On June 22, 2012, the Debtor filed opposition to the Motion to Convert or Dismiss. ECF Doc. No. 181.

14. On June 22, 2012, the Debtor's primary secured creditor, Metropolitan National Bank ("MNB"), filed opposition to the Motion to Convert or Dismiss. ECF Doc. No. 177.

15. On June 27, 2012, the City of New York (the "City") filed a statement in support of the Motion to Convert or Dismiss (the "City Statement"). ECF Doc. No. 177.

16. On June 28, 2012, the Debtor filed a response to the City Statement. ECF Doc. No. 193.

17. On June 29, 2012, the Court heard initial argument on the Motion. After initial argument and extensive negotiation, the United States Trustee, the Debtor, the City and MNB agreed to adjourn the Motion to Convert or Dismiss in exchange for the Debtor complying with certain enumerated conditions.

18. By consent order (the "Consent Order") dated July 19, 2012, the Court adjourned the Motion to Convert or Dismiss to August 9, 2013 on various conditions including, but not

limited to, the reduction of compensation paid to the Debtor's principal, Ari Noe ("Noe"). ECF Doc. No. 214.

19. The Motion to Convert or Dismiss was adjourned from time to time, on the same conditions set forth in the Consent Order, and is currently scheduled to be heard on September 20, 2013.

**F.     The City's Allegations of Default Under the Consent Order**

20. On April 8, 2013, the City filed an Affirmation of Non-Compliance (the "City Affirmation of Non-Compliance") alleging, inter alia, that the Debtor has operated multiple signs in violation of the Consent Order. ECF Doc. No. 373.

21. The Debtor responded to the City Affirmation of Non-Compliance on April 11, 2013, and the Court scheduled a hearing on the issues raised in the City Affirmation of Non-Compliance for April 23, 2013 (the "Non-Compliance Hearing"). ECF Doc. Nos. 375 and 376.

22. The Debtor and the City have engaged in extended discovery and preparation of pre-trial statements, and the Non-Compliance Hearing is currently scheduled for September 20, 2013.

**G.     The Barter Transactions**

23. In late June 2013, while conducting discovery in preparation for the Non-Compliance Hearing, the City discovered that the Debtor had entered, post-petition, into an agreement with the New York Yankees (the "Yankees Barter Agreement"), whereby the Debtor agreed to post advertising in exchange for game tickets and other non-cash remuneration.

24. Upon discovery of the Yankees Barter Agreement, the City notified the United States Trustee.

25. Upon such notification, the United States Trustee requested that the Debtor file an affidavit of a party with actual knowledge regarding the particulars of the Yankees Barter Agreement.

26. On July 26, 2013, in response to the United States Trustee's request, the Debtor filed a declaration of Michael Eisenberg (the "Eisenberg Declaration"), the Debtor's Chief Financial Officer. ECF Doc. No. 485.

27. The Eisenberg Declaration revealed that the Debtor had entered into the Yankees Barter Agreement in March 2012. Id. at Ex A. The Yankees Barter Agreement provided that in exchange for posting certain advertising, the Debtor received six tickets to every Yankees home game in 2012, six passes to the Mohegan Sun Club for every Yankees home game in 2012 and three games in Luxury/Party Suites (collectively, the "Yankees Tickets"). Id.

28. The Eisenberg Declaration alleges that Yankees Tickets were used both for client entertainment purposes and for use by the Debtor's employees. Id. at ¶¶ 11-14.

29. The Eisenberg Declaration also revealed the Debtor had entered into a second post-petition barter transaction with Oasis Day Spa (the "Spa Barter Agreement") in October 2012. Id. at Ex B.

30. The Spa Barter Agreement provided that in exchange for posting advertising, the Debtor received at least $16,000.00 in gift certificates redeemable for spa services. Id.

**H.  Continued Excessive Compensation Paid to Noe**

31. The Consent Order provided that, as a condition for adjourning the Motion,

> [c]ommencing September 1, 2012, [Noe] shall voluntarily decrease his total monthly compensation in amount of $23,083.10 by twenty (20%) percent to a revised monthly compensation of $18,466.48 pending further order of the Court.

ECF Doc No. 214 at 8, ¶ 19.

32.     Since September 2012, payments to Noe have exceeded the $18,466.48 threshold in seven of the eleven reported months.  ECF Doc. Nos. 280, 293, 316, 317, 340, 363, 397, 422, 455, 486 and 503.  The monthly payments to Noe, as compared to the cash receipts and cash profit reported by the Debtor, are summarized in the chart below:

| Month | Payments to Noe | Cash Receipts | Net Cash Flow |
|---|---|---|---|
| September 2012 | $18,699 | $270,191 | ($59,657) |
| October 2012 | $18,499 | $407,052 | $38,557 |
| November 2012 | $20,773 | $411,100 | $59,503 |
| December 2012 | $23,099 | $284,645 | ($47,564) |
| January 2013 | $19,515 | $473,897 | $148,887 |
| February 2013 | $17,209 | $332,842 | ($18,518) |
| March 2013 | $20,511 | $345,293 | ($152,804) |
| April 2013 | $18,209 | $469,207 | $23,908 |
| May 2013 | $20,411 | $258,205 | ($47,141) |
| June 2013 | $18,259 | $262,315 | $9,041 |
| July 2013 | $18,209 | $447,455 | $38,164 |

Id.

33.     Based upon the payments to Noe in violation of the Consent Order, on August 27, 2013, the United States Trustee filed an Affirmation of Non-Compliance (the "UST Affirmation of Non-Compliance").  ECF Doc. No. 505.  On the same date, the United States Trustee filed a memorandum of law in further support of the Motion to Convert or Dismiss.  ECF Doc. No. 506.

**OBJECTION**

A.  **Professional Fees**

In calculating legal fees, "'[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable rate.'" In re Henry A. Szymczak, 246 B.R. 774, 779 (Bankr. D.N.J. 2000) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). This approach is commonly referred to as the lodestar method. There are a number of factors that may warrant a departure from the lodestar method. For example, the court may consider the time and labor required, the skill requisite to perform the legal service properly, the customary fee, the amount involved and the results obtained, the experience, reputation and ability of the attorneys, and awards in similar cases. Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).

Section 330(a)(3) is the legislative explanation of the lodestar analysis. See In re Holder, 207 B.R. 574, 583 (Bankr. M.D. Tenn. 1997) (amendments to the Bankruptcy Code in 1994 codify lodestar standard). Section 330 of the Bankruptcy Code states in pertinent part that, a court may award to professionals retained pursuant to 11 U.S.C. § 327:

> (1) (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person or attorney and by any paraprofessional persons employed by any such person; and
>
>   (B) reimbursement for actual, necessary expenses. 11 U.S.C. § 330 . . .
>
> (3) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including -
>
>   (A) The time spent on such services;
>
>   (B) The rates charged for such services;

      (C) Whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered . . .

      (D) Whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

      (E) Whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330.

The applicant bears the burden of proof in all fee matters. In re Recycling Indus., Inc., 243 B.R. 396, 401 (Bankr. D. Colo. 2000); In re Keene Corp., 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997); accord In Re Sounds Distributing Corp., 122 B.R. 952, 956 (Bankr. W.D. Pa. 1991) (explaining, "[t]he burden of proof as to the reasonableness of the requested compensation rests with the applicant"). The burden of proof to show entitlement to fees should "not be taken lightly, especially given that every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors." In re Spanjer Bros., Inc., 191 B.R. 738, 747 (Bankr. N.D. Ill. 1996) (citing In re Pettibone Corp., 74 B.R. 293, 294 (Bankr. N.D. Ill. 1987)).

The Bankruptcy Court has the duty to examine the reasonableness of the fees requested by retained professionals independently, notwithstanding the absence of objections by the trustee, debtor or creditor. In re AutoParts Club, Inc., 211 B.R. 29, 33 (B.A.P. 9th Cir. 1997) (citing In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 841 (3d Cir. 1994)).

**B.    The Applications Should be Denied, Without Prejudice**

Interim fee awards are discretionary and are subject to reexamination and adjustment during the course of the case. In re Spanjer Brothers, Inc., 191 B.R. at 747, citing In re Jensen-Farley Pictures, Inc., 47 B.R. 557 (Bankr. D. Utah 1985). Any interim fees awarded or paid are

payable on account and are subject to the Court's review at the time of the Court's consideration of final fee applications.

Pursuant to section 331 of the Bankruptcy Code, trustees and other professionals in chapter 11 cases are permitted to file applications for interim fee awards. U.S. Trustee v. Fishback (In re Glados, Inc.), 83 F.3d 1360, 1367 (11th Cir. 1996). Some factors to be considered by the court in determining the appropriateness of an interim fee award include the current availability of funds, the existence of other accrued administrative obligations of the same or higher priority that may deplete the funds, the continuing need for funds to pay necessary expenses in the future, and the inability to file a final fee application in the near future. Id., citing In re Commercial Consortium of California, 135 B.R. 120, 124-25 (Bankr. C.D. Cal. 1991).

Under Section 330, the court may award a professional reasonable fees for services that benefitted the estate. In re Lederman Enter., Inc., 997 F.2d 1321, 1323 (10th Cir. 1993). Accordingly, an application for compensation and reimbursement of expenses must demonstrate that the professional's services were necessary and conferred a benefit to the estate or its creditors. In re Engel, 124 F.3d 567, 573 (3d Cir. 1997), citing In re Arkansas Co., Inc., 798 F.2d 645, 650 (3d Cir. 1986). The court has an independent burden to review fee applications "lest overreaching . . . professionals drain it of wealth which by right should inure to the benefit of unsecured creditors." In re Keene Corp., 205 B.R. at 695, quoting In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d at 844.

For economic reasons, and in the interests of case management, the award of interim fees is inappropriate at this time. Such an award does not make economic sense, as the Debtor seeks to pay nearly $250,000.00 in fees and expenses in a case that has just over $112,000.00 in cash

and is currently defending itself against allegations of default under the Consent Order which could result in conversion of the Debtor's case to chapter 7. The Court simply cannot properly evaluate the Applications prior to a determination as to whether or not the Debtor's case will be converted to chapter 7. Accordingly, the Court should deny the Applications without prejudice or, in the alternative, adjourn the Applications to a date the Court has ruled on the Debtor's default under the Consent Order.

## CONCLUSION

For the reasons stated above, the United States Trustee respectfully requests that the Court sustain her Objection and deny the Applications without prejudice or, in the alternative, adjourn the Applications to a date after the Court has ruled on the Debtor's default under the Consent Order. The United States Trustee reserves all rights to raise these and any other objections in connection with the hearing on approval of final fee applications.

Dated: Brooklyn, New York
      September 12, 2013

Respectfully submitted,

TRACY HOPE DAVIS
UNITED STATES TRUSTEE
FOR REGION 2

By:   /s/ *William E. Curtin*
William E. Curtin (WC-1974)
271 Cadman Plaza East
Rm. 4529
Brooklyn, New York 11201
Tel. No. (718) 422-4960